1
2
3
4
5
6

Fennemore Craig, P.C.
Anthony W. Austin (No. 025351)
Justin R. DePaul (No. 031581)
2394 East Camelback Road, Suite 600
Phoenix, AZ  85016-3429
Telephone:  (602) 916-5000
Email:  aaustin@fclaw.com
Email:  jdepaul@fclaw.com

Attorneys for Debtor
Tanga.com, LLC

7

## IN THE UNITED STATES BANKRUPTCY COURT

8

## FOR THE DISTRICT OF ARIZONA

9

10

11

12

13

14

| In re | Case No. 2:18-bk-06314-BMW |
|---|---|
| TANGA.COM, LLC, | Chapter 11 |
| Debtor. | **MOTION FOR ENTRY OF AN ORDER (I) ESTABLISHING BIDDING PROCEDURES AND DEADLINES RELATING TO SALE PROCESS FOR DEBTOR'S ASSETS AND (II) APPROVING SALE OF THE ASSETS** |

15      Debtor Tanga.com, LLC ("Debtor" or "Tanga"), the debtor and debtor-in-

16 possession in the above captioned chapter 11 case, by and through its counsel, hereby

17 submits this motion ("Motion") pursuant to sections 105(a), 363, 365, 503, and 507 of title

18 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004, 6006, 9007,

19 9008 and 9014 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules"),

20 and local rules 2002, 6004, 6006 and 9014 of the Local Rules of Bankruptcy Practice for

21 the United States Bankruptcy Court for the District of Arizona (the "Local Rules"), for

22 entry of an order (the "Bidding Procedures Order"), substantially in the form attached

23 hereto as **Exhibit A**: (a) authorizing and approving bidding procedures (the "Bidding

24 Procedures"), substantially in the form attached hereto as **Exhibit B**, in connection with

25 the sale ("Sale") of substantially all of Debtor's assets; (b) authorizing and approving an

26 auction process (the "Auction") to sell the aforesaid assets in accordance with the Bidding

Procedures; (c) authorizing and approving the form and manner of notice of the bidding procedures and sale hearing (the "Bidding Procedures Notice"), substantially in the form attached hereto as **Exhibit C**; (d) scheduling a hearing to approve a sale to the highest and best bidder (the "Successful Bidder") following the Auction, whether it be to the Stalking Horse Bidder or any other Qualified Bidder (as defined in the Bidding Procedures), on terms substantially similar to those set forth in the asset purchase agreement to be executed by the Stalking Horse Bidder (the "Stalking Horse APA"), substantially in the form attached hereto as **Exhibit D**; (e) authorizing and approving the form and manner of notice of the Sale Notice (defined below), substantially in the form attached hereto as **Exhibit E**; (f) authorizing and approving the form and manner of notice of the Contract Counterparty Notice (defined below), substantially in the form attached hereto as **Exhibit F**; (g) waiving the stays under Bankruptcy Rules 6004(h) and 6006(d); and (h) approving the sale of the Assets to the Successful Bidder or Stalking Horse Bidder.

In support of the Motion, Debtor submits the declaration of Edward "Ted" Burr (the "Burr Declaration") concurrently herewith, and represents as follows:

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. Jurisdiction and Venue

This Court has jurisdiction to consider the matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and venue is property in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory bases for the relief requested herein are Bankruptcy Code §§ 105(a), 363, 365, 503, and 507 and Bankruptcy Rules 2002, 6004, and 6006.

Pursuant to Local Rule 9014-2, Debtor consents to entry of final order(s) or judgment(s) by the Bankruptcy Court if it is determined the Bankruptcy Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## II.    Background

On June 1, 2018 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Code.  The Debtor continues to operate its businesses and manage its assets as debtor in possession in accordance with Code §§ 1107 and 1108.  No trustee or examiner has been appointed in the Case. On June 25, 2018 the Court appointed the Official Committee of Unsecured Creditors. [DE72].   The Committee has hired counsel [DE81] and a financial advisor [DE87].

In Debtor's attempts to procure DIP financing to stabilize its operations, it became apparent that a sale of Tanga's assets would likely produce the best return to its creditors. On August 14, 2018, Tanga filed a motion to approve DIP financing from E. Chabot Ltd (the "DIP Motion").   As part of the DIP Motion and financing, E. Chabot desired to acquire the assets of Tanga in a Section 363 sale.   In connection with the DIP Motion, Debtor granted and requested this Court approve security interests in substantially all of its assets to E. Chabot.   Further, the DIP Motion and related documents set forth a sale structure that obligated Tanga to timely pursue a sale of its assets to E. Chabot as a stalking horse bidder or to a higher and better bidder.

## III.    The Assets to be Sold

Pursuant to the Bidding Procedures, Debtor will offer for sale all, or substantially all of its Assets, free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options, and interests thereon and there against ("Claims and Interests"), with such claims, to the extent they exist, attaching to the net proceeds of the sale of the Assets, subject to Debtor's right to challenge the validity of any Claims and Interests.  The Sale of the Assets will be on an "as is", "where is", "with all faults" basis and without representation and warranty, either express or implied, of any kind, including, without limitation, any warranties as to merchantability, fitness or usability and without any

surviving representations or warranties of any kind, nature, or description by Debtor, it's against, or estate.

The following property is not included in the Assets and shall not be subject to or included in the Sale (the "Excluded Assets"):

a) all rights of Seller under this Stalking Horse APA and any Ancillary Agreements (as defined in the Stalking Horse APA);

b) Tax returns of Debtor (and related workpapers), other than those relating to the Purchased Assets or the Business (as defined in the Stalking Horse APA);

c) any Contract (as defined in the Stalking Horse APA) that is not an Assumed Contract (as defined in the Stalking Horse APA) including any Contract which is not assumable and assignable as a matter of applicable law (including, without limitation, any with respect to which any consent requirement in favor of the counter-party thereto may not be overridden pursuant to Section 365 of the Bankruptcy Code) (collectively, "Excluded Contracts");

d) any rights under any Plan (as defined in the Stalking Horse APA);

e) all Cash (as defined in the Stalking Horse APA) and bank accounts elected not to be acquired by Buyer;

f) all shares of capital stock or other equity interests in or issued by Debtor or any other Person, or any securities convertible into, exchangeable or exercisable for shares of capital stock or other equity interests in or issued by Debtor or any other Person;

g) all rights under or arising out of insurance policies not primarily relating to the Purchased Assets and any recovery thereunder;

h) all current and prior director and officer insurance policies of Debtor, if applicable, and all rights of any nature with respect thereto, including all insurance recoveries thereunder and rights to assert claims with respect to any such insurance recoveries;

i) all Permits (as defined in the Stalking Horse APA) not transferred pursuant to Section 1.1.10 of the Stalking Horse APA.

j) any causes of action pursuant to Bankruptcy Code §§ 544, 545, 547, 548, 550, or 553 and any monies recovered in connection with the successful prosecution or settlement of subsection of such actions (collectively, the "Avoidance Actions").

## IV.  Relief Requested

### A.  The Bidding Procedures

In connection with the Sale of the Assets, Debtor proposes to follow and, once approved by this Court, be bound by the Bidding Procedures annexed hereto as Exhibit B. The Bidding Procedures were developed following consultation with Debtor's legal and financial professionals, the Committee's legal and financial professionals, and the Stalking Horse Bidder's legal professionals. Debtor believes that the adoption of the Bidding Procedures will provide interested parties with ample opportunity to formulate bids for the Assets and will facilitate the solicitation, submission, and evaluation of significant bids for the Assets in a manner that will maximize the value of the Assets for Debtor's estate. See Burr Declaration ¶¶ 13-14.

The Bidding Procedures constitute a reasonable and effective method of maximizing a return on the Assets through a competitive sale process. The Bidding Procedures fully describe, among other things, the Assets to be auctioned, the manner in which prospective bidders may gain access to, or continue to have access to, due diligence materials concerning the Assets, the manner in which bidders and bids become Qualified

1
2
3

Bidders and Qualified Bids, respectively, the receipt and negotiation of bids received, the conduct of any subsequent Auction, the ultimate selection of the Successful Bidder, and the Bankruptcy Court's approval thereof, among other aspects of the Auction.

4
5
6
7
8
9
10
11
12

Debtor has been actively marketing the Assets since early 2018 and has continued post-petition. Debtor believes it is in a position to solicit all parties who potentially have a serious interest in submitting bids ("Potential Bidders"). Debtor, the Committee, and their advisors have already collected information relating to the Assets as they reasonably deem appropriate, and received an offer to purchase the assets from the Stalking Horse Bidder. As part of the implementation of the Bidding Procedures, Debtor, Committee and their advisors intend to contact all parties that they believe might be Potential Bidders and advise them of the opportunity to acquire the Assets at this time. See Burr Declaration ¶¶ 17-20.

13
14
15
16
17

As Potential Bidders are identified and execute appropriate non-disclosure/confidentiality agreements, they will also be provided with such due diligence access to materials and information relating to the Assets as Debtor reasonably deems appropriate, including a copy of the Stalking Horse APA. See Burr Declaration ¶ 21 . Among other things, the Bidding Procedures provide that:

18
19
20
21
22
23
24

a. Potential bidders that are Qualified Bidders shall have until the Bid Deadline to submit to Debtor their definitive bid materials (specifically set forth in the proposed Bid Procedures), which shall include, among other things, a duly authorized and executed purchase agreement for the subject Assets, substantially in the form of the Stalking Horse APA, that will serve as an irrevocable offer pending Debtor's selection of a Successful Bidder for such Assets;

25
26

b. A Qualified Bid will be valued based upon several factors, including, without limitation, items such as the purchase price and the net value

(including assumed liabilities and the other obligations to be performed or assumed by the bidder) provided by such bid, the claims likely to result from or be created by such bid in relation to other bids, the relative ability of the counterparties to the Sale proposed by the Qualified Bidder to consummate such Sale, the nature and extent of any proposed revisions to the Stalking Horse APA, other factors affecting the speed, certainty, and value of the proposed Sale, and the likelihood and timing of consummating such Sale;

c.  If Debtor does not receive any Qualified Bids other than the Stalking Horse Bid, Debtor may forego an auction and proceed to the Sale Hearing for Bankruptcy Court approval of the Stalking Horse Bid;

d.  If Debtor receives two or more Qualified Bids (including the Stalking Horse Bid), Debtor will conduct an auction (the "Auction") of the Assets;

e.  Once a Successful Bid is selected, Debtor will promptly seek Court approval of the selected transaction(s).

The approval of any Sale pursuant to the Bidding Procedures will be contingent upon Court approval. In addition, the closing of any Sale may involve additional intermediate steps or transactions to facilitate consummation of such Sale. Finally, all proceeds of any Sale shall be placed directly into an escrow account, to be released only after entry of the Court's order. See Burr Declaration ¶¶22-25.

No person or entity shall, pursuant to the Bidding Procedures or otherwise, be entitled to any expense reimbursement, break-up fees "topping", termination or other similar fee or payment in connection with the sale of the Assets. See Burr Declaration ¶ 26.

### B.     The terms of the Stalking Horse Bid

The Stalking Horse APA provides for the purchase of all of the Assets other than the Excluded Assets. See Burr Declaration ¶27.  In exchange for the Assets, the Stalking Horse APA provides for consideration of $475,000 at the closing of the Sale, subject to the adjustments listed in the Stalking Horse APA (the "Purchase Price").  The Stalking Horse APA has provided the Debtor with documentation demonstrating its ability to consummate the transaction.  See Burr Declaration ¶¶ 28-29.

The Stalking Horse APA allows the Stalking Horse Bidder to terminate its commitments under the Stalking Horse APA if, among other things, Debtor fails to obtain bankruptcy court approval of the Bidding Procedures before September 12, 2018. See Burr Declaration ¶ 30.

### C.     The Sale Hearing

Debtor requests that the Court establish the deadline by which all Qualified Bidders must submit Bids so as to be ***actually received*** by the parties specified in the Bidding Procedures (the "Bid Deadline") as **October 12, 2018 at 4:00 p.m., Mountain Standard Time.** The Debtor further requests that the Court establish the deadline for filing objections ("Sale Objection") to the relief requested in the Sale Motion, including any objections as to how the Auction was conducted and any objections to the proposed assumption and assignment of executory contracts and/or unexpired leases (the "Sale Objection Deadline"), as **October 5, 2018 at 5:00 p.m. Mountain Standard Time.** Debtor further requests that the Court establish the deadline by which Debtor, the Stalking Horse Bidder, and other parties in interest may file replies to any timely-filed Sale Objection with this Court (the "Reply Deadline") as **October 12, 2018 at 5:00 p.m. Mountain Standard Time.**

Debtor requests that the Court establish the date and time of the Auction, if one is needed, to be held at the Court, as **October 15, 2018 at 10:00 a.m., Mountain Standard**

**Time**.  In the event that the Sale process results in a Successful Bid, Debtor requests the Court enter a Sale Order authorizing and approving the Sale to the Successful Bidder. Debtor is requesting that the Sale Hearing take place after the Auction on **October 18, 2018 or such other first available time that is convenient to the Court**.

At the Sale Hearing, Debtor will request the Court enter the Sale Order. Debtor is aware that the Sale process, as proposed, is aggressively timed, but for the reasons set forth herein, Debtor believes that the process is reasonable, necessary and comports with the Bankruptcy Code and the Bankruptcy Rules, given the finite nature of Debtor's DIP Financing commitment.

Debtor requests the ability for the Sale Hearing (or any portion thereof) to be continued by this Court or Debtor from time to time without further notice other than by announcement in open court, on this Court's calendar or through the filing of a notice or other document on this Court's docket.  Debtor requests that the Court order that the failure to timely file a Sale Objection by the Sale Objection Deadline, as applicable, shall forever bar the assertion of any such Sale Objection to the Sale.

### D. Notice of Bidding Procedures and Sale

Within two (2) business days of the entry of the Bidding Procedures Order, Debtor shall cause the Bidding Procedures Notice to be served upon, without limitation, (i) the Office of the United States Trustee; (ii) counsel to the Official Committee of Unsecured Creditors; (iii) counsel to the Stalking Horse Bidder; and (iv) all parties that have requested or that are required to receive notice pursuant to Bankruptcy Rule 2002; (v) all parties that are known or reasonably believed to have expressed an interest in acquiring all or a substantial portion of the Assets; (vi) all parties that are known or reasonably believed to have asserted any lien, encumbrance, claim or other interest in the Assets.

Additionally, two (2) business days of the entry of the Bidding Procedures Order Debtor will cause a notice of sale and auction to be delivered upon all the parties listed

above, any taxing authorities, and the Master Mailing List (the "Sale Notice"). The Sale Notice shall give notice of the Sale to the Stalking Horse Bidder, the Auction, date of the Sale Hearing, and the Sale Objection Deadline. Further, Debtor will serve notice on all counterparties to any contract to be assumed and assigned of the proposed assumption and assignment as part of the Sale of the Assets, the Cure Amount, and the applicable Sale Objection Deadline (the "Contract Counterparty Notice"). A copy of the proposed Sale Notice and Contract Counterparty Notice are attached hereto as **Exhibits E and F** respectively.

## V.    Sale of the Assets Should be Approved

Through this Motion, Debtor seeks approval of (a) the Bidding Procedures to govern the Auction process and (b) the ultimate sale to a Successful Bidder. As set forth below, the Bankruptcy Code and the facts before this Court support approval of both.

Bankruptcy Code section 363(b)(1) provides: "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." Bankruptcy code section 105(a) provides in relevant part: "[t]he Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

A debtor should be authorized to sell assets out of the ordinary course of business pursuant to Bankruptcy Code section 363 if it demonstrates a sound business purpose for doing so. Although section 363 does not specify a standard for approving bidding procedures, the Ninth Circuit Bankruptcy Appellate Panel has established the debtor's "sound business judgment" rule as an appropriate standard. Under this rule, the "bankruptcy court has considerable discretion in deciding whether to approve or disapprove the use of estate property by a debtor in possession, in the light of sound business justification." See *Walter v. Suntrust Bank (In re Walker)*, 83 B.R. 14, 17 (B.A.P. 9th Cir. 1988)(internal citations omitted); see also *240 North Brand Partners, Ltd. v.*

FENNEMORE CRAIG, P.C.

PHOENIX

1  *Colony GFP Partners (In re 240 N. Brand Partners, Ltd.)*, 200 B.R. 653, 659 (B.A.P. 9th
2  Cir. 1996)("debtors who wish to utilize § 363(b) to dispose of property of the estate must
3  demonstrate that such disposition has a valid business justification"). "Ordinarily, the
4  position of the [debtor in possession] is afforded deference, particularly where business
5  judgment is entailed in the analysis..." See *Fridman v. Anderson (In re Anderson)*, 2016
6  WL 3961303, at * 8 (B.A.P. 9th Cir. July 15, 2016) (internal quotation marks
7  omitted)(affirming order approving out of ordinary course sale where it "had a sound
8  business purpose of bringing money into the estate").

9
10

**A.  The Bidding Procedures are Appropriate and Should be Approved**

11  The Bidding Procedures provide a framework for Debtor to entertain bids for a sale
12  of the Assets and, if Debtor receives such bid(s), to conduct the Auction in a fair and open
13  fashion that will encourage participation by financially capable bidders who demonstrate
14  the ability to close a transaction. The Bidding Procedures also set forth a schedule for
15  achieving these objectives on a cost-effective and expeditious manner. See Burr
16  Declaration ¶¶31-32.

17  Pursuant to Bankruptcy Rule 6004(f)(1) and Local Rule 6004-1, sales of property
18  outside the ordinary course of business in excess of $2,500 require a motion, notice and
19  opportunity for hearing. Consistent with the auction procedures approved routinely by
20  courts presiding over chapter 11 cases such as the Chapter 11 Case, Debtor believes that
21  the proposed Bidding Procedures are most likely to maximize the realizable value of the
22  Assets for the benefit of Debtor's estate, creditors, and other parties-in-interest. See Burr
23  Declaration ¶33.

24  Accordingly, Debtor believes the Court should approve the Bidding Procedures,
25  which are consistent with those procedures that have been previously approved in
26  bankruptcy cases. *See, e.g., Advanced Materials, Inc., et al.*, Case No. 09-16527 (TA)

1  (Bankr. C.D. Cal. July 2, 2009); *Fleetwood Enterprises, Inc., et al.*, Case No. 09-14254
2  (MJ) (Bankr. C.D. Cal. March 10, 2009); *Care Level Management Group, LL C. et al.*,
3  Case No. 08-12913 (MT) (Bankr. C.D. Cal. May 7, 2008); *VI Acquisition Corp.*, Case No.
4  08-10623 (KG) (Bankr. D. Del. Apr. 3, 2008); *Linens Holding Co.*, Case No. 08-10832
5  (CAA) (Bankr. D. Del. May 2, 2008); and *Global Home Products, LLC*, Case No. 06-
6  10340 (KG) (Bankr. D. Del. Apr. 10, 2006).

## B. The Sale of the Debtor's Assets Should Be Approved.

8      Bankruptcy Code § 363 provides that a debtor, "after notice and a hearing, may use
9  sell, or lease, other than in the ordinary course of business, property of the estate." 11
10  U.S.C. § 363(b)(1). The decision to sell assets outside of the ordinary course of business is
11  left to the sound business judgment of the debtor. *See, e.g.*, *In re Montgomery Ward
12  Holding Corp.,* 242 B.R. 147, 153 (D. Del. 1999); *In re Delaware & Hudson Ry. Co.,* 124
13  B.R. 169, 176 (D. Del. 1991); *In re Trans World Airlines, Inc.,* 2001 WL 1820326, at *10
14  (Bankr. D. Del. Apr. 2, 2001).

### 1.    The Sale Is Warranted Under Bankruptcy Code § 363.

16      Courts typically consider the following factors in determining whether to approve a
17  sale under Bankruptcy Code § 363: (i) whether a sound business justification exists for the
18  sale; (ii) whether adequate and reasonable notice of the sale was given to interested
19  parties; (iii) whether the sale will produce a fair and reasonable price for the property; and
20  (iv) whether the parties have acted in good faith. *See In re Delaware & Hudson Ry.,* 124
21  B.R. at 176; *In re Phoenix Steel Corp.,* 82 B.R. 334, 335-36 (Bankr. D. Del. 1987); *In re
22  United Healthcare Sys., Inc.,* No. 97-1159, 1997 WL 176574, at *4 and n.2 (D.N.J. Mar.
23  26, 1997).

24      A sound business purpose for the sale of a debtor's assets outside the ordinary
25  course of business may be found where such a sale is necessary to preserve the value of
26  assets for the estate, its creditors, or interest holders. *See, e.g., In re Abbotts Dairies of*

*Pennsylvania, Inc.,* 788 F.2d 143 (3d Cir. 1986); *In re Lionel Corp.,* 722 F.2d 1063 (2d Cir. 1983). In fact, the paramount goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate. *See In re Food Barn Stores, Inc.,* 107 F.3d 558, 564-65 (8th Cir. 1997) (in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand"); *In re Integrated Res., Inc.,* 147 B.R. 650, 659 (Bankr. S.D.N.Y. 1992) ("It is a well-established principle of bankruptcy law that the . . . [Debtor's] duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate" (quoting *In re Atlanta Packaging Prods., Inc.,* 99 B.R. 124, 130 (Bankr. N.D. Ga. 1988)).

Once "the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *Committee of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.),* 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986). There is a presumption that "in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *In re Integrated Res.,* 147 B.R. at 656 (*quoting Smith v. Van Gorkom,* 488 A.2d 858, 872 (Del. 1985)). Thus, if a debtor's actions satisfy the business judgment rule, then the transaction in question should be approved under Section 363(b)(1).

The Debtor's proposed sale is within its sound business judgment. The Debtor has considered all alternatives with the assistance of its advisors, and has determined that the sale of the Assets through a Bankruptcy Code § 363 sale process in accordance with the proposed Bidding Procedures will maximize the value of the bankruptcy estate and is in the best interest of the estate and the Debtor's creditors. A sale provides the best opportunity to maximize the value of the Debtor's estate under the circumstances. The proposed sale is a valid exercise of the Debtor's business judgment.

2. The Sale of the Assets Should Be Free and Clear of all Liens, Claims, Interests, and Encumbrances.

In order to attract the best bids for the Assets, the Debtor submits that the sale of the Assets should be free and clear of any and all liens, claims, interests, and encumbrances in accordance with Bankruptcy Code § 363(f), with any such liens, claims, interests, and encumbrances attaching to the proceeds of a sale. Pursuant to Bankruptcy Code § 363(f), a debtor may sell property of the estate "free and clear of any interest in such property of an entity other than the estate" if any one of the following conditions is satisfied:

(1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2) such entity consents;

(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4) such interest is in bona fide dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(F)(1) – (5). Because Bankruptcy Code § 363(f) is stated in the disjunctive, satisfaction of any one of its five requirements will suffice to permit the sale of the assets "free and clear" of liens and interests. *See In re Kellstrom Indus., Inc.,* 282 B.R. 787, 793 (Bankr. D. Del. 2002) ("Section 363(f) is written in the disjunctive, not the conjunctive, and if any of the five conditions is met, the debtor has the authority to conduct the sale free and clear of all liens" (*citing Citicorp Homeowners Servs., Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988)).

FENNEMORE CRAIG, P.C.

PHOENIX

1    The Debtor submits that one or more of the conditions set forth in Bankruptcy
2    Code § 363(f) will be satisfied with respect to the sale of the Assets. In particular, §
3    363(f)(2) will be met in connection with the transactions proposed because the only party
4    holding liens, claims or encumbrances on the Assets will consent as it is the Stalking
5    Horse Bidder. Further, DIP Lender which is the only lien holder in this case will be paid
6    in full as part of any sale of the Assets – satisfying Section 363(f)(3).   Accordingly, the
7    Debtor requests that the Assets be sold and transferred to the Successful Bidder free and
8    clear of all liens, claims, interests, and encumbrances pursuant to Bankruptcy Code §
9    363(f).

10                          3.      The Successful Bidder Should be Afforded All Protections
                                    Under Bankruptcy Code § 363(m) as a Good Faith Purchaser.
11

12            Bankruptcy Code § 363(m) protects a good-faith purchaser's interest in property
13    purchased from the debtor notwithstanding that the sale conducted under 363(b) is later
14    reversed or modified on appeal. Specifically, 363(m) states that: The reversal or
15    modification on appeal of an authorization under subsection (b) or (c) of this section of a
16    sale or lease of property does not affect the validity of a sale or lease under such
17    authorization to an entity that purchased or leased such property in good faith, whether or
18    not such entity knew of the pendency of the appeal, unless such authorization and such
19    sale or lease were stayed pending appeal. 11 U.S.C. § 363(m).

20            The Debtor submits, and will present evidence at the Sale Hearing, if necessary,
21    that the selection of the Successful Bidder shall be the product of arm's-length, good-faith
22    negotiations in an anticipated competitive sale process. Accordingly, the Debtor requests
23    that the Court make a finding at the Sale Hearing and in the Sale Order that the Successful
24    Bidder has purchased Assets in good faith and is entitled to the full protections of
25    Bankruptcy Code § 363(m).

26

### C. The Form and Manner of Bidding Procedure Notice are Appropriate.

Bankruptcy Rule 6004 provides that "[n]otice of a proposed use, sale, or lease of property, other than cash collateral, not in the ordinary course of business shall be given pursuant to Rule 2002(a)(2), (c)(l), (i), and (k) and, if applicable, in accordance with § 363(b)(2) of the [Bankruptcy Code]." Fed. R. Bankr. P. 6004(a). Subsections (a)(2), (c)(1), (i) and (k) of Bankruptcy Rule 2002, read together, requires debtors to give all creditors and certain other parties "at least 21 days' notice by mail" of the sale of the assets and the time and place of the auction. Fed. R. Bankr. P. 2002(a)(2), (c)(1), (i) and (k). The period can be reduced in certain emergency situations. <u>See</u> 11 U.S.C. § 102(1); Fed. R. Bankr. P. 2002(c).

With the exception of those parties who receive notices through CM/ECF, Debtor will be mailing notice of this Motion, including the proposed date of the Auction and the Sale Hearing, to all other parties on Debtor's mailing matrix; thus parties will have at least 21 days' notice of the Auction and Sale Hearing. Upon the Court's approval of the Bidding Procedures, Debtor will mail the Bidding Procedures Notice in accordance with the provisions herein.

The Bankruptcy Rules provide that sales free and clear of liens and other interests shall include notices that specify the relevant objection deadlines. Fed. R. Bankr. P. 6004(b). Debtor will do so through the Bidding Procedures Notice, and will request that this Court set the Sale Objection Deadline.

### VI. <u>Request for Relief from Bankruptcy Rules 6004 and 6006</u>

Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property ... is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). Bankruptcy Rule 6006(d) further provides that an "order authorizing the trustee to assign an executory contract or

1    unexpired lease under § 365(f) is stayed until the expiration of 14 days after the entry of

2    the order, unless the court orders otherwise." Fed. R. Bankr. P. 6006(d).

3         Debtor respectfully submits that waiver of the stays under Bankruptcy Rules

4    6004(h) and 6006(d) is appropriate and justified for the Bidding Procedures Order, if

5    applicable thereto, and the Sale Order. The Bidding Procedures, and the related timeline

6    and deadlines, balance the due process protections of the Bankruptcy Code with the reality

7    of Debtor's financial situation and its need to quickly maximize and realize the value of

8    its assets, as well as comply with the Stalking Horse Bid and DIP Financing

9    commitments. As such, these stays should be waived, and Debtor should be authorized to

10   consummate the Sale as expeditiously as possible.

11        **VII.    Conclusion**

12        WHEREFORE, Debtor respectfully requests that this Court (I) enter the Bidding

13   Procedures Order, substantially in the form attached hereto as **Exhibit A**: (a) authorizing

14   and approving Bidding Procedures, substantially in the form attached hereto as **Exhibit B**;

15   (b) authorizing and approving the Auction to sell the Assets in accordance with the

16   Bidding Procedures; (c) authorizing and approving the Bidding Procedures Notice,

17   substantially in the form attached hereto as **Exhibit C;** (d) authorizing and approving the

18   Sale Notice, substantially in the form attached hereto as **Exhibit E**; (f) authorizing and

19   approving the Contract Counterparty Notice, substantially in the form attached hereto as

20   **Exhibit F**; (g) scheduling the Sale Hearing to approve the Sale of the Assets to the

21   Successful Bidder contemporaneous or immediately following the Auction, on terms

22   substantially similar to those set forth in the Stalking Horse APA; and (h) waiving the

23   stays under Bankruptcy Rules 6004(h) and 6006(d); and (II) grant such other and further

24   relief as is just and proper.

25

26

1    DATED this 22nd day of August, 2018.

2                                    FENNEMORE CRAIG, P.C.

3
                                     By: /s/ *Anthony W Austin*
4                                        Anthony W. Austin
                                         Justin R. DePaul
5                                        *Attorneys for Debtor, Tanga.com, LLC*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

FENNEMORE CRAIG, P.C.

PHOENIX

# EXHIBIT A

1
2
3
4
5
6
7  IN THE UNITED STATES BANKRUPTCY COURT

8  FOR THE DISTRICT OF ARIZONA

9  In re                                        Case No. 2:18-bk-06314-BMW

10  TANGA.COM, LLC,                             Chapter 11

11          Debtor.                             **ORDER ESTABLISHING BIDDING PROCEDURES AND DEADLINES RELATED TO SALE PROCESS FOR DEBTOR'S ASSETS**

12

13

14          The Court having reviewed and considered the *Motion for Entry of an Order*

15  *(I) Establishing Bidding Procedures and Deadlines Relating to Sale Process for Debtor's*

16  *Assets and (II) Approving Sale of Assets* filed by Tanga.com, LLC, debtor and debtor in

17  possession in the above-referenced case (the "Chapter 11 Case"), for the entry of an order

18  pursuant to sections 105(a), 363, 365, 503 and 507 of title 11 of the United States Code

19  (the "Bankruptcy Code"), Rules 2002, 6004, 6006, 9007, 9008 and 9014 of the Federal

20  Rules of Bankruptcy Procedure (as amended from time to time, the "Bankruptcy Rules"),

21  and Rules 2002, 6004, 6006 and 9014 of the Local Rules of Bankruptcy Practice for the

22  United States District Court for the District of Arizona (the "Local Rules"):

23          (a) authorizing and approving bidding procedures in connection with the sale of the

24  Assets, free and clear of any liens, claims, or encumbrances;

25          (b) authorizing and approving an auction process to sell the Assets in accordance

26  with the Bidding Procedures;

1    (c) authorizing and approving the form and manner of notice of the bidding

2    procedures and the sale hearing;

3    (d) scheduling a hearing to approve a sale to the highest and best bidder following

4    the Auction, whether it be the Stalking Horse Bidder or any other Qualified Bidder, on

5    terms substantially similar to those set forth in the asset purchase agreement to be

6    executed by the Stalking Horse Bidder, a copy of which was filed with the Court on

7    August 22, 2018 [Dkt. ___] (as may be amended or supplemented, the "Stalking Horse

8    Agreement");

9    (e) authorizing and approving the form and manner of notice of the Sale Notice;

10    (f) authorizing and approving the Contract Counterparty Notice;

11    (e) waiving the stays under Bankruptcy Rules 6004(h) and 6006(d), and

12    (f) granting other related relief.

13    The Court having reviewed and considered the Motion, including the declaration of

14    Edward "Ted" Burr filed in support thereof and any objections thereto (the "Filed

15    Objections"), and the arguments of counsel made, and the evidence adduced at the hearing

16    before the Court on September __, 2018 (the "Hearing"); and upon the record of the

17    Hearing and the Chapter 11 Case and proceedings, and after due deliberation thereon, and

18    good cause appearing therefor and it appearing that the Court has jurisdiction over this

19    matter; and it further appearing that the legal and factual bases set forth in the Bidding

20    Procedures Motion and at the Hearing establish just cause for the relief granted herein;

21    and upon all of the proceedings held before the Court and after due deliberation and

22    sufficient cause appearing therefor:

23    **THE COURT HEREBY FINDS AND CONCLUDES AS FOLLOWS:**

24    1.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334,

25    and over the persons and property affected hereby.

26

1       2.      Consideration of the Bidding Procedures Motion constitutes a core

2   proceeding under 28 U.S.C. § 157(b)(2).

3       3.      Venue for this case and proceedings on the Bidding Procedures Motion is

4   proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

5       4.      Under the circumstances, the Court concludes that the notice given by the

6   Debtor of the Bidding Procedures Motion and the relief requested in the Bidding

7   Procedures Motion constitutes due, sufficient, and appropriate notice and complies with

8   section 102(1) of the Bankruptcy Code, Bankruptcy Rules 2002 and 6004, and the Local

9   Rules of the Court, and that no further notice of, or hearing on the relief sought in the

10  Bidding Procedures Motion and the relief granted herein is necessary or required.

11      5.      Based on the foregoing, and upon the record made before this Court at the

12  hearing on the Bidding Procedures Motion, and good and sufficient cause appearing

13  therefor:

14      **IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

15      A.      The Bidding Procedures Motion is GRANTED in its entirety.

16      B.      All objections (including any Filed Objections) to the Bidding Procedures

17  Motion that have not been withdrawn, waived, or settled and all reservations of rights

18  include therein, are overruled on the merits.

19      C.      The Bidding Procedures attached hereto as **Exhibit 1** are incorporated

20  herein by reference in their entirety, are approved and shall be effective and binding on all

21  parties as if such Bidding Procedures were set forth in this Order.

22      D.      The Bidding Procedures Notice attached hereto as **Exhibit 2** is incorporated

23  herein by reference in its entirety, is approved as adequate and appropriate under the

24  circumstances, and Debtor is directed and authorized to serve and publish the Bidding

25  Procedures Notice within two (2) business days of the date of this Order is entered.

26

E.     The Sale Notice attached hereto as **Exhibit 3** is incorporated herein by reference in its entirety, is approved as adequate and appropriate under the circumstances, and Debtor is directed and authorized to serve the Sale Notice with two (2) business days of the date of this Order is entered as provided in Paragraph L of this Order.

F.     The Contract Counterparty Notice attached hereto as **Exhibit 4** is incorporated herein by reference in its entirety, is approved as adequate and appropriate under the circumstances, and Debtor is directed and authorized to serve the Contract Counterparty Notice with two (2) business days of the date of this Order is entered as provided in Paragraphs U and W of this Order.

G.     The Bid Deadline pursuant to the Bidding Procedures shall be fixed as _____, at **4:00 p.m.** (prevailing Mountain Standard Time).

H.     As further described in the Bidding Procedures, if a Qualified Bid, other than the Stalking Horse Bid, is received by the Bid Deadline, the Debtor will conduct the Auction on **October ___, 2018, commencing at ____.m.** (prevailing Mountain Standard Time), at the Court, in accordance with the terms of the Bidding Procedures.

I.     If the Debtor does not receive a Qualified Bid (other than from the Stalking Horse Bidder's Bid), (i) the Debtor will not hold the Auction, and (ii) the Qualified Bid of the Stalking Horse Bidder shall be deemed to be the Successful Bid for the Assets, and (iii) the Debtor shall be authorized to seek approval of the Qualified Bid of Stalking Horse Bidder as the Successful Bid at the Sale Hearing.

J.     Debtor shall serve the Sale Notice upon, without limitation: (i) the Office of the United States Trustee; (ii) counsel to the Official Committee of Unsecured Creditors; (iii) counsel to the Stalking Horse Bidder; (iv) all parties that have requested or that are required to receive notice pursuant to Bankruptcy Rule 2002; (v) all parties that are known or reasonably believed to have expressed an interest in acquiring all or a substantial portion of the Assets; (vi) all Contract Counterparties; and (vi) all parties that are known

or reasonably believed to have asserted any lien, encumbrance, claim or other interest in the Assets.

K.     In addition, the Debtor (or its agent) shall publish substantially in form and substance the Bidding Procedures Notice in [*The USA Today (National Edition)*] within five (5) business days after entry of this Order.  Such publication notice shall be deemed sufficient and proper notice of the Sale to any other interested parties whose identities are unknown to the Debtors.

L.     Within two (2) business days after entry of this Order, the Debtor shall serve the Sale Notice to parties set forth on the Debtor's creditor matrix who were not served with the Contract Counterparty Notice.

## I.  PRE-AUCTION HEARING, SALE HEARING AND OBJECTION DEADLINES TO SALE

M.     Except as provided in Paragraph P, any objections to the Sale, objections to the proposed Cure Amount, and/or objections to the proposed assumption and assignment of executory contracts and/or unexpired leases for reasons other than the Cure Amount, including, without limitation, whether the Stalking Horse Bidder can provide adequate assurance of future performance ("Sale Objections"), must be filed by as _____, **2018 at 5:00 p.m.** (prevailing Mountain Standard Time) (the "Sale Objection Deadline").

N.     All replies to a timely-filed Sale Objection and Auction must be filed with this Court and served on the objector and the Notice Parties on or before _____, **2018, at 5:00 p.m.** (prevailing Mountain Standard Time).

O.     A hearing to consider the Sale Objections (if any) shall take place on **October ____, 2018, at ____ .m.** (Mountain Standard Time) in Courtroom 446, United States Bankruptcy Court, 38 S. Scott Ave., Suite 100, Tucson, Arizona 85701 or Phoenix Courtroom 301 (the "Pre-Auction Hearing").

1  P.    Any objections to how the Auction was conducted and/or to the adequate

2  assurance of future performance by a Successful Bidder in the event that the Stalking

3  Horse Bidder is not the Successful Bidder must be filed Court by **October __, 2018 at**

4  **5:00** p.m. (prevailing Mountain Standard Time) ("Auction and Adequate Assurance

5  Objection" and the deadline, the "Auction and Adequate Assurance Objection Deadline").

6  Q.    All replies to a timely-filed Auction and Adequate Assurance Objections

7  must be filed with this Court and served on the objector and the Notice Parties on or

8  before **_____, 2018, at 5:00 p.m.** (prevailing Mountain Standard Time).

9  R.    A hearing to approve the sale of the Assets to the Successful Bidder or any

10  Alternate Bidder resulting from the Auction shall take place on **October ____, 2018, at**

11  **____ .m.** (Mountain Standard Time) in Courtroom 446, United States Bankruptcy Court,

12  38 S. Scott Ave., Suite 100, Tucson, Arizona 85701 or Phoenix Courtroom 301 (the

13  "Sale Hearing").

14  S.    All Sale Objections and Auction and Adequate Assurance Objections must:

15  (i) be in writing; (ii) conform to the applicable provisions of the Bankruptcy Rules and the

16  Local Rules; (iii) state with particularity the legal and factual basis for the objection and

17  the specific grounds therefor; and (iv) be filed with the Court and served so actually

18  received no later than the Sale Objection Deadline or Auction and Adequate Assurance

19  Objection Deadline (as applicable), by (A) counsel for the Debtor, (B) counsel for the

20  Committee, (C) counsel for the Stalking Horse Bidder, (D) counsel for the Successful

21  Bidder (if not the Stalking Horse Bidder), and (E) all parties that have requested or that

22  are required to receive notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice

23  Parties").

24  T.    A party's failure to timely file or make an objection in accordance with this

25  Order shall forever bar the assertion of any objection to the Sale, entry of the Sale Order,

26  and/or consummation of the Sale with the Successful Bidder pursuant to the applicable

purchase agreement, including, without limitation, the assumption and assignment of the Contracts to the Successful Bidder pursuant to the applicable purchase agreement, and shall be deemed to constitute such party's consent to entry of the Sale Order and consummation of the Sale and all transactions related thereto, including, without limitation such assumption and assignment

## II. **CONTRACT PROCEDURES**

U.     Two business days after entry of this Order, the Debtor shall serve on all non-Debtor counterparties (each a "Contract Counterparty" and, together, the "Contract Counterparties") to any Contract the Contract Counterparty Notice and advise the Contract Counterparty that may be assumed by the Debtor and assigned to the Successful Bidder, which notice shall be substantially in the form attached hereto as Exhibit 4, setting forth the Debtor's calculation of the Cure Amount, if any, that would be due and owing to such Contract Counterparty if the Contract is assumed and assigned, and alerting such Contract Counterparty that their Contract may be assumed and assigned to the Successful Bidder.

V.     The presence of a Contract on the Contract Counterparty Notice does not constitute an admission that such Contract is an executory contract or unexpired lease, and the presence of a Contract on any notice shall not prevent the Debtor (and the Stalking Horse Bidder) from subsequently withdrawing such request for assumption or rejecting such Contract any time before such Contract is actually assumed and assigned pursuant to the Sale Order.

W.     In the event that the Stalking Horse Bidder is not the Successful Bidder, then the Debtor shall serve same day-notice to all Contract Counterparties with Contracts scheduled to be assumed by the Successful Bidder notice, substantially in the form of the Contract Counterparty Notice, that their Contract is scheduled to be assumed and assigned

1  to a Successful Bidder other than the Stalking Horse Bidder, together with evidence that

2  the Successful Bidder can provide adequate assurance of future performance.

3  X.  A Contract Counterparty that fails to timely file and serve a Sale Objection

4  by the Sale Objection Deadline or an Auction and Adequate Assurance Objection by the

5  Auction and Adequate Assurance Objection deadline is deemed to have consented to

6  (a) such Cure Amount, (b) the assumption and assignment of such Contract, (c) the related

7  relief requested in the Motion and (d) the Sale, and that Contract Counterparty will be

8  forever barred from objecting to (i) the Debtor's proposed cure amount, or (ii) the

9  assignment of that party's Contract to the Successful Bidder.  Where a Contract

10 Counterparty to an Assigned Contract files a timely Contract Objection asserting a higher

11 cure amount than the amount listed in the Contract Counterparty Notice, or objecting to

12 the possible assignment of that Contract Counterparty's executory contract or unexpired

13 lease, and the parties are unable to consensually resolve the dispute, the amount to be paid

14 under Bankruptcy Code section 365 (if any) or, as the case may be, the Debtor's ability to

15 assign the executory contract or unexpired lease to the Successful Bidder will be

16 determined at the Sale Hearing.

17 Y.  The fourteen (14) day stays under Bankruptcy Rules 6004(h) and 6006(d)

18 are hereby waived.

19 Z.  This Court shall retain jurisdiction to hear and determine all matters arising

20 from the implementation and/or interpretation of this Order.

21 **IT IS SO ORDERED**

22

23

24

25

26

# EXHIBIT 1

**BIDDING PROCEDURES IN CONNECTION WITH THE**
**SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS**

## A.      Preliminary Statement[1]

1.      Set forth below are the bidding procedures (the "Bidding Procedures") to be employed by Tanga.com, LLC ("Tanga" or "Debtor") in the chapter 11 case pending in the United States Bankruptcy Court for the District of Arizona (the "Bankruptcy Court") under Case No. 2:18-bk-06314-BMW (the "Chapter 11 Case") with respect to the proposed sale (collectively, the "Sale") of certain of Debtor's assets and the assumption of certain of Debtor's liabilities.

2.      The assets to be sold at the Sale consist of the substantially all of the Assets of Tanga Assets and shall be referred to collectively as the "Assets".

3.      As used in these Bidding Procedures, the term "Consultation Parties" shall mean: (i) the Debtor's financial and legal advisors; and (ii) the Official Committee of Unsecured Creditors appointed in the Chapter 11 Case (the "Committee").

## B.      Bidding Process

1.      The Bidding Procedures set forth herein describe, among other things, the Assets (as defined below) available for Sale, the manner in which potential bidders may gain access to or continue to have access to due diligence materials concerning the Assets, the manner in which potential bidders and bids may become Qualified Bidders and Qualified Bids (as defined below), respectively, the receipt and negotiation of bids received, the conduct of any Auction (as defined below), the ultimate selection of the Successful Bidder (as defined below), and the Bankruptcy Court's approval thereof (collectively, the "Bidding Process").

2.      In the event of any dispute regarding the interpretation or application of these Bidding Procedures or the Bidding Process, the Bankruptcy Court will have exclusive jurisdiction to hear and resolve such dispute.

3.      The Bidding Process will be conducted by Debtor. The approval of any Sale pursuant to these Bidding Procedures will be contingent upon Bankruptcy Court approval. In addition, the closing of any Sale may involve additional intermediate steps or transactions to facilitate consummation of such Sale.

## C.      Assets to Be Sold

1.      Tanga is offering for sale all of its Assets, including all personal property that is owned by Tanga, as more specifically set forth on **Schedule 2** annexed hereto.

---

[1]   Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the *Debtor's Debtor's Motion for Entry of Order (I) Establishing Bidding Procedures and Deadlines Relating to Sale Process for of Debtor's Assets and (II) Approving the Sale of the Assets* (the "Bidding Procedures and Sale Motion").

2.      The following property is not included in the Assets and shall not be subject to or included in the Sale (the "Excluded Assets"):

  a.  all rights of Seller under this Agreement and any Ancillary Agreements

  b.  Tax returns of Seller (and related workpapers), other than those relating to the Purchased Assets or the Business;

  c.  any Contract that is not an Assumed Contract including any Contract which is not assumable and assignable as a matter of applicable law (including, without limitation, any with respect to which any consent requirement in favor of the counter-party thereto may not be overridden pursuant to Section 365 of the Bankruptcy Code) (collectively, "Excluded Contracts");

  d.  any rights under any Plan;

  e.  all Cash and bank accounts elected not to be acquired by Buyer;

  f.  all shares of capital stock or other equity interests in or issued by Seller or any other Person, or any securities convertible into, exchangeable or exercisable for shares of capital stock or other equity interests in or issued by Seller or any other Person;

  g.  all rights under or arising out of insurance policies not primarily relating to the Purchased Assets and any recovery thereunder;

  h.  all current and prior director and officer insurance policies of Seller, if applicable, and all rights of any nature with respect thereto, including all insurance recoveries thereunder and rights to assert claims with respect to any such insurance recoveries;

  i.  all Permits not transferred pursuant to Section 1.1.10.

  j.  any causes of action pursuant to Bankruptcy Code §§ 544, 545, 547, 548, 550, or 553 and any monies recovered in connection with the successful prosecution or settlement of subsection of such actions (collectively, the "Avoidance Actions").

## D.      Sale "As Is"

The Sale of the Assets will be on an "as is", "where is", "with all faults" basis and without representation or warranty, either express or implied, of any kind, including, without limitation, any warranties as to merchantability, fitness or usability and without any surviving representations or warranties of any kind, nature, or description by Debtor, its agents, or its estate.

**E.** **Free of Any and All Claims and Interests; Cure Costs**

1.      Except as may be agreed to by a Successful Bidder in its Purchase Agreement (as such terms are defined below), all of the rights, title and interests of Debtor in and to the Assets, or any portion thereof, to be acquired as part of the Sale will be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options, and interests thereon and there against (collectively, the "Claims and Interests") as permitted by, and pursuant to, Bankruptcy Code sections 105(a), 363, 365, and, to the extent applicable, 1123 and 1129 of the Bankruptcy Code, with such Claims and Interests attaching to the net proceeds of the sale of such Assets, subject to Debtor's right to challenge the amount, extent and validity of such Claims and Interests.

2.      As used herein, the term "cure costs" means, with respect to any executory contract or unexpired lease that amount which is required to be paid to cure any monetary defaults under such executory contract or unexpired lease.

3.      Except as may be agreed to by a Successful Bidder in its Purchase Agreement (as such terms are defined below), the Successful Bidder shall pay all cure costs for any of Debtor's unexpired leases and/or executory contracts that Successful Bidder wants Debtor to assume and assign to it.

4.      With respect to all executory contracts and unexpired leases that the Succesful Bidder wants Debtor to assume and assign to it, Debtor will file in the case the Debtor's calculation of the cure costs for same. In the event of a dispute, the matter will be brought before the Court for resolution and determination at the Sale hearing.

**G.** **Confidentiality Agreement(s)**

Each Potential Bidder must execute and deliver a confidentiality agreement in form and substance reasonably satisfactory to Debtor (the "Confidentiality Agreement").

**H.** **Participation Requirements; Deadlines**

1.      Unless otherwise ordered by the Bankruptcy Court for cause shown or otherwise consented to by Debtor, after consultation with the Consultation Parties, in order to participate in the Bidding Process, each bidder (each a "Potential Bidder") must deliver the following to Debtor and the Consultation Parties:

   a.  an executed Confidentiality Agreement (to be delivered prior to the distribution of any confidential information by Debtor to a Potential Bidder) which shall inure to the benefit of any purchaser of the Assets (in the event that the Potential Bidder has already entered into a confidentiality agreement with Debtor, it must provide a statement agreeing that its obligations under such agreement shall inure to the benefit of any purchaser of the Assets and waiving any of its rights under such confidentiality agreement that are in conflict with the Bidding Procedures or that would otherwise prohibit disclosures regarding the Potential Bidder to the Consultation Parties); and

   b.  evidence of financial capability of the Potential Bidder to consummate the Sale that will allow Debtor and the Consultation Parties to make a reasonable determination as to

the Potential Bidder's financial and other capabilities to consummate the Sale and provide adequate assurance of future performance under all executory contracts and unexpired leases that it wishes Debtor to assume and assign to it.

2. A "Qualified Bidder" shall mean a Potential Bidder who submits a Qualified Bid (as hereinafter defined):

a. whose financial information and/or credit quality support, or enhancement, demonstrate to Debtor's satisfaction the financial capability of the Qualified Bidder to consummate the Sale and provide adequate assurance of future performance under all executory contracts and unexpired leases that it wishes Debtor to assume and assign to it; and

b. that Debtor, after consultation with the Consultation Parties, determines is likely (based on availability of financing, experience and other considerations) to be able to consummate the Sale.

For the avoidance of doubt, the Stalking Horse Bidder and the Stalking Horse Bid shall be considered a Qualified Bidder and Qualified Bid, respectively.

## J. Due Diligence

1. Debtor shall, subject to competitive and other business considerations and its rights hereunder regarding the conduct of the Auction, afford each Qualified Bidder and any person seeking to become a Qualified Bidder that has executed a Confidentiality Agreement with Seller such due diligence access to materials and information relating to the Assets as Seller reasonably deems appropriate.

2. Due diligence access shall include review of documentation in the Seller's possession which may be reasonably requested by a Qualified Bidder in writing to the Seller and other matters which a Qualified Bidder or other person seeking to become a Qualified Bidder may reasonably request, and the Seller shall allow Qualified Bidders' representatives reasonable access to the Assets. Debtor may, in its discretion, coordinate diligence efforts such that multiple parties have simultaneous access to due diligence materials and/or simultaneous attendance at management presentations or site inspections.

3. Neither the Seller nor any of its representatives will be obligated to furnish any information relating to the Assets to any person other than to Qualified Bidders and any other person seeking to become a Qualified Bidder that has executed a Confidentiality Agreement with the Sellers.

4. The Seller makes no representation or warranty as to the information to be provided through this due diligence process or otherwise, except to the extent set forth in the proposed asset purchase agreement (the "Stalking Horse APA") with E. Chabot, Ltd. or its designee (the "Stalking Horse Bidder").

**K.    Notices**

1. A Qualified Bidder that desires to make a bid must deliver written copies of its bid materials to the following parties:

**(a)    Tanga.com, LLC:** Attn: Jeremy Young, 2487 South Gilbert Road, Suite 106-485, Chandler, Arizona 85225; email jeremy@tanga.com

**(b)    Debtor's counsel:** Fennemore Craig, PC, Attn: Anthony W. Austin 2394 East Camelback Road, Suite 600, Phoenix, Arizona 85018; email aaustin@fclaw.com

**(c)    Debtor's financial advisors:** Mac Restructuring Advisors, LLC, Attn: Edward M. Burr, Jr., 10910 E. Shangri La Rd. Scottsdale, AZ 85260, Email: Ted@MacRestructuring.com

**(d)    Counsel to the Committee:** Stinson Leonard Street, LLP, Attn: Thomas Salerno, and Christopher Simpson, 1850 N. Central Ave., Suite 2100 Phoenix, AZ 85004, email Thomas.salerno@stinson.com, christoper.simpson@stinson.com.

**(e)    Committee's financial advisors:** Sonoran Capital, Attn: Bryan S. Perkinson, 1733 North Greenfield Road, Suite 101 Mesa Arizona 85205, email bperkinson@sonorancap.com

**L.    Qualified Bid**

1.    For all Qualified Bids, other than the bid submitted by the Stalking Horse Bidder (the "Stalking Horse Bid"), a bid will be considered a Qualified Bid only if the bid is submitted by a Qualified Bidder, and complies with all of the following (a "Qualified Bid"):

(a)    it includes a general summary ("Summary") containing all of the following:

i.    the purchase price for such Assets (including liabilities to be assumed by the Qualified Bidder) and form of consideration;

ii.    any material assets and liabilities expected to be excluded;

iii.    the structure  and financing of the Sale (including, but not limited to, the sources of financing for the purchase price and all requisite financial assurance and a description for funding post-acquisition working capital for the target);

iv.    the anticipated time frame and any anticipated impediments for consummating the Sale.

(b)    it includes a letter stating that the Qualified Bidder's offer is irrevocable until the selection of the Successful Bidder;

(c)    it includes a duly authorized and executed purchase agreement, including the purchase price for the subject Assets expressed in U.S. Dollars (the "Purchase Price"), together with all exhibits and schedules thereto, substantially in the form of the Stalking Horse APA.

(d)    the Purchase Price must exceed the Purchase Price in the Stalking Horse Bid by at least $25,000.00.

(e)    it is not conditioned on the outcome of unperformed due diligence by the Qualified Bidder (and includes an acknowledgement and representation that the Qualified Bidder has had an opportunity to conduct any and all required due diligence regarding the Assets prior to making its offer);

(f)    it fully discloses the identity of each entity that will be bidding for the Assets or otherwise sponsoring or participating in connection with such bid, and the complete terms of any such participation;

(g)    it includes an acknowledgment and representation that the Qualified Bidder will assume Debtor's obligations under Debtor's executory contracts and unexpired leases proposed to be assigned pursuant to the purchase agreement (and identifies with particularity which of such contracts and leases of Debtor that the Qualified Bidder wishes not to be assigned, or alternatively which additional executory contracts or unexpired leases of Debtor that the Qualified Bidder wishes to be assigned), contains full details of the Qualified Bidder's proposal for the treatment of related cure costs; and it identifies with particularity any executory contract or unexpired lease the assumption and assignment of which is a condition to closing;

(h)    it includes an acknowledgement and representation that the Qualified Bidder: (i) has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Assets in making its bid; (ii) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express or implied (by operation of law or otherwise), regarding the Assets or the completeness of any information provided in connection therewith or the Auction; and (iii) is not entitled to any expense reimbursement or break-up fee in connection with its bid; and

(j)    it contains other information reasonably requested by the Seller.

2.    All of the information and materials required to be delivered by a Potential Bidder(s) must be received by the Bid Deadline. The Bid Deadline has been set by the Bankruptcy Court and means (___days prior to auction) at 4:00 p.m. (prevailing Mountain Standard Time).

3.    The Debtor will, and reserves the right to, determine, in its reasonable business judgment and following consultation with the Consultation Parties, whether to entertain bids for the Assets that do not conform to one or more of the requirements specified herein and whether to deem such bids to be Qualified Bids. Debtor shall notify each Qualified Bidder in writing as to whether or not its bid constitutes a Qualified Bid promptly following the expiration of the Bid Deadline.

**M.** **Evaluation of Competing Bids**

A Qualified Bid will be valued based upon several factors including, without limitation, items such as the purchase price and the net value (including assumed liabilities and the other obligations to be performed or assumed by the bidder) provided by such bid, the claims likely to result from or be created by such bid in relation to other bids, the relative ability of the counterparties to the Sale proposed by the Qualified Bidder to consummate such Sale, the nature and extent of any proposed revisions to the Stalking Horse APA, other factors affecting the speed, certainty and value of the proposed Sale, any Assets excluded from the bid, the transition services required from the Sellers post-closing and any related restructuring costs, and the likelihood and timing of consummating such Sale, each as determined by Debtor following consultation with the Consultation Parties.

**N.** **Single Qualified Bid**

If Debtor does not receive any Qualified Bids other than the Stalking Horse Bid, Debtor shall forego an auction and proceed to a Sale Hearing for Bankruptcy Court approval of the Stalking Horse Bid.

**O.** **Auction Date, Time and Place**

If Debtor receives two or more Qualified Bids (including the Stalking Horse Bid), Debtor will conduct an auction (the "Auction") of the Assets, on _____ at __.m. (Mountain Standard Time), at the Bankruptcy Court before Judge Whinery. The Auction may be cancelled or adjourned without consent of any Qualified Bidder.

**P.** **Auction Procedures**

    1.    The Auction shall run in accordance with the following procedures:

        (a)  Only the Qualified Bidders that have timely submitted Qualified Bids, the Sellers, the Consultation Parties, and any creditor of Debtor (and the advisors to such Qualified Bidder or creditor of Debtor) shall attend the Auction in person, and only such Qualified Bidders will be entitled to make any subsequent bids at the Auction.

        (b)  Each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the Sale.

        (c)  Simultaneous with the submission of a Bid, each Qualified Bidder who has timely submitted a Qualified Bid must inform Debtor whether it intends to attend the Auction, provided that in the event a Qualified Bidder elects not to attend the Auction, such Qualified Bidder's Qualified Bid shall nevertheless remain fully enforceable against such Qualified Bidder until (i) the date of the selection of the Successful Bidder at the conclusion of the Auction and (ii) if such bidder is selected as an Alternate Bidder, the Alternate Bid Expiration Date. At least one (1) Business Day prior to the Auction, Debtor will provide copies of the Qualified Bid which the Debtor believes, in its reasonable business judgment and after

consultation with the Consultation Parties, is the highest or otherwise best offer (the "Starting Bid") to all Qualified Bidders that have timely submitted Qualified Bids and have informed Debtor of their intent to attend the Auction.

(d) All Qualified Bidders who have timely submitted Qualified Bids will be entitled to be present for all Subsequent Bids (as defined below) at the Auction with the understanding that the true identity of each Qualified Bidder at the Auction will be fully disclosed to all other Qualified Bidders at the Auction and that all material terms of each Subsequent Bid will be fully disclosed to all other bidders throughout the entire Auction, provided that all Qualified Bidders wishing to attend the Auction must have at least one individual representative with authority to bind such Qualified Bidder attending the Auction in person.

(e) At the request of the Debtor, the Court may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances (e.g., the amount of time allotted to make Subsequent Bids) for conducting the Auction.

(f) Bidding at the Auction will begin with the Starting Bid and continue, in one or more rounds of bidding, so long as during each round at least one subsequent bid is submitted by a Qualified Bidder that (i) improves upon such Qualified Bidder's immediately prior Qualified Bid (a "Subsequent Bid") and (ii) Debtor determines, that such Subsequent Bid is (A) for the first round, a higher or otherwise better offer than the Starting Bid, and (B) for subsequent rounds, a higher or otherwise better offer than the Leading Bid (as defined below). Any initial bid at the Auction shall provide net value to the estate of at least US $10,000.00 over the Starting Bid or the Leading Bid, as the case may be After the first round of bidding and between each subsequent round of bidding, Debtor shall announce the bid (and the value of such bid(s)) that it believes to be the highest or otherwise better offer (the "Leading Bid"). A round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a Subsequent Bid with full knowledge of the Leading Bid. Except as specifically set forth herein, for the purpose of evaluating the value of the consideration provided by Subsequent Bids, Debtor will, at each round of bidding, give effect to any additional liabilities to be assumed by a Qualified Bidder and any additional costs which may be imposed on Sellers.

(g) The Stalking Horse Bidder shall have the right to "credit bid" up to the full amount of the DIP Obligations; provided, however, the DIP Lender shall only be entitled to credit bid up to Forty Five Thousand and No/100 Dollars ($45,000.00) of the attorney's fees and costs it incurs in connection with the Case.

## Q.   Selection of Successful Bid

1.   Prior to the conclusion of the Auction, Debtor will (a) review each Qualified Bid that is either the Leading Bid or submitted subsequent to and as an improvement to the submission of the Leading Bid on the basis of financial and contractual terms and the factors relevant to the sale process, including, among other things, the proposed revisions to the Stalking Horse APA, the ability of the counterparties to such proposed Sale to consummate the Sale, the

purchase price and the net value (including assumed liabilities and the other obligations to be performed or assumed by the Qualified Bidder) provided by such Qualified Bid, the claims likely to result from or be created by such bid in relation to other bids, other factors affecting the speed, certainty and value of the Sale (including any assets excluded from the Qualified Bid, the transition services required from Debtor post-closing and any related restructuring costs, and the likelihood and timing of consummating the Sale; (b) following consultation with the Consultation Parties, identify the highest or otherwise best offer for the Assets received in accordance with the Bidding Procedures (such bid, the "Successful Bid" and the Qualified Bidder making such bid, collectively, the "Successful Bidder"); and (c) communicate to the Qualified Bidders the identity of the Successful Bidder, and the details of the Successful Bid. The determination of the Successful Bid by Debtor, at the conclusion of the Auction, shall be final subject to approval by the Bankruptcy Court.

2.      Upon the Debtor's selection of the Successful Bidder (other than the Stalking Horse Bidder), the Successful Bidder shall tender a good faith deposit ("Good Faith Deposit") in the form of a wire transfer (to a bank account specified by Debtor), certified check or such other form acceptable to Debtor, payable to the order of Debtor (or such other party as Debtor may determine) in an amount equal to US $150,000; and, one business day after the Approval Order (defined below) becomes final and non-appealable.

3.      The Good Faith Deposit will be treated as provided for under Section S below.

**R.      Sale Hearing**

1.      The Court shall conduct a hearing ("Sale Hearing") on ____, 2018,  to consider approval of the Sale.

2.      The Sale Hearing will be held before a United States Bankruptcy Judge, United States Bankruptcy Court, Courtroom 446, United States Bankruptcy Court, 38 S. Scott Ave., Suite 100, Tucson, Arizona 85701or Phoenix Courtroom 301. (the "Court"), on a date and time set by the Court, preferably October 18, 2018. The Sale Hearing may be continued or rescheduled by the Court, upon Debtor's request.

3.      If the Sellers receive one or more Qualified Bid(s), then, at the Sale Hearing, Debtor will seek approval of the Successful Bid. The Sale Motion will not constitute Debtor's acceptance of either of such bids, which acceptance will only occur upon the Bankruptcy Court's entry of an order (the "Approval Order") granting the Sale Motion after the conclusion of the Sale Hearing.

4.      All proceeds from the sale of the Assets in accordance with the Approval Order shall be placed directly into an escrow account, to be released only after entry of the Bankruptcy Court's order.

**S.      Good Faith Deposits**

The Good Faith Deposit of the Successful Bidder will be applied in accordance with the terms of the Successful Bid, if the Sale to the Successful Bidder closes. If the Sale to the Successful Bidder

fails to close for any reason (other than through the fault of the Sellers), then the Good Faith Deposits will be relinquished to Debtor.

**T.**     **Debtor's Reservation of Rights**

The Debtor, in consultation with the Consultation Parties: (a) may waive any requirements for a Potential Bidder to become a Qualified Bidder; (b) may waive any requirement for a bid to become a Qualified Bid; (c) after each round of bidding at the Auction, may determine which Qualified Bid, if any, is the highest or otherwise best offer and the value thereof; (d) may reject, at any time, any bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures, or any other orders applicable to one or more Debtor, or the terms and conditions of the Sale or (iii) contrary to the best interests of Debtor, its estate, and stakeholders as determined by Debtor; (e) may impose additional terms and conditions and otherwise modify the Bidding Procedures at any time; (f) withdraw from sale any Assets at any time and make subsequent attempts to market the same; and (g) reject all bids.

Schedule 1
Assets

a)      all Cash elected to be acquired by Buyer at its discretion, and all bank accounts listed on Schedule 1.1.1 to be acquired by Buyer at its discretion;

b)      all furniture, fixtures, equipment, machinery and other tangible personal property used or held for use by Seller at the locations at which the Business is conducted, or otherwise owned or held by Seller at the Closing for use in the conduct of the Business (the "Personal Property"), a list of which, which Seller represents is a true, correct and complete as of the date hereof is attached to the Stalking Horse APA as Schedule 1.1.2;

c)      all Inventories as of the Closing Date, a list of which, which Seller represents is a true, correct and complete as of the date hereof, is attached to the Stalking Horse APA as Schedule 1.1.3;

d)      all Receivables as of the Closing Date, a list of which, which Seller represents is a true, correct and complete as of the date hereof, is attached to the Stalking Horse APA as Schedule 1.1.4;

e)      all books of account, general, financial, Tax and personnel records, invoices, shipping records, supplier lists, correspondence and other documents, records and files and any rights thereto owned, associated with or employed by Seller in connection with the Business and all sales and promotional literature, customer lists and other sales-related materials related to the Business owned, used, associated with or employed by Seller at the Closing and excluding organization documents, minute and stock record books and the corporate seal of Seller (collectively, "Documents");

f)      the goodwill of Seller relating to the Business;

g)      all Seller's right, title and interest in, to and under the Owned Intellectual Property and the Transferred IP Agreements, copies and tangible embodiments thereof in whatever form or medium, and all rights to sue and recover damages for past, present and future infringement, dilution, misappropriation, violation, unlawful imitation or breach thereof (collectively, "Seller Intellectual Property");

h)      other than Avoidance Actions, all claims, causes of action, choices in action, rights of recovery and rights of setoff of any kind (including rights to insurance proceeds and rights under and pursuant to all warranties, representations and guarantees made by suppliers of products, materials, or equipment, or components thereof), related to the Business pertaining to, arising out of and inuring to the benefit of Seller;

i)      all rights of Seller under all contracts, licenses, sublicenses, agreements, leases, commitments, and sales and purchase orders, and under all bids and offers related to the Business (to the extent such offers are transferable) (collectively, "Contracts") listed on Schedule 1.1.9 tp the Stalking Horse APA (the "Assumed Contracts");

j)      all municipal, state and federal franchises, permits, licenses, agreements, waivers and authorizations held or used by Seller in connection with, or required for, the Business, to the extent transferable (collectively, the "Permits"), a list of which, which Seller represents is a true, correct and complete as of the date hereof, is attached to the Stalking Horse APA as Schedule 1.1.10; and

k)      all Seller's right, title and interest at the Closing in, to and under all other assets, rights and claims of every kind and nature used or intended to be used in the operation of, or residing with, the Business.

# EXHIBIT 2

1  Fennemore Craig, P.C.
   Anthony W. Austin (No. 025351)
2  Justin R. DePaul (No. 031581)
   2394 East Camelback Road, Suite 600
3  Phoenix, AZ  85016-3429
   Telephone:  (602) 916-5000
4  Email:  aaustin@fclaw.com
   Email:  jdepaul@fclaw.com
5
   Attorneys for Debtor
6  Tanga.com, LLC

7                    IN THE UNITED STATES BANKRUPTCY COURT

8                         FOR THE DISTRICT OF ARIZONA

9   In re                                    Case No. 2:18-bk-06314-BMW

10  TANGA.COM, LLC,                          Chapter 11

11              Debtor.                      **NOTICE OF BID DEADLINE, AUCTION
                                             AND SALE APPROVAL HEARING
12                                           RELATING TO SALE PROCESS FOR
                                             DEBTOR'S ASSETS AND SALE OF
13                                           DEBTOR'S ASSETS**

14

15          **PLEASE TAKE NOTICE THAT** on August 22, 2018, Tanga.com, LLC ("Tanga"

16  or "Debtor"), debtor and debtor in possession in the above-referenced chapter 11

17  bankruptcy case (the "Chapter 11 Case"), under chapter 11 of the United States Bankruptcy

18  Code 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), filed *Debtor's Motion for Entry of

19  Order (I) Establishing Bidding Procedures and Deadlines Relating to Sale Process for of

20  Debtor's Assets and (II) Approving the Sale of the Assets* [Docket No. ]    (the    "Bidding

21  Procedures and Sale Motion")[1] with the United States Bankruptcy Court for the District of

22  Arizona (the "Court") for an order pursuant to sections 105(a), 363, 365, 503, and 507 of

23  the Bankruptcy Code and Rules 2002, 6004, 6006, 9007, 9008, and 9014 of the Federal

24  Rules of Bankruptcy Procedure: (a) authorizing and approving bidding procedures (the

25  "Bidding Procedures") in connection with the sale (the "Sale") of the Assets (as defined

26  _____
    [1] All capitalized terms used herein and not otherwise defined herein shall have the respective meanings ascribed to
    them in the Motion or in the Bidding Procedures, as applicable

below), free and clear of any liens, claims or encumbrances; (b) authorizing and approving an auction process (the "<u>Auction</u>") to sell the aforesaid assets in accordance with the Bidding Procedures; (c) authorizing and approving the form and manner of notice of the bidding procedures (the "<u>Bidding Procedures Notice</u>"), and (d) scheduling a hearing to approve a sale to the highest and best bidder (the "<u>Successful Bidder</u>") contemporaneous with or immediately following the Auction, whether it be the Stalking Horse Bidder any other Qualified Bidder (as defined in the Bidding Procedures), on terms substantially similar to those set forth in the asset purchase agreement to be executed by the Stalking Horse Bidder (the "<u>Stalking Horse APA</u>"); (e) waiving the stays under Bankruptcy Rules 6004(h) and 6006(d); and (f) approving the sale of the Assets to the Successful Bidder.

**PLEASE TAKE FURTHER NOTICE THAT** on _____, 2018, the Court entered an *Order Establishing Bidding Procedures and Deadlines Relating to Sale Process for of Debtor's Assets* [Docket No. _____] (the "<u>Bidding Procedures Order</u>"), approving the form of this Bidding Procedures Notice and the Bidding Procedures, and authorizing Debtor to employ the Bidding Procedures.

**PLEASE TAKE FURTHER NOTICE THAT,** Debtor has requested the Court authorize the sale of the Assets to the Successful Bidder(s) pursuant to the terms of the Successful Bid.

**PLEASE TAKE FURTHER NOTICE THAT** any person or entity wishing to submit a bid for the Assets is urged to review the Bidding Procedures Order, the Bidding Procedures (annexed as Exhibit 1 to the Bidding Procedures Order incorporated therein by reference), and the Bidding Procedures and Sale Motion. Copies of the Bidding Procedures Sale Motion and the Bidding Procedures Order, including the Bidding Procedures, may be reviewed (a) during regular Court hours at the United States Bankruptcy Court, 38 S. Scott Ave., Suite 100, Tucson, Arizona 85701, (b) electronically

1   at www.azb.uscourts.gov, the official website for the Court, or (c) upon written request to

2   counsel for Debtor, Fennemore Craig, PC, 2394 East Camelback Road, Phoenix, AZ

3   85016, Attention: Anthony W. Austin aaustin@fclaw.com.

4       **PLEASE TAKE FURTHER NOTICE THAT** the "Bid Deadline" is **_____,**

5   **2018, at 4:00 p.m.** (Mountain Standard Time). Potential bidders that are Qualified Bidders

6   shall have until the Bid Deadline to submit to Debtor and to the Consultation Parties (as

7   specified in the Bid Procedures) their definitive bid materials (specifically set forth in the

8   proposed Bidding Procedures), which shall include, among other things, a duly authorized

9   and executed purchase agreement for the subject Assets, substantially in the form of the

10  Stalking Horse APA (as defined in the Bidding Procedures), that will serve as an irrevocable

11  offer pending Debtor's selection of a Successful Bidder for such Assets. Any person or entity

12  that does not submit a bid by the Bid Deadline (as may be extended pursuant to the Bidding

13  Procedures) shall not be permitted to participate in the Auction.

14      **PLEASE TAKE FURTHER NOTICE THAT**, pursuant to the Bidding Procedures

15  Order, if Debtor receives two or more Qualified Bids (including the Stalking Horse Bid) by

16  the Bid Deadline, Debtor shall conduct the Auction on **_____, 2018, commencing at ____**

17  **a.m.** (Mountain Standard Time) at the Courtroom 446, United States Bankruptcy Court, 38 S.

18  Scott Ave., Suite 100, Tucson, Arizona 85701 or Phoenix Courtroom 301. If Debtor does not

19  receive any Qualified Bids other than the Stalking Horse Bid, Debtor will forego the Auction

20  and proceed to a Sale Hearing for Bankruptcy Court approval of the Stalking Horse Bid.

21      **PLEASE TAKE FURTHER NOTICE THAT** the Court shall conduct a hearing on

22  **____, 2018, at ___ _.m.** (Mountain Standard Time) at the United States Bankruptcy Court,

23  Courtroom 446, 38 S. Scott Ave., Suite 100, Tucson, Arizona 85701 or Phoenix

24  Courtroom 301: (i) to authorize and approve the Sale to the Successful Bidder, (ii) to

25  determine all issues regarding assumption and assignment of executory contracts and

26  unexpired leases in connection therewith, and (iii) to grant related relief.

1    DATED this ___ day of August, 2018.

2                                    FENNEMORE CRAIG, P.C.

3
                                     By: /s/ *Anthony W Austin*
4                                         Anthony W. Austin
                                          Justin R. DePaul
5                                         *Attorneys for Debtor, Tanga.com, LLC*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

# EXHIBIT 3

1  Fennemore Craig, P.C.
   Anthony W. Austin (No. 025351)
2  Justin R. DePaul (No. 031581)
   2394 East Camelback Road, Suite 600
3  Phoenix, AZ 85016-3429
   Telephone: (602) 916-5000
4  Email: aaustin@fclaw.com
   Email: jdepaul@fclaw.com
5
   Attorneys for Debtor
6  Tanga.com, LLC

7            IN THE UNITED STATES BANKRUPTCY COURT

8                FOR THE DISTRICT OF ARIZONA

9  | In re | Case No. 2:18-bk-06314-BMW |
   |---|---|
10 | TANGA.COM, LLC, | Chapter 11 |
11 | Debtor. | **NOTICE OF SALE OF ASSETS** |

12

13      **PLEASE TAKE NOTICE THAT** on August 22, 2018, Tanga.com, LLC ("Tanga"

14  or "Debtor"), debtor and debtor in possession in the above-referenced chapter 11

15  bankruptcy case (the "Chapter 11 Case"), under chapter 11 of the United States Bankruptcy

    Code 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), filed *Debtor's Motion for Entry of*
16
    *Order (I) Establishing Bidding Procedures and Deadlines Relating to Sale Process for of*
17
    *Debtor's Assets and (II) Approving the Sale of the Assets* [Docket No. ]    (the      "Bidding
18
    Procedures and Sale Motion").[1]
19
        **PLEASE TAKE FURTHER NOTICE THAT,** Debtor has requested the Court
20
    authorize the sale of the Assets to the Successful Bidder(s) pursuant to the terms of the
21
    Successful Bid.
22
        **PLEASE TAKE FURTHER NOTICE THAT** the Court shall conduct a hearing on
23
    ____, 2018, at ___ _.m. (Mountain Standard Time) at the United States Bankruptcy Court,
24
    Courtroom 446, 38 S. Scott Ave., Suite 100, Tucson, Arizona 85701 or Phoenix
25

    ---

26  [1] All capitalized terms used herein and not otherwise defined herein shall have the respective meanings ascribed to
    them in the Motion or in the Bidding Procedures, as applicable

Courtroom 301: (i) to authorize and approve the Sale to the Successful Bidder, (ii) to determine all issues regarding assumption and assignment of executory contracts and unexpired leases in connection therewith, and (iii) to grant related relief (the "Sale Hearing").

**PLEASE TAKE FURTHER NOTICE THAT** any objections ("Sale Objections") to the Sale, objections to the proposed Cure Amount, and/or objections to the proposed assumption and assignment of executory contracts and/or unexpired leases for reasons other than the Cure Amount, including, without limitation, whether the Stalking Horse Bidder can provide adequate assurance of future performance, must be filed by as **_____, 2018 at 5:00 p.m.** (Mountain Standard Time) (the "Sale Objection Deadline").

**PLEASE TAKE FURTHER NOTICE THAT** all Sale Objections must: (i) be in writing; (ii) conform to the applicable provisions of the Bankruptcy Rules and the Local Rules; (iii) state with particularity the legal and factual basis for the objection and the specific grounds therefor; and (iv) be filed with the Court and served so actually received no later than the Sale Objection Deadline, by  (A) counsel for the Debtor, (B) counsel for the Committee, (C) counsel for the Stalking Horse Bidder, and (D) all parties that have requested or that are required to receive notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties").

**PLEASE TAKE FURTHER NOTICE THAT** the Court shall conduct a hearing on **____, 2018, at ___ _.m.** (Mountain Standard Time) at the United States Bankruptcy Court, Courtroom 446, 38 S. Scott Ave., Suite 100, Tucson, Arizona 85701 or Phoenix Courtroom 301 to consider the Sale Objections (the "Pre-Auction Hearing").

**PLEASE TAKE FURTHER NOTICE THAT** that if you do not file a written Sale Objection with the Court, or if you do not serve your written Sale Objection on the Notice Parties, then you are deemed to have consented to (a) such Cure Amount, (b) the assumption and assignment of such Contract to the Stalking Horse Bidder, (c) the related relief requested in the Bidding Procedures and Sale Motion and (d) the Sale, and that you

1  will be forever barred from objecting to (i) the Cure Amount, or (ii) the assignment of that
2  party's Contract to the Stalking Horse Bidder.  Further, if you do not file a written Sale
3  Objection with the Court, or if you do not serve your written Sale Objection on the Notice
4  Parties, then: (a) the Court may *refuse to allow you to speak* at the scheduled Pre-Auction
5  Hearing and/or Sale Hearing; and (b) the Court may *rule against you* without formally calling
6  the matter at the Pre-Auction Hearing and/or Sale Hearing.

7      **PLEASE TAKE FURTHER NOTICE THAT**, pursuant to the Bidding Procedures
8  Order, if Debtor receives two or more Qualified Bids (including the Stalking Horse Bid) by
9  the Bid Deadline, Debtor shall conduct the Auction on **_____, 2018, commencing at** ____
10 **a.m.** (Mountain Standard Time) at the Courtroom 446, United States Bankruptcy Court, 38 S.
11 Scott Ave., Suite 100, Tucson, Arizona 85701 or Phoenix Courtroom 301. If Debtor does not
12 receive any Qualified Bids other than the Stalking Horse Bid, Debtor will forego the Auction
13 and proceed to a Sale Hearing for Bankruptcy Court approval of the Stalking Horse Bid.

14     **PLEASE TAKE FURTHER NOTICE THAT** any objections to how the Auction
15 was conducted and/or to the adequate assurance of future performance by a Successful
16 Bidder in the event that the Stalking Horse Bidder is not the Successful Bidder must be
17 filed Court by **October __, 2018 at 5:00** p.m. (prevailing Mountain Standard Time)
18 ("Auction and Adequate Assurance Objection" and the deadline, the "Auction and
19 Adequate Assurance Objection Deadline").

20     **PLEASE TAKE FURTHER NOTICE THAT** all Auction and Adequate Assurance
21 Objections must: (i) be in writing; (ii) conform to the applicable provisions of the Bankruptcy
22 Rules and the Local Rules; (iii) state with particularity the legal and factual basis for the
23 objection and the specific grounds therefor; and (iv) be filed with the Court and served so
24 actually received no later than the Auction and Adequate Assurance Objection Deadline
25 by the Notice Parties and counsel for the Successful Bidder.

26

1   **PLEASE TAKE FURTHER NOTICE THAT** that if you do not file a written
2   Adequate Assurance Objection with the Court, or if you do not serve your written Adequate
3   Assurance Objection as provided herein, then you are deemed to have consented to (a) the
4   assumption and assignment of such Contract to the Successful Bidder (only in the event
5   that the Successful Bidder is not the Stalking Horse Bidder), (b) the related relief
6   requested in the Bidding Procedures and Sale Motion, and (c) the Sale, and that you will
7   be forever barred from objecting to the assignment of your Contract to the Successful
8   Bidder.  Further, if you do not file a written Adequate Assurance Objection with the Court, or
9   if you do not serve your written Adequate Assurance Objection as provide herein, then: (a) the
10  Court may *refuse to allow you to speak* at the Sale Hearing; and (b) the Court may *rule*
11  *against you* without formally calling the matter at the Sale Hearing.

    DATED this ___ day of August, 2018.

                                    FENNEMORE CRAIG, P.C.

                                    By: /s/ *Anthony W Austin*
                                        Anthony W. Austin
                                        Justin R. DePaul
                                        *Attorneys for Debtor, Tanga.com, LLC*

# **EXHIBIT 4**

Fennemore Craig, P.C.
Anthony W. Austin (No. 025351)
Justin R. DePaul (No. 031581)
2394 East Camelback Road, Suite 600
Phoenix, AZ  85016-3429
Telephone:  (602) 916-5000
Email:  aaustin@fclaw.com
Email:  jdepaul@fclaw.com

Attorneys for Debtor
Tanga.com, LLC

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| In re | Case No. 2:18-bk-06314-BMW |
|---|---|
| TANGA.COM, LLC, | Chapter 11 |
| Debtor. | **NOTICE OF POSSIBLE CURE, ASSUMPTION, AND ASSIGNMENT** |

**PLEASE TAKE NOTICE THAT** on August 22, 2018, Tanga.com, LLC ("Tanga" or "Debtor"), debtor and debtor in possession in the above-referenced chapter 11 bankruptcy case (the "Chapter 11 Case"), under chapter 11 of the United States Bankruptcy Code 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), filed *Debtor's Motion for Entry of Order (I) Establishing Bidding Procedures and Deadlines Relating to Sale Process for of Debtor's Assets and (II) Approving the Sale of the Assets* [Docket No. ]    (the    "Bidding Procedures and Sale Motion").[1]

**PLEASE TAKE FURTHER NOTICE THAT,** Debtor has requested the Court authorize the sale of the Assets to the Successful Bidder(s) pursuant to the terms of the Successful Bid.

---

[1] All capitalized terms used herein and not otherwise defined herein shall have the respective meanings ascribed to them in the Motion or in the Bidding Procedures, as applicable

1    **PLEASE TAKE FURTHER NOTICE THAT** as part of the Sale, those contracts
2    identified in Exhibit 1 hereto may be assumed by the Debtor and assigned to the
3    Successful Bidder.

4    **PLEASE TAKE FURTHER NOTICE THAT** Debtor has calculated the Cure
5    Amount, if any, for each contract and has listed the same on Exhibit 1.

6    **PLEASE TAKE FURTHER NOTICE THAT** any objections ("Sale Objections") to
7    the Sale, objections to the proposed Cure Amount, and/or objections to the proposed
8    assumption and assignment of executory contracts and/or unexpired leases for reasons
9    other than the Cure Amount, including, without limitation, whether the Stalking Horse
10   Bidder can provide adequate assurance of future performance, must be filed by as \_\_\_\_\_,
11   **2018 at 5:00 p.m.** (Mountain Standard Time) (the "Sale Objection Deadline").

12   **PLEASE TAKE FURTHER NOTICE THAT** all Sale Objections must: (i) be in
13   writing; (ii) conform to the applicable provisions of the Bankruptcy Rules and the Local Rules;
14   (iii) state with particularity the legal and factual basis for the objection and the specific grounds
15   therefor; and (iv) be filed with the Court and served so actually received no later than the
16   Sale Objection Deadline, by  (A) counsel for the Debtor, (B) counsel for the Committee,
17   (C) counsel for the Stalking Horse Bidder, and (D) all parties that have requested or that
18   are required to receive notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice
19   Parties").

20   **PLEASE TAKE FURTHER NOTICE THAT** that if you do not file a written Sale
21   Objection with the Court, or if you do not serve your written Sale Objection on the Notice
22   Parties, then you are deemed to have consented to (a) such Cure Amount, (b) the
23   assumption and assignment of such Contract to the Stalking Horse Bidder, (c) the related
24   relief requested in the Bidding Procedures and Sale Motion and (d) the Sale, and that you
25   will be forever barred from objecting to (i) the Cure Amount, or (ii) the assignment of that
26   party's Contract to the Stalking Horse Bidder.  Further, if you do not file a written Sale

1　Objection with the Court, or if you do not serve your written Sale Objection on the Notice

2　Parties, then: (a) the Court may ***refuse to allow you to speak*** at the scheduled hearing; and

3　(b) the Court may ***rule against you*** without formally calling the matter at the hearing.

4　　　　**PLEASE TAKE FURTHER NOTICE THAT**, pursuant to the Bidding Procedures

5　Order, if Debtor receives two or more Qualified Bids (including the Stalking Horse Bid) by

6　the Bid Deadline, Debtor shall conduct the Auction on **_____, 2018, commencing at ____**

7　**a.m.** (Mountain Standard Time) at the Courtroom 446, United States Bankruptcy Court, 38 S.

8　Scott Ave., Suite 100, Tucson, Arizona 85701 or Phoenix Courtroom 301. If Debtor does not

9　receive any Qualified Bids other than the Stalking Horse Bid, Debtor will forego the Auction

10　and proceed to a Sale Hearing for Bankruptcy Court approval of the Stalking Horse Bid.

11　　　　**PLEASE TAKE FURTHER NOTICE THAT** the Court shall conduct a hearing on

12　**____, 2018, at ___ _.m.** (Mountain Standard Time) at the United States Bankruptcy Court,

13　Courtroom 446, 38 S. Scott Ave., Suite 100, Tucson, Arizona 85701 or Phoenix

14　Courtroom 301: (i) to authorize and approve the Sale to the Successful Bidder, (ii) to

15　determine all issues regarding assumption and assignment of executory contracts and

16　unexpired leases in connection therewith, and (iii) to grant related relief.

17　　　　DATED this ___ day of August, 2018.

18　　　　　　　　　　　　　　　FENNEMORE CRAIG, P.C.

19
20　　　　　　　　　　　　　　　By: /s/ *Anthony W Austin*
　　　　　　　　　　　　　　　　　　Anthony W. Austin
21　　　　　　　　　　　　　　　　　　Justin R. DePaul
　　　　　　　　　　　　　　　　　　*Attorneys for Debtor, Tanga.com, LLC*

22

23

24

25

26

# EXHIBIT B

# BIDDING PROCEDURES IN CONNECTION WITH THE
# SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS

### A.      Preliminary Statement[1]

1.      Set forth below are the bidding procedures (the "Bidding Procedures") to be employed by Tanga.com, LLC ("Tanga" or "Debtor") in the chapter 11 case pending in the United States Bankruptcy Court for the District of Arizona (the "Bankruptcy Court") under Case No. 2:18-bk-06314-BMW (the "Chapter 11 Case") with respect to the proposed sale (collectively, the "Sale") of certain of Debtor's assets and the assumption of certain of Debtor's liabilities.

2.      The assets to be sold at the Sale consist of the substantially all of the Assets of Tanga Assets and shall be referred to collectively as the "Assets".

3.      As used in these Bidding Procedures, the term "Consultation Parties" shall mean: (i) the Debtor's financial and legal advisors; and (ii) the Official Committee of Unsecured Creditors appointed in the Chapter 11 Case (the "Committee").

### B.      Bidding Process

1.      The Bidding Procedures set forth herein describe, among other things, the Assets (as defined below) available for Sale, the manner in which potential bidders may gain access to or continue to have access to due diligence materials concerning the Assets, the manner in which potential bidders and bids may become Qualified Bidders and Qualified Bids (as defined below), respectively, the receipt and negotiation of bids received, the conduct of any Auction (as defined below), the ultimate selection of the Successful Bidder (as defined below), and the Bankruptcy Court's approval thereof (collectively, the "Bidding Process").

2.      In the event of any dispute regarding the interpretation or application of these Bidding Procedures or the Bidding Process, the Bankruptcy Court will have exclusive jurisdiction to hear and resolve such dispute.

3.      The Bidding Process will be conducted by Debtor. The approval of any Sale pursuant to these Bidding Procedures will be contingent upon Bankruptcy Court approval. In addition, the closing of any Sale may involve additional intermediate steps or transactions to facilitate consummation of such Sale.

### C.      Assets to Be Sold

1.      Tanga is offering for sale all of its Assets, including all personal property that is owned by Tanga, as more specifically set forth on **Schedule 2** annexed hereto.

---

[1]      Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the *Debtor's Debtor's Motion for Entry of Order (I) Establishing Bidding Procedures and Deadlines Relating to Sale Process for of Debtor's Assets and (II) Approving the Sale of the Assets* (the "Bidding Procedures and Sale Motion").

2.     The following property is not included in the Assets and shall not be subject to or included in the Sale (the "Excluded Assets"):

   a. all rights of Seller under this Agreement and any Ancillary Agreements

   b. Tax returns of Seller (and related workpapers), other than those relating to the Purchased Assets or the Business;

   c. any Contract that is not an Assumed Contract including any Contract which is not assumable and assignable as a matter of applicable law (including, without limitation, any with respect to which any consent requirement in favor of the counter-party thereto may not be overridden pursuant to Section 365 of the Bankruptcy Code) (collectively, "Excluded Contracts");

   d. any rights under any Plan;

   e. all Cash and bank accounts elected not to be acquired by Buyer;

   f. all shares of capital stock or other equity interests in or issued by Seller or any other Person, or any securities convertible into, exchangeable or exercisable for shares of capital stock or other equity interests in or issued by Seller or any other Person;

   g. all rights under or arising out of insurance policies not primarily relating to the Purchased Assets and any recovery thereunder;

   h. all current and prior director and officer insurance policies of Seller, if applicable, and all rights of any nature with respect thereto, including all insurance recoveries thereunder and rights to assert claims with respect to any such insurance recoveries;

   i. all Permits not transferred pursuant to Section 1.1.10.

   j. any causes of action pursuant to Bankruptcy Code §§ 544, 545, 547, 548, 550, or 553 and any monies recovered in connection with the successful prosecution or settlement of subsection of such actions (collectively, the "Avoidance Actions").

## D.     Sale "As Is"

The Sale of the Assets will be on an "as is", "where is", "with all faults" basis and without representation or warranty, either express or implied, of any kind, including, without limitation, any warranties as to merchantability, fitness or usability and without any surviving representations or warranties of any kind, nature, or description by Debtor, its agents, or its estate.

**E.** **Free of Any and All Claims and Interests; Cure Costs**

1. Except as may be agreed to by a Successful Bidder in its Purchase Agreement (as such terms are defined below), all of the rights, title and interests of Debtor in and to the Assets, or any portion thereof, to be acquired as part of the Sale will be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options, and interests thereon and there against (collectively, the "Claims and Interests") as permitted by, and pursuant to, Bankruptcy Code sections 105(a), 363, 365, and, to the extent applicable, 1123 and 1129 of the Bankruptcy Code, with such Claims and Interests attaching to the net proceeds of the sale of such Assets, subject to Debtor's right to challenge the amount, extent and validity of such Claims and Interests.

2. As used herein, the term "cure costs" means, with respect to any executory contract or unexpired lease that amount which is required to be paid to cure any monetary defaults under such executory contract or unexpired lease.

3. Except as may be agreed to by a Successful Bidder in its Purchase Agreement (as such terms are defined below), the Successful Bidder shall pay all cure costs for any of Debtor's unexpired leases and/or executory contracts that Successful Bidder wants Debtor to assume and assign to it.

4. With respect to all executory contracts and unexpired leases that the Succesful Bidder wants Debtor to assume and assign to it, Debtor will file in the case the Debtor's calculation of the cure costs for same. In the event of a dispute, the matter will be brought before the Court for resolution and determination at the Sale hearing.

**G.** **Confidentiality Agreement(s)**

Each Potential Bidder must execute and deliver a confidentiality agreement in form and substance reasonably satisfactory to Debtor (the "Confidentiality Agreement").

**H.** **Participation Requirements; Deadlines**

1. Unless otherwise ordered by the Bankruptcy Court for cause shown or otherwise consented to by Debtor, after consultation with the Consultation Parties, in order to participate in the Bidding Process, each bidder (each a "Potential Bidder") must deliver the following to Debtor and the Consultation Parties:

   a. an executed Confidentiality Agreement (to be delivered prior to the distribution of any confidential information by Debtor to a Potential Bidder) which shall inure to the benefit of any purchaser of the Assets (in the event that the Potential Bidder has already entered into a confidentiality agreement with Debtor, it must provide a statement agreeing that its obligations under such agreement shall inure to the benefit of any purchaser of the Assets and waiving any of its rights under such confidentiality agreement that are in conflict with the Bidding Procedures or that would otherwise prohibit disclosures regarding the Potential Bidder to the Consultation Parties); and

   b. evidence of financial capability of the Potential Bidder to consummate the Sale that will allow Debtor and the Consultation Parties to make a reasonable determination as to

the Potential Bidder's financial and other capabilities to consummate the Sale and provide adequate assurance of future performance under all executory contracts and unexpired leases that it wishes Debtor to assume and assign to it.

2.      A "Qualified Bidder" shall mean a Potential Bidder who submits a Qualified Bid (as hereinafter defined):

a.  whose financial information and/or credit quality support, or enhancement, demonstrate to Debtor's satisfaction the financial capability of the Qualified Bidder to consummate the Sale and provide adequate assurance of future performance under all executory contracts and unexpired leases that it wishes Debtor to assume and assign to it; and

b.  that Debtor, after consultation with the Consultation Parties, determines is likely (based on availability of financing, experience and other considerations) to be able to consummate the Sale.

For the avoidance of doubt, the Stalking Horse Bidder and the Stalking Horse Bid shall be considered a Qualified Bidder and Qualified Bid, respectively.

## J.      Due Diligence

1.      Debtor shall, subject to competitive and other business considerations and its rights hereunder regarding the conduct of the Auction, afford each Qualified Bidder and any person seeking to become a Qualified Bidder that has executed a Confidentiality Agreement with Seller such due diligence access to materials and information relating to the Assets as Seller reasonably deems appropriate.

2.      Due diligence access shall include review of documentation in the Seller's possession which may be reasonably requested by a Qualified Bidder in writing to the Seller and other matters which a Qualified Bidder or other person seeking to become a Qualified Bidder may reasonably request, and the Seller shall allow Qualified Bidders' representatives reasonable access to the Assets. Debtor may, in its discretion, coordinate diligence efforts such that multiple parties have simultaneous access to due diligence materials and/or simultaneous attendance at management presentations or site inspections.

3.      Neither the Seller nor any of its representatives will be obligated to furnish any information relating to the Assets to any person other than to Qualified Bidders and any other person seeking to become a Qualified Bidder that has executed a Confidentiality Agreement with the Sellers.

4.      The Seller makes no representation or warranty as to the information to be provided through this due diligence process or otherwise, except to the extent set forth in the proposed asset purchase agreement (the "Stalking Horse APA") with E. Chabot, Ltd. or its designee (the "Stalking Horse Bidder").

**K.**     <u>Notices</u>

      1. A Qualified Bidder that desires to make a bid must deliver written copies of its bid materials to the following parties:

    **(a)**     **Tanga.com, LLC:** Attn: Jeremy Young, 2487 South Gilbert Road, Suite 106-485, Chandler, Arizona 85225; email <u>jeremy@tanga.com</u>

    **(b)**     **Debtor's counsel:** Fennemore Craig, PC, Attn: Anthony W. Austin 2394 East Camelback Road, Suite 600, Phoenix, Arizona 85018; email <u>aaustin@fclaw.com</u>

    **(c)**     **Debtor's financial advisors:** Mac Restructuring Advisors, LLC, Attn: Edward M. Burr, Jr., 10910 E. Shangri La Rd. Scottsdale, AZ 85260, <u>Email: Ted@MacRestructuring.com</u>

    **(d)**     **Counsel to the Committee:** Stinson Leonard Street, LLP, Attn: Thomas Salerno, and Christopher Simpson, 1850 N. Central Ave., Suite 2100 Phoenix, AZ 85004, email <u>Thomas.salerno@stinson.com</u>, <u>christoper.simpson@stinson.com</u>.

    **(e)**     **Committee's financial advisors:** Sonoran Capital, Attn: Bryan S. Perkinson, 1733 North Greenfield Road, Suite 101 Mesa Arizona 85205, email <u>bperkinson@sonorancap.com</u>

**L.**     <u>Qualified Bid</u>

      1.     For all Qualified Bids, other than the bid submitted by the Stalking Horse Bidder (the "<u>Stalking Horse Bid</u>"), a bid will be considered a Qualified Bid only if the bid is submitted by a Qualified Bidder, and complies with all of the following (a "<u>Qualified Bid</u>"):

    (a)     it includes a general summary ("<u>Summary</u>") containing all of the following:

        i.     the purchase price for such Assets (including liabilities to be assumed by the Qualified Bidder) and form of consideration;

        ii.     any material assets and liabilities expected to be excluded;

        iii.     the structure and financing of the Sale (including, but not limited to, the sources of financing for the purchase price and all requisite financial assurance and a description for funding post-acquisition working capital for the target);

        iv.     the anticipated time frame and any anticipated impediments for consummating the Sale.

    (b)     it includes a letter stating that the Qualified Bidder's offer is irrevocable until the selection of the Successful Bidder;

(c)     it includes a duly authorized and executed purchase agreement, including the purchase price for the subject Assets expressed in U.S. Dollars (the "Purchase Price"), together with all exhibits and schedules thereto, substantially in the form of the Stalking Horse APA.

(d)     the Purchase Price must exceed the Purchase Price in the Stalking Horse Bid by at least $25,000.00.

(e)     it is not conditioned on the outcome of unperformed due diligence by the Qualified Bidder (and includes an acknowledgement and representation that the Qualified Bidder has had an opportunity to conduct any and all required due diligence regarding the Assets prior to making its offer);

(f)     it fully discloses the identity of each entity that will be bidding for the Assets or otherwise sponsoring or participating in connection with such bid, and the complete terms of any such participation;

(g)     it includes an acknowledgment and representation that the Qualified Bidder will assume Debtor's obligations under Debtor's executory contracts and unexpired leases proposed to be assigned pursuant to the purchase agreement (and identifies with particularity which of such contracts and leases of Debtor that the Qualified Bidder wishes not to be assigned, or alternatively which additional executory contracts or unexpired leases of Debtor that the Qualified Bidder wishes to be assigned), contains full details of the Qualified Bidder's proposal for the treatment of related cure costs; and it identifies with particularity any executory contract or unexpired lease the assumption and assignment of which is a condition to closing;

(h)     it includes an acknowledgement and representation that the Qualified Bidder: (i) has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Assets in making its bid; (ii) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express or implied (by operation of law or otherwise), regarding the Assets or the completeness of any information provided in connection therewith or the Auction; and (iii) is not entitled to any expense reimbursement or break-up fee in connection with its bid; and

(j)     it contains other information reasonably requested by the Seller.

2.     All of the information and materials required to be delivered by a Potential Bidder(s) must be received by the Bid Deadline. The Bid Deadline has been set by the Bankruptcy Court and means (___days prior to auction) at 4:00 p.m. (prevailing Mountain Standard Time).

3.     The Debtor will, and reserves the right to, determine, in its reasonable business judgment and following consultation with the Consultation Parties, whether to entertain bids for the Assets that do not conform to one or more of the requirements specified herein and whether to deem such bids to be Qualified Bids. Debtor shall notify each Qualified Bidder in writing as to whether or not its bid constitutes a Qualified Bid promptly following the expiration of the Bid Deadline.

**M.**     **Evaluation of Competing Bids**

A Qualified Bid will be valued based upon several factors including, without limitation, items such as the purchase price and the net value (including assumed liabilities and the other obligations to be performed or assumed by the bidder) provided by such bid, the claims likely to result from or be created by such bid in relation to other bids, the relative ability of the counterparties to the Sale proposed by the Qualified Bidder to consummate such Sale, the nature and extent of any proposed revisions to the Stalking Horse APA, other factors affecting the speed, certainty and value of the proposed Sale, any Assets excluded from the bid, the transition services required from the Sellers post-closing and any related restructuring costs, and the likelihood and timing of consummating such Sale, each as determined by Debtor following consultation with the Consultation Parties.

**N.**     **Single Qualified Bid**

If Debtor does not receive any Qualified Bids other than the Stalking Horse Bid, Debtor shall forego an auction and proceed to a Sale Hearing for Bankruptcy Court approval of the Stalking Horse Bid.

**O.**     **Auction Date, Time and Place**

If Debtor receives two or more Qualified Bids (including the Stalking Horse Bid), Debtor will conduct an auction (the "Auction") of the Assets, on _____ at __.m. (Mountain Standard Time), at the Bankruptcy Court before Judge Whinery. The Auction may be cancelled or adjourned without consent of any Qualified Bidder.

**P.**     **Auction Procedures**

    1.    The Auction shall run in accordance with the following procedures:

    (a) Only the Qualified Bidders that have timely submitted Qualified Bids, the Sellers, the Consultation Parties, and any creditor of Debtor (and the advisors to such Qualified Bidder or creditor of Debtor) shall attend the Auction in person, and only such Qualified Bidders will be entitled to make any subsequent bids at the Auction.

    (b) Each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the Sale.

    (c) Simultaneous with the submission of a Bid, each Qualified Bidder who has timely submitted a Qualified Bid must inform Debtor whether it intends to attend the Auction, provided that in the event a Qualified Bidder elects not to attend the Auction, such Qualified Bidder's Qualified Bid shall nevertheless remain fully enforceable against such Qualified Bidder until (i) the date of the selection of the Successful Bidder at the conclusion of the Auction and (ii) if such bidder is selected as an Alternate Bidder, the Alternate Bid Expiration Date. At least one (1) Business Day prior to the Auction, Debtor will provide copies of the Qualified Bid which the Debtor believes, in its reasonable business judgment and after

consultation with the Consultation Parties, is the highest or otherwise best offer (the "Starting Bid") to all Qualified Bidders that have timely submitted Qualified Bids and have informed Debtor of their intent to attend the Auction.

(d) All Qualified Bidders who have timely submitted Qualified Bids will be entitled to be present for all Subsequent Bids (as defined below) at the Auction with the understanding that the true identity of each Qualified Bidder at the Auction will be fully disclosed to all other Qualified Bidders at the Auction and that all material terms of each Subsequent Bid will be fully disclosed to all other bidders throughout the entire Auction, provided that all Qualified Bidders wishing to attend the Auction must have at least one individual representative with authority to bind such Qualified Bidder attending the Auction in person.

(e) At the request of the Debtor, the Court may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances (e.g., the amount of time allotted to make Subsequent Bids) for conducting the Auction.

(f) Bidding at the Auction will begin with the Starting Bid and continue, in one or more rounds of bidding, so long as during each round at least one subsequent bid is submitted by a Qualified Bidder that (i) improves upon such Qualified Bidder's immediately prior Qualified Bid (a "Subsequent Bid") and (ii) Debtor determines, that such Subsequent Bid is (A) for the first round, a higher or otherwise better offer than the Starting Bid, and (B) for subsequent rounds, a higher or otherwise better offer than the Leading Bid (as defined below). Any initial bid at the Auction shall provide net value to the estate of at least US $10,000.00 over the Starting Bid or the Leading Bid, as the case may be After the first round of bidding and between each subsequent round of bidding, Debtor shall announce the bid (and the value of such bid(s)) that it believes to be the highest or otherwise better offer (the "Leading Bid"). A round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a Subsequent Bid with full knowledge of the Leading Bid. Except as specifically set forth herein, for the purpose of evaluating the value of the consideration provided by Subsequent Bids, Debtor will, at each round of bidding, give effect to any additional liabilities to be assumed by a Qualified Bidder and any additional costs which may be imposed on Sellers.

(g) The Stalking Horse Bidder shall have the right to "credit bid" up to the full amount of the DIP Obligations; provided, however, the DIP Lender shall only be entitled to credit bid up to Forty Five Thousand and No/100 Dollars ($45,000.00) of the attorney's fees and costs it incurs in connection with the Case.

## Q.    Selection of Successful Bid

1.    Prior to the conclusion of the Auction, Debtor will (a) review each Qualified Bid that is either the Leading Bid or submitted subsequent to and as an improvement to the submission of the Leading Bid on the basis of financial and contractual terms and the factors relevant to the sale process, including, among other things, the proposed revisions to the Stalking Horse APA, the ability of the counterparties to such proposed Sale to consummate the Sale, the

purchase price and the net value (including assumed liabilities and the other obligations to be performed or assumed by the Qualified Bidder) provided by such Qualified Bid, the claims likely to result from or be created by such bid in relation to other bids, other factors affecting the speed, certainty and value of the Sale (including any assets excluded from the Qualified Bid, the transition services required from Debtor post-closing and any related restructuring costs, and the likelihood and timing of consummating the Sale; (b) following consultation with the Consultation Parties, identify the highest or otherwise best offer for the Assets received in accordance with the Bidding Procedures (such bid, the "Successful Bid" and the Qualified Bidder making such bid, collectively, the "Successful Bidder"); and (c) communicate to the Qualified Bidders the identity of the Successful Bidder, and the details of the Successful Bid. The determination of the Successful Bid by Debtor, at the conclusion of the Auction, shall be final subject to approval by the Bankruptcy Court.

2.      Upon the Debtor's selection of the Successful Bidder (other than the Stalking Horse Bidder), the Successful Bidder shall tender a good faith deposit ("Good Faith Deposit") in the form of a wire transfer (to a bank account specified by Debtor), certified check or such other form acceptable to Debtor, payable to the order of Debtor (or such other party as Debtor may determine) in an amount equal to US $150,000; and, one business day after the Approval Order (defined below) becomes final and non-appealable.

3.      The Good Faith Deposit will be treated as provided for under Section S below.

## R.      Sale Hearing

1.      The Court shall conduct a hearing ("Sale Hearing") on ____, 2018, to consider approval of the Sale.

2.      The Sale Hearing will be held before a United States Bankruptcy Judge, United States Bankruptcy Court, Courtroom 446, United States Bankruptcy Court, 38 S. Scott Ave., Suite 100, Tucson, Arizona 85701or Phoenix Courtroom 301. (the "Court"), on a date and time set by the Court, preferably October 18, 2018. The Sale Hearing may be continued or rescheduled by the Court, upon Debtor's request.

3.      If the Sellers receive one or more Qualified Bid(s), then, at the Sale Hearing, Debtor will seek approval of the Successful Bid. The Sale Motion will not constitute Debtor's acceptance of either of such bids, which acceptance will only occur upon the Bankruptcy Court's entry of an order (the "Approval Order") granting the Sale Motion after the conclusion of the Sale Hearing.

4.      All proceeds from the sale of the Assets in accordance with the Approval Order shall be placed directly into an escrow account, to be released only after entry of the Bankruptcy Court's order.

## S.      Good Faith Deposits

The Good Faith Deposit of the Successful Bidder will be applied in accordance with the terms of the Successful Bid, if the Sale to the Successful Bidder closes. If the Sale to the Successful Bidder

fails to close for any reason (other than through the fault of the Sellers), then the Good Faith Deposits will be relinquished to Debtor.

## T.    Debtor's Reservation of Rights

The Debtor, in consultation with the Consultation Parties: (a) may waive any requirements for a Potential Bidder to become a Qualified Bidder; (b) may waive any requirement for a bid to become a Qualified Bid; (c) after each round of bidding at the Auction, may determine which Qualified Bid, if any, is the highest or otherwise best offer and the value thereof; (d) may reject, at any time, any bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures, or any other orders applicable to one or more Debtor, or the terms and conditions of the Sale or (iii) contrary to the best interests of Debtor, its estate, and stakeholders as determined by Debtor; (e) may impose additional terms and conditions and otherwise modify the Bidding Procedures at any time; (f) withdraw from sale any Assets at any time and make subsequent attempts to market the same; and (g) reject all bids.

Schedule 1
Assets

a)      all Cash elected to be acquired by Buyer at its discretion, and all bank accounts listed on <u>Schedule 1.1.1</u> to be acquired by Buyer at its discretion;

b)      all furniture, fixtures, equipment, machinery and other tangible personal property used or held for use by Seller at the locations at which the Business is conducted, or otherwise owned or held by Seller at the Closing for use in the conduct of the Business (the "<u>Personal Property</u>"), a list of which, which Seller represents is a true, correct and complete as of the date hereof is attached to the Stalking Horse APA as <u>Schedule 1.1.2</u>;

c)      all Inventories as of the Closing Date, a list of which, which Seller represents is a true, correct and complete as of the date hereof, is attached to the Stalking Horse APA as <u>Schedule 1.1.3</u>;

d)      all Receivables as of the Closing Date, a list of which, which Seller represents is a true, correct and complete as of the date hereof, is attached to the Stalking Horse APA as <u>Schedule 1.1.4</u>;

e)      all books of account, general, financial, Tax and personnel records, invoices, shipping records, supplier lists, correspondence and other documents, records and files and any rights thereto owned, associated with or employed by Seller in connection with the Business and all sales and promotional literature, customer lists and other sales-related materials related to the Business owned, used, associated with or employed by Seller at the Closing and excluding organization documents, minute and stock record books and the corporate seal of Seller (collectively, "<u>Documents</u>");

f)      the goodwill of Seller relating to the Business;

g)      all Seller's right, title and interest in, to and under the Owned Intellectual Property and the Transferred IP Agreements, copies and tangible embodiments thereof in whatever form or medium, and all rights to sue and recover damages for past, present and future infringement, dilution, misappropriation, violation, unlawful imitation or breach thereof (collectively, "<u>Seller Intellectual Property</u>");

h)      other than Avoidance Actions, all claims, causes of action, choices in action, rights of recovery and rights of setoff of any kind (including rights to insurance proceeds and rights under and pursuant to all warranties, representations and guarantees made by suppliers of products, materials, or equipment, or components thereof), related to the Business pertaining to, arising out of and inuring to the benefit of Seller;

i)      all rights of Seller under all contracts, licenses, sublicenses, agreements, leases, commitments, and sales and purchase orders, and under all bids and offers related to the Business (to the extent such offers are transferable) (collectively, "<u>Contracts</u>") listed on <u>Schedule 1.1.9</u> tp the Stalking Horse APA (the "<u>Assumed Contracts</u>");

j)      all municipal, state and federal franchises, permits, licenses, agreements, waivers and authorizations held or used by Seller in connection with, or required for, the Business, to the extent transferable (collectively, the "Permits"), a list of which, which Seller represents is a true, correct and complete as of the date hereof, is attached to the Stalking Horse APA as Schedule 1.1.10; and

k)      all Seller's right, title and interest at the Closing in, to and under all other assets, rights and claims of every kind and nature used or intended to be used in the operation of, or residing with, the Business.

# EXHIBIT C

Fennemore Craig, P.C.
Anthony W. Austin (No. 025351)
Justin R. DePaul (No. 031581)
2394 East Camelback Road, Suite 600
Phoenix, AZ 85016-3429
Telephone: (602) 916-5000
Email: aaustin@fclaw.com
Email: jdepaul@fclaw.com

Attorneys for Debtor
Tanga.com, LLC

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| In re | Case No. 2:18-bk-06314-BMW |
|---|---|
| TANGA.COM, LLC, | Chapter 11 |
| Debtor. | **NOTICE OF BID DEADLINE, AUCTION AND SALE APPROVAL HEARING RELATING TO SALE PROCESS FOR DEBTOR'S ASSETS AND SALE OF DEBTOR'S ASSETS** |

**PLEASE TAKE NOTICE THAT** on August 22, 2018, Tanga.com, LLC ("Tanga" or "Debtor"), debtor and debtor in possession in the above-referenced chapter 11 bankruptcy case (the "Chapter 11 Case"), under chapter 11 of the United States Bankruptcy Code 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), filed *Debtor's Motion for Entry of Order (I) Establishing Bidding Procedures and Deadlines Relating to Sale Process for of Debtor's Assets and (II) Approving the Sale of the Assets* [Docket No. ] (the "Bidding Procedures and Sale Motion")[1] with the United States Bankruptcy Court for the District of Arizona (the "Court") for an order pursuant to sections 105(a), 363, 365, 503, and 507 of the Bankruptcy Code and Rules 2002, 6004, 6006, 9007, 9008, and 9014 of the Federal Rules of Bankruptcy Procedure: (a) authorizing and approving bidding procedures (the "Bidding Procedures") in connection with the sale (the "Sale") of the Assets (as defined

---

[1] All capitalized terms used herein and not otherwise defined herein shall have the respective meanings ascribed to them in the Motion or in the Bidding Procedures, as applicable

below), free and clear of any liens, claims or encumbrances; (b) authorizing and approving an auction process (the "<u>Auction</u>") to sell the aforesaid assets in accordance with the Bidding Procedures; (c) authorizing and approving the form and manner of notice of the bidding procedures (the "<u>Bidding Procedures Notice</u>"), and (d) scheduling a hearing to approve a sale to the highest and best bidder (the "<u>Successful Bidder</u>") contemporaneous with or immediately following the Auction, whether it be the Stalking Horse Bidder any other Qualified Bidder (as defined in the Bidding Procedures), on terms substantially similar to those set forth in the asset purchase agreement to be executed by the Stalking Horse Bidder (the "<u>Stalking Horse APA</u>"); (e) waiving the stays under Bankruptcy Rules 6004(h) and 6006(d); and (f) approving the sale of the Assets to the Successful Bidder.

**PLEASE TAKE FURTHER NOTICE THAT** on _____, 2018, the Court entered an *Order Establishing Bidding Procedures and Deadlines Relating to Sale Process for of Debtor's Assets* [Docket No. \_\_\_\_\_] (the "<u>Bidding Procedures Order</u>"), approving the form of this Bidding Procedures Notice and the Bidding Procedures, and authorizing Debtor to employ the Bidding Procedures.

**PLEASE TAKE FURTHER NOTICE THAT,** Debtor has requested the Court authorize the sale of the Assets to the Successful Bidder(s) pursuant to the terms of the Successful Bid.

**PLEASE TAKE FURTHER NOTICE THAT** any person or entity wishing to submit a bid for the Assets is urged to review the Bidding Procedures Order, the Bidding Procedures (annexed as Exhibit 1 to the Bidding Procedures Order incorporated therein by reference), and the Bidding Procedures and Sale Motion. Copies of the Bidding Procedures Sale Motion and the Bidding Procedures Order, including the Bidding Procedures, may be reviewed (a) during regular Court hours at the United States Bankruptcy Court, 38 S. Scott Ave., Suite 100, Tucson, Arizona 85701, (b) electronically

1   at www.azb.uscourts.gov, the official website for the Court, or (c) upon written request to

2   counsel for Debtor, Fennemore Craig, PC, 2394 East Camelback Road, Phoenix, AZ

3   85016, Attention: Anthony W. Austin aaustin@fclaw.com.

4           **PLEASE TAKE FURTHER NOTICE THAT** the "Bid Deadline" is _____,

5   **2018, at 4:00 p.m.** (Mountain Standard Time). Potential bidders that are Qualified Bidders

6   shall have until the Bid Deadline to submit to Debtor and to the Consultation Parties (as

7   specified in the Bid Procedures) their definitive bid materials (specifically set forth in the

8   proposed Bidding Procedures), which shall include, among other things, a duly authorized

9   and executed purchase agreement for the subject Assets, substantially in the form of the

10  Stalking Horse APA (as defined in the Bidding Procedures), that will serve as an irrevocable

11  offer pending Debtor's selection of a Successful Bidder for such Assets. Any person or entity

12  that does not submit a bid by the Bid Deadline (as may be extended pursuant to the Bidding

13  Procedures) shall not be permitted to participate in the Auction.

14          **PLEASE TAKE FURTHER NOTICE THAT**, pursuant to the Bidding Procedures

15  Order, if Debtor receives two or more Qualified Bids (including the Stalking Horse Bid) by

16  the Bid Deadline, Debtor shall conduct the Auction on _____, **2018, commencing at** ____

17  **a.m.** (Mountain Standard Time) at the Courtroom 446, United States Bankruptcy Court, 38 S.

18  Scott Ave., Suite 100, Tucson, Arizona 85701 or Phoenix Courtroom 301. If Debtor does not

19  receive any Qualified Bids other than the Stalking Horse Bid, Debtor will forego the Auction

20  and proceed to a Sale Hearing for Bankruptcy Court approval of the Stalking Horse Bid.

21          **PLEASE TAKE FURTHER NOTICE THAT** the Court shall conduct a hearing on

22  ____, **2018, at** ___ _.**m.** (Mountain Standard Time) at the United States Bankruptcy Court,

23  Courtroom 446, 38 S. Scott Ave., Suite 100, Tucson, Arizona 85701 or Phoenix

24  Courtroom 301: (i) to authorize and approve the Sale to the Successful Bidder, (ii) to

25  determine all issues regarding assumption and assignment of executory contracts and

26  unexpired leases in connection therewith, and (iii) to grant related relief.

1    DATED this ___ day of August, 2018.

2                                    FENNEMORE CRAIG, P.C.

3
                                     By: /s/ *Anthony W Austin*
4                                        Anthony W. Austin
                                         Justin R. DePaul
5                                        *Attorneys for Debtor, Tanga.com, LLC*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

FENNEMORE CRAIG, P.C.

PHOENIX

14171800.2

# EXHIBIT D

# ASSET PURCHASE AGREEMENT

THIS ASSET PURCHASE AGREEMENT (the "Agreement") is made and entered into as of this ___ day of August, 2018, by and between E. Chabot Ltd., a New York Corporation ("Buyer"), on the one hand, and Tanga.Com, LLC, a Delaware limited liability company ("Seller"). Buyer and Seller are collectively referred to herein as the "Parties" or individually as a "Party".

## RECITALS

A.      Seller is a Debtor and Debtor in Possession in a Chapter 11 bankruptcy case pending before the United States Bankruptcy Court for the District of Arizona (the "Bankruptcy Court"), Case No. 2:18-bk-06314-BMW (the "Case"). Seller commenced the Case with the filing of a Voluntary Petition under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") on June 1, 2018 (the "Petition Date").

B.      Seller is engaged in the business of an eCommerce retailer (the "Business").

C.      Seller wishes to sell to Buyer, pursuant to Sections 105, 363 and 365 of the Bankruptcy Code, substantially all of the assets heretofore used in connection with the operation of the Business, along with certain other assets included within the definition of the "Purchased Assets" below, all at the price and on the other terms and conditions specified in detail below and Buyer wishes to so purchase and acquire such assets from Seller.

**NOW, THEREFORE,** for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

1.      Transfer of Assets.

1.1      Purchase and Sale of Assets.  Upon the terms and subject to the conditions of this Agreement, at the Closing, Seller shall sell, assign, transfer, convey and deliver, or cause to be sold, assigned, transferred, conveyed and delivered, to Buyer, and Buyer shall purchase from Seller, all the assets, properties, goodwill and business of every kind and description and wherever located, whether tangible or intangible, real, personal or mixed, directly or indirectly owned by Seller or to which Seller is directly or indirectly entitled and, in any case, belonging to Seller or used or intended to be used in the Business, other than the Excluded Assets (the assets to be purchased by Buyer being referred herein to as the "Purchased Assets"), including the following:

1.1.1   all Cash elected to be acquired by Buyer at its discretion, and all bank accounts listed on Schedule 1.1.1 to be acquired by Buyer at its discretion;

1.1.2   all furniture, fixtures, equipment, machinery and other tangible personal property used or held for use by Seller at the locations at which the Business is

conducted, or otherwise owned or held by Seller at the Closing for use in the conduct of the Business (the "Personal Property"), a list of which, which Seller represents is a true, correct and complete as of the date hereof is attached hereto as Schedule 1.1.2;

   1.1.3 all Inventories as of the Closing Date, a list of which, which Seller represents is a true, correct and complete as of the date hereof, is attached hereto as Schedule 1.1.3;

   1.1.4 all Receivables as of the Closing Date, a list of which, which Seller represents is a true, correct and complete as of the date hereof, is attached hereto as Schedule 1.1.4;

   1.1.5 all books of account, general, financial, Tax and personnel records, invoices, shipping records, supplier lists, correspondence and other documents, records and files and any rights thereto owned, associated with or employed by Seller in connection with the Business and all sales and promotional literature, customer lists and other sales-related materials related to the Business owned, used, associated with or employed by Seller at the Closing and excluding organization documents, minute and stock record books and the corporate seal of Seller (collectively, "Documents");

   1.1.6 the goodwill of Seller relating to the Business;

   1.1.7 all Seller's right, title and interest in, to and under the Owned Intellectual Property and the Transferred IP Agreements, copies and tangible embodiments thereof in whatever form or medium, and all rights to sue and recover damages for past, present and future infringement, dilution, misappropriation, violation, unlawful imitation or breach thereof (collectively, "Seller Intellectual Property");

   1.1.8 other than Avoidance Actions, all claims, causes of action, choices in action, rights of recovery and rights of setoff of any kind (including rights to insurance proceeds and rights under and pursuant to all warranties, representations and guarantees made by suppliers of products, materials, or equipment, or components thereof), related to the Business pertaining to, arising out of and inuring to the benefit of Seller;

   1.1.9 all rights of Seller under all contracts, licenses, sublicenses, agreements, leases, commitments, and sales and purchase orders, and under all bids and offers related to the Business (to the extent such offers are transferable) (collectively, "Contracts") listed on Schedule 1.1.9 (herein defined) (the "Assumed Contracts");

   1.1.10 all municipal, state and federal franchises, permits, licenses, agreements, waivers and authorizations held or used by Seller in connection with, or required for, the Business, to the extent transferable (collectively, the "Permits"), a list of which, which Seller represents is a true, correct and complete as of the date hereof, is attached hereto as Schedule 1.1.10; and

*NY 247550536v4*

1.1.11 all Seller's right, title and interest at the Closing in, to and under all other assets, rights and claims of every kind and nature used or intended to be used in the operation of, or residing with, the Business.

1.2     Excluded Assets. Notwithstanding anything in Section 1.1 to the contrary, the Purchased Assets shall exclude the following assets and properties owned by Seller (the "Excluded Assets"):

1.2.1   all rights of Seller under this Agreement and any Ancillary Agreements;

1.2.2   Tax returns of Seller (and related workpapers), other than those relating to the Purchased Assets or the Business;

1.2.3   any Contract that is not an Assumed Contract including any Contract which is not assumable and assignable as a matter of applicable law (including, without limitation, any with respect to which any consent requirement in favor of the counter-party thereto may not be overridden pursuant to Section 365 of the Bankruptcy Code) (collectively, "Excluded Contracts");

1.2.4   any rights under any Plan;

1.2.5   all Cash and bank accounts elected not to be acquired by Buyer;

1.2.6   all shares of capital stock or other equity interests in or issued by Seller or any other Person, or any securities convertible into, exchangeable or exercisable for shares of capital stock or other equity interests in or issued by Seller or any other Person;

1.2.7   all rights under or arising out of insurance policies not primarily relating to the Purchased Assets and any recovery thereunder;

1.2.8   all current and prior director and officer insurance policies of Seller, if applicable, and all rights of any nature with respect thereto, including all insurance recoveries thereunder and rights to assert claims with respect to any such insurance recoveries;

1.2.9   all Permits not transferred pursuant to Section 1.1.10.

1.2.10 any causes of action pursuant to Bankruptcy Code §§ 544, 545, 547, 548, 550, or 553 and any monies recovered in connection with the successful prosecution or settlement of subsection of such actions (collectively, the "Avoidance Actions").

1.3     Instruments of Transfer.  The sale, assignment, transfer, conveyance and delivery of the Purchased Assets to Buyer shall be made by assignments, bill of sale, and other instruments of assignment, transfer and conveyance provided for in Section 3 below and such other instruments as may reasonably be requested by Buyer to transfer, convey, assign and deliver the Purchased Assets to Buyer free and clear of all Liens, Claims, Interests and Encumbrances.

3

2. Consideration.

2.1 Purchase Price. The consideration to be paid by Buyer to Seller for the Purchased Assets (the "Purchase Price") shall be (I) (a) $475,000 *plus* (b) the aggregate value of the acquired Receivables, *plus* (c) the aggregate value of Cash in the accounts (provided Buyer chooses to obtain such Cash and accounts), *less* (x) a credit bid in the amount of the Obligations (as defined and limited in the DIP Loan documents), *less* (y) the amount equal to the Cure Amounts up to a maximum of $20,000 (the "Cure Cap"); *less* (z) any payment of Accrued Payables (together, the "Cash Purchase Price") and (II) assumption of the Assumed Liabilities. The foregoing is subject to the Section 2.3 and the Purchase Price Adjustment in Section 2.6.

2.2 Assumed Liabilities. Buyer shall, effective as of the Closing Date, be assigned Seller's interest under the Assumed Contracts and shall assume all then existing liabilities and obligations of Seller solely to the extent arising from: (a) the Cure Amounts and (b) accruing under the Assumed Contracts on and after the Closing Date (together, the "Assumed Liabilities"). Other than the Assumed Liabilities, Buyer is not assuming and shall not be liable for any Liabilities including without limitation (the "Excluded Liabilities") (i) all Excluded Taxes; (ii) all Liabilities relating to or arising out of the Excluded Assets; (iii) all Liabilities arising under the Plans or otherwise with respect to any employee of Seller (regardless of whether or not any payment to such employee is due prior to or after the Closing), including any compensation or claim, including salary or wages, any accrued vacation, sick or personal days or any bonuses; (iv) all Liabilities pursuant to Environmental Law arising from or related to any action, event, circumstance or condition related to the Business or any real property, in each case occurring or existing on or before the Closing; (v) any and all Liabilities for indebtedness of Seller; (vi) any Liability arising out of or relating to services or products of Seller to the extent provided, developed, made or marketed, sold or distributed prior to the Closing; (vii) any Liability to any direct or indirect member or shareholder of Seller, or any Affiliate thereof, other than pursuant to an Assumed Contract; (viii) any Liability of Seller based upon Seller's acts or omissions occurring after the Closing, except if such acts or omissions are taken (or omitted to be taken) at the request of Buyer in a separate writing to Seller; (ix) any breach of Contract (excluding Buyer's obligation to pay the Cure Amounts of Assumed Contracts), tort, infringement or violation of Law arising from any facts, events or circumstances, acts or omissions arising on or prior to the Closing Date, in each case, of any kind or nature whatsoever and whether primarily related to the Purchased Assets or the Business or otherwise and regardless of when and if commenced; and (x) any and all Liabilities for: (A) costs and expenses incurred by Seller or owed in connection with the administration of the Case or any other case under the Bankruptcy Code (including the U.S. Trustee fees, the fees and expenses of attorneys, accountants, financial advisors, consultants and other professionals retained by Seller and any committee in connection with any of the foregoing and the fees and expenses of the post-petition lenders and pre-petition lenders incurred or owed in connection with the administration of the Case or any other case under the Bankruptcy Code); and (B) all costs and expenses of Seller incurred in connection with the negotiation, execution and consummation of the transactions contemplated under this Agreement.

*NY 247550536v4*

2.3    Receivables and Accrued Payables.

2.3.1   On the Closing Date (and in any event no later than one calendar day before the Closing Date), the Seller shall provide to Buyer a schedule of Receivables. The Buyer, in its sole discretion, may assume to acquire such Receivables (at which time, such Receivables shall be considered a Purchased Asset) and the Buyer shall increase the Cash Purchase Price accordingly.

2.3.2   On or before October 10, 2018 and, again, on the Closing Date, the Seller shall provide to Buyer an open accounts payable list for all Liabilities created or accrued after the Petition Date to trade vendors and contract counterparties (the second schedule, "Closing Date AP Schedule"). The Buyer, in its sole discretion, may assume certain of these Liabilities ("Accrued Payables"), in which case such Accrued Payables shall be considered an Assumed Liability and the Buyer shall reduce the Cash Purchase Price accordingly.  A draft Closing Date AP Schedule is attached hereto as Schedule 2.3.2. Notwithstanding anything herein to the contrary, no reduction of the Purchase Price will result from any assumption of Accrued Payables payable to Buyer or an affiliate of Buyer.

2.4    Purchase Price Allocation.

2.4.1   As promptly as practicable (and in any event within 120 days) after the Closing Date, Buyer shall prepare and deliver to Seller a statement (the "Allocation Statement") allocating, for Tax purposes, the Purchase Price and any other items that are treated as additional purchase price for tax purposes (including the Assumed Liabilities) among the Purchased Assets.  The Allocation Statement shall be prepared in accordance with Section 1060 of the Code and the Treasury Regulations promulgated thereunder (and any similar provision of state, local, or foreign Laws, as applicable).  Seller shall have 30 days following receipt of Buyer's proposed Allocation Statement to review and comment on such proposed allocation and Buyer shall seek to resolve any disagreements in good faith.  Thereafter, Buyer shall provide Seller with Buyer's final allocation schedule (the "Final Allocation").  Within 30 days of any adjustment to the Purchase Price under any provision of this Agreement, Buyer shall adjust the Final Allocation in a manner consistent with Code Section 1060 and the Treasury Regulations promulgated thereunder (as adjusted, the "Adjusted Allocation") and deliver a copy of the Adjusted Allocation to Seller.

2.4.2   The Parties hereby agree to (i) be bound by the Final Allocation or the Adjusted Allocation, as applicable, (ii) act in accordance with the foregoing in connection with the preparation, filing and audit of any Tax Return (including in the filing of IRS Form 8594 and any other corresponding tax forms), and (iii) take no position inconsistent with the foregoing for any tax purpose (including in any audit, judicial or administrative proceeding).  If any state or federal taxing authority challenges such allocation, the Party receiving notice of the challenge shall promptly provide notice to the other Parties.

2.5    Withholding.  Buyer shall be entitled to deduct and withhold from the consideration otherwise payable pursuant to this Agreement to any Person such amounts as Buyer is required to deduct and withhold under the Code, or any Tax Law, with respect to the

5

Case 2:18-bk-06314-BMW   Doc 100   Filed 08/22/18   Entered 08/22/18 16:19:17   Desc
Main Document    Page 78 of 126

making of such payment. To the extent that amounts are so withheld, such withheld amounts shall be treated for all purposes of this Agreement as having been paid to the Person in respect of whom such deductions and withholding was made.

2.6     Purchase Price Adjustment.

2.6.1     Segregated Funds.  The Seller shall segregate a portion of the Cash Purchase Price equal to the sum of (i) the aggregate value of the acquired Receivables and (ii) 110% of the amount of the Accrued Payables ("Segregated Funds"), pending resolution of the purchase price adjustment.  Seller shall not use or disburse any of the Segregated Funds until after the purchase price adjustment.

2.6.2     Closing Statement.  As promptly as practicable following the Closing Date (but in any event within forty-five (45) days thereafter), Buyer shall prepare, or cause to be prepared, and deliver to Seller a statement (the "Closing Statement") consisting of a calculation in reasonable detail of (i) the chargebacks to the acquired Receivables the Buyer was charged after the Closing and (ii) any variance in the Accrued Payables between the Closing Date AP Schedule and the actual amount of Accrued Payables the Buyer paid.  The total of the foregoing shall be referred to herein as the "Overpayment Amount" which Overpayment Amount can only be a negative number.

2.6.3     Closing Statement Dispute Notice.  The Closing Statement shall become final, binding and conclusive upon the Parties on the 10th day following Seller's receipt of the Closing Statement unless on or prior to such 10th day Seller delivers to Buyer a written notice (a "Closing Statement Dispute Notice") stating that Seller disputes one or more items contained in the Closing Statement (a "Disputed Item") and specifying in reasonable detail each Disputed Item.

2.6.4     Resolution Period.  If Seller delivers a Closing Statement Dispute Notice on or prior to the 10th day following Seller's receipt of the Closing Statement, then Buyer and Seller shall seek in good faith to resolve the Disputed Items during the 10-day period beginning on the date Buyer receives the Closing Statement Dispute Notice (the "Resolution Period").  If Buyer and Seller reach agreement with respect to any Disputed Items, Buyer shall revise the Closing Statement to reflect such agreement.

2.6.5     Bankruptcy Court Resolution of "Unresolved Items".  If Buyer and Seller are unable to resolve all Disputed Items during the Resolution Period, then, at the request of either party, Buyer and Seller shall jointly engage and submit the unresolved Disputed Items to the Bankruptcy Court (the "Unresolved Items").

2.6.6     Method of Payment.  Seller shall pay to Buyer from the Segregated Funds within five (5) Business Days following final determination of the Overpayment Amount, such amount as agreed between the Parties or otherwise resolved by Bankruptcy Court. Payments pursuant to this Section 2.6.6 shall be treated as an adjustment to the Purchase Price for U.S. federal income Tax purposes.

6

*NY 247550536v4*

3. Closing Transactions.

3.1    Closing.  The consummation of the transactions contemplated hereby (the "Closing") shall take place at the offices of Greenberg Traurig, LLP, 200 Park Avenue, New York, New York 10166 at 10:00 A.M. New York time on the Closing Date or at such place and time as agreed by the Parties.

3.2    Closing Date.  The Closing shall be held upon the second (2nd) business day following the satisfaction of the last of the conditions set forth in Sections 4.1 and 4.2 below (the "Closing Date").  In the event the conditions to Closing have not been satisfied or waived by November 9, 2018, then any Party who is not in default hereunder may terminate this Agreement.  Alternatively, the Parties may mutually agree to an extended Closing Date.  Until this Agreement is either terminated or the Parties have agreed upon an extended Closing Date, the Parties shall diligently continue to work to satisfy all conditions to Closing and the transaction contemplated herein shall close as soon as such conditions are satisfied or waived.

3.3    Seller's Deliveries to Buyer at Closing.  On the Closing Date, Seller shall make the following deliveries to Buyer:

3.3.1   An Assignment and Assumption of Contracts substantially in the form and content attached as Exhibit A hereto, duly executed by Seller (the "Assignment of Contracts").

3.3.2   A bill of sale, duly executed by Seller substantially in the form and content attached hereto as Exhibit B hereto (the "Bill of Sale").

3.3.3   A counterpart assignment of Intangible Property, duly executed by Seller, substantially in the form and content attached hereto as Exhibit C hereto (the "Assignment of Intangible Property").

3.3.4   Any such other documents, funds or other things reasonably contemplated by this Agreement to be delivered by Seller to Buyer at the Closing.

3.4    Buyer's Deliveries to Seller at Closing.  On the Closing Date, Buyer shall make or cause the following deliveries to Seller:

3.4.1   The Cash Purchase Price.

3.4.2   A counterpart of the Assignment of Contracts, duly executed by Buyer.

3.4.3   A counterpart of the Assignment of Intangible Property, duly executed by Buyer.

3.4.4   Any such other documents, funds or other things reasonably contemplated by this Agreement to be delivered by Buyer to Seller at the Closing.

NY 247550536v4

3.5     Sales, Use and Other Taxes.     Any sales, purchase, transfer, stamp, documentary stamp, use or similar taxes under the Laws of the states in which any portion of the Purchased Assets is located, or any subdivision of any such state, which may be payable by reason of the sale of the Purchased Assets under this Agreement or the transactions contemplated herein shall be borne by Seller.

3.6     Possession.   Right to possession of the Purchased Assets shall transfer to Buyer on the Closing Date.  Seller shall transfer and deliver to Buyer on the Closing Date such keys, locks and safe combinations, passwords, codes and other similar items as Buyer may reasonably require to obtain occupation and control of the Purchased Assets, and shall also make available to Buyer the originals of all Documents in Seller's actual possession that are required to be transferred to Buyer by this Agreement.

3.7     Amendments to Schedules. From and after the date hereof until Closing, Buyer shall be entitled to make such additions and deletions to the Schedules by delivery of written notice to Seller (which notice can be given by electronic mail).  Any such deletions shall be deemed to no longer be an Assumed Asset and any such additions shall be deemed an Assumed Asset.

4.  Conditions Precedent to Closing.

4.1     Conditions to Seller's Obligations.    Seller's obligation to make the deliveries required of Seller at the Closing Date and otherwise consummate the transaction contemplated herein shall be subject to the satisfaction or waiver by Seller of each of the following conditions:

4.1.1    All of the representations and warranties of Buyer contained herein shall continue to be true and correct at the Closing in all material respects.

4.1.2    Buyer shall have executed and delivered to Seller the Assignment of Contracts and Assignment of Intangible Property, except that if Buyer waives execution and delivery of such documents by Seller, then execution and delivery of such documents by Buyer shall not be required.

4.1.3    Buyer shall have delivered, or shall be prepared to deliver to Seller at the Closing, all Cash and other documents required of Buyer to be delivered at the Closing.

4.1.4    Buyer shall have delivered to Seller appropriate evidence of all necessary corporate action by Buyer in connection with the transactions contemplated hereby, including, without limitation:   (i) certified copies of resolutions duly adopted by Buyer's directors approving the transactions contemplated by this Agreement and authorizing the execution, delivery, and performance by Buyer of this Agreement; and (ii) a certificate as to the incumbency of officers of Buyer executing this Agreement and any instrument or other document delivered in connection with the transactions contemplated by this Agreement.

8

4.1.5   No action, suit or other proceedings shall be pending before any court, tribunal or governmental authority seeking or threatening to restrain or prohibit the consummation of the transactions contemplated by this Agreement, or involving a claim that consummation thereof would result in the violation of any law, decree or regulation of any governmental authority having appropriate jurisdiction.

4.1.8   The Bankruptcy Court shall have entered the Approval Order and Procedures Order in accordance with Sections 8(a) and 8(b) below and the Approval Order shall not have been stayed as of the Closing Date.

4.2   Conditions to Buyer's Obligations. Buyer's obligation to make the deliveries required of Buyer at the Closing, and to otherwise close the transaction contemplated herein, shall be subject to the satisfaction or waiver by Buyer of each of the following conditions:

4.2.1   Seller shall have substantially performed or tendered performance of each and every covenant on Seller's part to be performed which, by its terms, is capable of performance before the Closing.

4.2.2   All representations and warranties of Seller contained herein shall continue to be true and correct at the Closing in all material respects.

4.2.3   Seller shall have executed and be prepared to deliver to Buyer the Assignment of Contracts; the Bill of Sale; and the Assignment of Intangible Property.

4.2.4   Seller shall have delivered, or shall be prepared to deliver to Buyer at the Closing, all other documents required of Seller to be delivered at the Closing.

4.2.5   No action, suit or other proceedings shall be pending before any court, tribunal or governmental authority seeking or threatening to restrain or prohibit the consummation of the transactions contemplated by this Agreement, or seeking to obtain substantial damages in respect thereof, or involving a claim that consummation thereof would result in the violation of any law, decree or regulation of any governmental authority having appropriate jurisdiction.

4.2.6   The Bankruptcy Court shall have entered the Approval Order and Procedures Order in accordance with Sections 8(a) and 8(b) below, each in a form reasonably acceptable to Buyer, and the Approval Order shall not have been stayed as of the Closing Date.

4.2.7   From the date of this Agreement through Closing, there shall have been no material adverse change in the business operations or finances of the Debtor, or the condition, quality or value of the Purchased Assets.

4.2.8   The Bankruptcy Court shall have entered the "Final Order" as defined in the Bankruptcy Court's Interim Order (1) Authorizing (A) Secured Postpetition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, and 364(c) and (d); (B) Granting Senior

9

Security Interests, Superpriority Claims, and Adequate Protection and (C) Use of Cash Collateral and (II) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001(c) (the "Interim Order"), and Seller shall not be in default under the terms of the Interim Order, Final Order, or any documents related to the debtor-in-possession financing afforded to Seller under the Interim Order and Final Order (the "DIP Loan").

4.2.9 At or before Closing, Seller shall have obtained the orders and approvals from the Bankruptcy Court, in a form reasonably satisfactory to Buyer, necessary to assume and assign all licenses of "intellectual property" (as defined in the Bankruptcy Code) to be transferred to Buyer under the terms of this Agreement.

4.2.10 At or before Closing, Seller shall file an amendment to its organizational documents changing its name (each an "Existing Name") to a name (each a "New Name") which is in no way similar to any corporate name set forth on the signature page hereof and shall furnish such written consents and assignments as Buyer shall hereafter reasonably request in connection with such name change. Immediately after the Closing, Seller shall take all action necessary to ensure that the caption of Bankruptcy Case is changed to reflect the New Name and to delete all references to the Existing Name.

4.2.11 By no later than the entry of the Procedures Order by the Bankruptcy Court, Buyer shall complete its financial, legal and operational due diligence of Seller, Business and the Purchased Assets, with results satisfactory to Buyer in its sole discretion.

4.3    Termination.  If any of the above conditions is neither satisfied nor waived on or before the date by which the condition is required to be satisfied, a Party who is not then in default hereunder may terminate this Agreement by delivering to the other written notice of termination. Any waiver of a condition shall be effective only if such waiver is stated in writing and signed by the waiving party; provided, however, that the consent of a Party to the Closing shall constitute a waiver by such party of any conditions to Closing not satisfied as of the Closing Date.

5. Seller's Representations and Warranties.  In addition to the representations and warranties contained elsewhere in this Agreement, Seller hereby makes the following representations and warranties to Buyer:

5.1    Organization, Standing and Power. Subject to the applicable provisions of the Bankruptcy Code and any other bankruptcy Law, Seller has all requisite entity power and authority to own, lease and operate its properties, to carry on Seller's business as now being conducted and, upon obtaining the Approval Order, Seller will have the power and authority to execute, deliver and perform this Agreement and all writings relating hereto.

5.2    Authorization of Seller.  Subject to Seller's obtaining the Approval Order, the  execution and delivery of this Agreement and the Ancillary Agreement, the consummation of the transactions herein contemplated, and the performance of, fulfillment of and compliance with the terms and conditions hereof and thereof by Seller do not and will not:  (i) conflict with

10

or result in a breach of the certificate of formation operating agreement and any other governing document of Seller; (ii) violate any Law, or any order, writ, injunction or decree of any court or governmental authority; or (iii) violate or conflict with or constitute a default under any Contract or writing of any nature to which Seller is a party or by which Seller or its assets or properties may be bound.

5.3     <u>Title to Assets; Sufficiency of Assets</u>.  (i) Seller owns and has the good, valid, marketable and undivided legal title to all of the Purchased Assets, and (ii) following entry of the Sale Order and the consummation of the Closing in accordance with the terms and conditions of this Agreement, Buyer will be vested, to the maximum extent permitted by Sections 363 and 365 of the Bankruptcy Code, with good, valid, marketable and undivided title in, to and under the Purchased Assets free and clear of all Liens, Claims, Interests and Encumbrances, other than Assumed Liabilities.  Seller has not taken any action, or failed to take any action, which action or failure would preclude or prevent the Business as a legal matter from being conducted as now conducted, in all material respects.  The Purchased Assets constitute all of the assets, rights, interests and properties of every nature and kind whatsoever necessary for Buyer to conduct and operate the Business immediately after the Closing in substantially the same manner as conducted prior to the Closing.  No Purchased Asset is subject to any agreement, written or oral, for its sale or use by any Person other than Seller.  Other than as provided in the Transferred IP Agreements, no Person other than Seller is engaged in the operation of, or hold rights, title and interest in or to, any of the Purchased Assets.

5.4     <u>Litigation; Proceedings</u>.  Except for the Case, there is no action, suit, or proceeding pending or, threatened in writing against or related to the Business, whether at Law or in equity, whether civil or criminal in nature or by or before any arbitrator or governmental authority, nor are there any investigations relating to the Business pending or threatened (in writing) by or before any arbitrator or any governmental authority.

5.5     <u>Intellectual Property</u>. (i) Seller exclusively owns all right, title and interest to, or is licensed or otherwise possesses legally enforceable rights to use, all Intellectual Property required to operate the Business as currently conducted and can convey all Seller Owned Intellectual Property, and its rights in any Transferred IP Agreements, free and clear of Liens pursuant to the Sale Order, (ii) there are no pending or threatened claims by any Person alleging infringement or violation of any intellectual property rights of any Person by Seller as a result of its use of Seller Intellectual Property, (iii) the conduct of the Business does not infringe any Intellectual Property rights of any Person, and (iv) there is no infringement by any Person of the rights of Seller to or in connection with Seller Intellectual Property.  <u>Schedule 5.5</u> sets forth a true and complete list, as of the date hereof, of (i) all registered and applied-for Seller Owned Intellectual Property (whether registered with the United States Patent and Trademark Office, the United States Copyright Office or otherwise), (ii) all Intellectual Property licenses used in the operation of the Business as currently conducted and (iii) Transferred IP Agreements to which Seller is a party.  No employee, consultant or independent contractor of the Business has any right, title or interest, directly or indirectly, in whole or in part, in any Seller Intellectual Property.

*NY 247550536v4*

6.  Buyer's Representations and Warranties.  Buyer hereby makes the following representations and warranties to Seller:

6.1  Organization, Standing and Power.  Buyer is a corporation duly organized, validly existing and in good standing under the laws of the State of New York.  Buyer has all requisite entity power and authority to own, lease and operate its properties, to carry on its business as now being conducted and to execute, deliver and perform this Agreement and all writings relating hereto.

6.2  Authorization of Buyer.  The execution, delivery and performance of this Agreement and the Ancillary Agreements by Buyer have been duly and validly authorized.  The execution and delivery of this Agreement and the Ancillary Agreements, the consummation of the transactions herein and therein contemplated, and the performance of, fulfillment of and compliance with the terms and conditions hereof and thereof by Buyer do not and will not: (i) conflict with or result in a breach of the articles of incorporation or by-laws of Buyer; (ii) violate any statute, law, rule or regulation, or any order, writ, injunction or decree of any court or governmental authority; or (iii) violate or conflict with or constitute a default under any agreement, instrument or writing of any nature to which Buyer is a party or by which Buyer or its assets or properties may be bound.

7.  Certain Defined Terms. For purposes of this Agreement:

"Affiliate" means, with respect to any specified Person, any other Person that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with, such specified Person.

"Ancillary Agreements" means the Bill of Sale, the Assignment of Contracts and the Assignment of Intangible Property.

"Business Day" means any day other than Saturday, Sunday and any day that is a legal holiday or a day on which banking institutions in New York are authorized by Law or other governmental action to close.

"Cash" means all cash on hand and in banks, cash equivalents, marketable securities, short-term investments, treasury bills, money orders, checks (including cash in transit such as checks received prior to the Closing, whether or not deposited or cleared prior to the Closing), checking account balances, instruments for the payment of money, certificates of deposit and other time deposits and letters of credit.

"Claim" has the meaning ascribed by Bankruptcy Code §101(5), including all rights, claims, causes of action, defenses, debts, demands, damages, offset rights, setoff rights, recoupment rights, obligations, and Liabilities of any kind or nature under contract, at Law or in equity, known or unknown, contingent or matured, liquidated or unliquidated, and all rights and remedies with respect thereto.

12

"Code" means the Internal Revenue Code of 1986, as amended, and the Treasury Regulations issued thereunder.

"Cure Amounts" means all amounts, costs and expenses (a) required by the Bankruptcy Court to cure all defaults or compensate the non-debtor party for actual pecuniary loss under the Assumed Contracts so that they may be sold and assigned to Buyer pursuant to Sections 363 and 365 of the Bankruptcy Code or (b) that are payable pursuant to the terms of any Assumed Contract in connection with the sale of any goods or services by Seller at any time prior to the Closing Date.

"Encumbrances" means, to the extent not considered a Lien, any security interest, pledge, hypothecation, mortgage, deed of trust, lease, charge, option, right of first refusal, easement, servitude, proxy, voting trust or agreement, transfer restriction, lien or encumbrance

"Environmental Laws" means all federal, state and local Laws governing health and safety, pollution or the protection of the environment, and the regulations promulgated pursuant thereto.

"Excluded Taxes" means (i) all income Taxes owed by Seller or any of its Affiliates for any period; (ii) all Taxes relating to the Excluded Assets or Excluded Liabilities for any period; (iii) all Taxes relating to the Purchased Assets, the Business or the Assumed Liabilities for any pre-Closing period; and (iv) all Taxes of Seller or any other Person by reason of being a member of a consolidated, combined, unitary or affiliated group that includes Seller or any of its present or past Affiliates, by reason of a tax sharing, tax indemnity or similar agreement entered into by Seller or any of its present or past Affiliates or by reason of transferee or successor liability arising in respect of a transaction undertaken by Seller or any of its present or past Affiliates.

"Intellectual Property" means (i) patents, patent applications and statutory invention registrations, (ii) trademarks, service marks, domain names, websites and pages, trade dress, logos, trade names, corporate names and other identifiers of source or goodwill, including registrations and applications for registration thereof and including the goodwill of the business symbolized thereby or associated therewith, (iii) mask works and copyrights, including copyrights in computer software, and registrations and applications for registration thereof, and (iv) confidential and proprietary information, including trade secrets, know-how and invention rights.

"Interest" means "interest" as that term is used in Bankruptcy Code Section 363(f).

"Inventories" means all inventory, merchandise, goods, raw materials, packaging, labels, supplies and other personal property related to the Business and maintained, held or stored by or for Seller at the Closing, and any prepaid deposits for any of the same.

"Law" means any federal, national, supranational, state, provincial, local or similar statute, law, ordinance, regulation, rule, code, order, requirement or rule of law (including common law).

13

"Liability" means any indebtedness, debt, payable, claim, liability, expense, commitment or obligation (whether direct or indirect, known or unknown, asserted or unasserted, absolute or contingent, accrued or unaccrued, liquidated or unliquidated, or due or to become due), and including all costs and expenses relating thereto.

"Lien" has the meaning given to that term in the Bankruptcy Code.

"Owned Intellectual Property" means Intellectual Property owned by Seller.

"Person" means any individual, partnership, firm, corporation, governmental authority, limited liability company, association, trust, unincorporated organization or other entity, as well as any syndicate or group that would be deemed to be a person under Section 13(d)(3) of the Securities Exchange Act of 1934, as amended.

"Plans" means all "employee benefit plans" (as defined in Section 3(3) of ERISA) and all bonus, equity or equity based compensation, incentive, deferred compensation, change in control, retiree medical or life insurance, supplemental retirement, severance or other benefit plans, programs or arrangements, and all employment, termination, severance or other similar contracts or agreements to which Seller is a party, with respect to which Seller has any obligation or liability under, or which are maintained, contributed to or sponsored by Seller or any entity that together with Seller would be deemed a "single employer" within the meaning of Section 4001(b)(1) of ERISA for the benefit of any current or former employee, director or independent contractor of Seller as of the Closing.

"Receivables" means any and all accounts receivable, notes and other amounts receivable from third parties, including customers and employees, arising from the conduct of the Business before the Closing, whether or not in the ordinary course, together with any unpaid financing charges accrued thereon.

"Tax" or "Taxes" means any and all taxes, fees, levies, duties, tariffs, imposts, and other charges of any kind (together with any and all interest, penalties, additions to tax and additional amounts imposed with respect thereto) imposed by any government or taxing authority, including taxes or other charges on or with respect to income, franchises, windfall or other profits, gross receipts, property, sales, use, capital stock, payroll, employment, social security, workers' compensation, unemployment compensation, or net worth; taxes or other charges in the nature of excise, withholding, ad valorem, stamp, transfer, value added, or gains taxes; license, registration and documentation fees; and customs' duties, tariffs, and similar charges.

"Transferred IP Agreements" means (a) licenses of Owned Intellectual Property by Seller to third parties, (b) licenses of Intellectual Property by third parties to Seller (c) Contracts between Seller and third parties relating to the development or use of Intellectual Property, the development or transmission of data, or the use, modification, framing, linking advertisement, or other practices with respect to Internet web sites, in each case, that are used in connection with the Business that are Assumed Contracts and (d) consents, settlements, decrees, orders, injunctions, judgments or rulings governing the use, validity or enforceability of Owned Intellectual Property.

14

"Treasury Regulation" means, with respect to any referenced provision, such provision of the regulations promulgated by the United States Department of the Treasury.

8. Bankruptcy Court Approvals.

(a)     No later than August 22, 2018, Seller will file a motion with the Bankruptcy Court (the "Sale Motion") for an order (the "Approval Order"), in form and substance acceptable to Buyer, from the Bankruptcy Court which (i) approves the sale of the Purchased Assets to Buyer on the terms and conditions set forth in this Agreement and authorizes Seller to proceed with this transaction, (ii) includes a specific finding that Buyer is a good faith Buyer of the Purchased Assets, and (iii) states that the sale of the Purchased Assets to Buyer shall be free and clear of all Liens, Claims, Interests and Encumbrances whatsoever. Following the filing of the Sale Motion, Seller shall use reasonable efforts to obtain the Approval Order. Both Buyer's and Seller's obligations to consummate the transactions contemplated in this Agreement which Buyer and Seller may hereafter enter into shall be conditioned upon the Bankruptcy Court's entry of the Approval Order. If the Bankruptcy Court refuses to issue the Approval Order or to approve any third-party buyer at the hearing on the Sale Motion (the "Sale Hearing"), then this Agreement shall automatically terminate, and Seller and Buyer shall be relieved of any further liability or obligation hereunder.

(b)     As part of the Sale Motion (or pursuant to a separate motion in Seller's discretion), Seller shall also request and obtain from the Bankruptcy Court an order (the "Procedures Order") which approves the bidding procedures (the "Bidding Procedures"): (i) in the event that a third party (an "Overbid Buyer" and the underlying agreement between the Overbid Buyer and Seller, the "Overbid Agreement") is approved by the Bankruptcy Court as the buyer of the Purchased Assets at the Sale Hearing, then the Overbid Agreement and the order approving such sale shall provide that the Buyer shall receive a payment in Cash in immediately available funds of all Obligations under the DIP Loan Documents from the proceeds of such sale at closing, (ii) no prospective Overbid Buyer will be permitted to bid at the Sale Hearing unless such party has been deemed "financially qualified" by Seller, (iii) no prospective Overbid Buyer who bids for the Purchased Assets at the Sale Hearing shall be entitled to purchase the Purchased Assets unless such prospective Overbid Buyer offers to purchase the Purchased Assets for consideration at least $25,000 greater than the consideration set forth in this Agreement (including all Cash, non-cash consideration and assumed liabilities) (i.e., $500,000) and otherwise on terms at least as favorable to Seller's estate as those set forth in this Agreement, and Seller shall, in Seller's discretion, have determined that such overbids satisfy such bidding increment requirement, and (iv) deem Buyer a qualified bidder and this Agreement a qualified bid. Should overbidding take place, Buyer shall have the right, but not the obligation, to participate in the overbidding (including the right to credit bid the amount of the Obligations) and be approved as the successful Overbid Buyer at the Sale Hearing. This Agreement shall terminate if the Procedures Order is for any reason whatsoever not entered by the Bankruptcy Court on or before September 12, 2018. Upon entry of the Procedures Order in accordance with the provisions of this Section 8(b), the condition set forth in this Section 8(b) shall conclusively be deemed satisfied.

NY 247550536v4

9.  Access to Records, Properties and Employees of Seller.  From and after the date of this Agreement until the Closing Date, Seller shall afford to Buyer's officers, independent public accountants, counsel, lenders, consultants and other representatives, reasonable access for examination at all reasonable times to the Purchased Assets and all records pertaining to the Purchased Assets or the Business, and to the employees of Seller's business.  From and after the date of this Agreement until the Closing Date, Seller shall afford and allow to Buyer's officers, independent public accountants, counsel, lenders, consultants and other representatives, access to and communication with Seller's creditors, manufacturers, suppliers, customers and licensors for purposes of discussing the purchase and sale of the Purchased Assets and the conduct of the Business after Closing.  Buyer, however, shall not be entitled to access to any materials containing privileged communications or information about employees, disclosure of which might violate an employee's reasonable expectation of privacy.  Buyer expressly acknowledges that except as provided in Section 4.2, nothing in this Section 9 is intended to give rise to any contingency to Buyer's obligations to proceed with the transactions contemplated herein.

10. Employee Matters.

10.1    Offer of Employment.  Seller hereby permits to the Buyer and Buyer shall be entitled to, but is not required to, offer employment to one or more employees of Seller on such terms as Buyer deems appropriate in its exclusive discretion.  As used herein, "Transferred Employee" shall mean each employee who accepts such offer. Buyer sole and exclusive obligation to the Transferred Employees shall be pursuant to such terms agreed upon between Buyer and such Transferred Employees and Buyer does not assume and shall not be deemed to have  assumed any Liability to any Transferred Employee arising out of, resulting from or related to such Transferred Employee's employment or engaged with Seller.

10.2    Certain Other Employee-Related Costs

(a)  Each Transferred Employee's active participation in any Plans shall cease as of the Closing Date or as otherwise provided under the terms of such Plan.  Notwithstanding the preceding sentence, the Plans shall retain Liability for all claims incurred by the Transferred Employees and their dependents prior to the Closing Date including claims which are not submitted until after the Closing Date.  A claim shall be deemed incurred (i) on the date of the occurrence of death or dismemberment in the case of claims under life insurance and accidental death and dismemberment plans and (ii) on the date on which the service or treatment is provided in the case of claims under medical, hospital, dental and similar plans.

(b) The provisions of this Agreement, including Section 10, are for the benefit of the parties to this Agreement only and shall not be construed to grant any rights, as a third party beneficiary or otherwise, to any person who is not a party to this Agreement, nor shall any provision of this Agreement be deemed to be the adoption of, or an amendment to, any employee benefit plan, as that term is defined in Section 3(3) of ERISA.

16

*NY 247550536v4*

11. Miscellaneous.

        11.1    Attorneys' Fees.  In the event that either party hereto brings an action or other proceeding to enforce or interpret the terms and provisions of this Agreement, the prevailing party in that action or proceeding shall be entitled to have and recover from the non-prevailing party all such reasonable fees, costs and expenses (including, without limitation, all court costs and reasonable attorneys' fees) as the prevailing party may suffer or incur in the pursuit or defense of such action or proceeding.

        11.2    Notices.

        11.2.1 All notices, requests, demands, consents, waivers and other communications required or permitted to be given under the terms of this Agreement must be in writing and will be deemed to have been delivered: (i) upon receipt, if delivered personally; (ii) when sent, if sent by facsimile (provided confirmation of transmission is mechanically or electronically generated and kept on file by the sending party); (iii) on the day of transmission, if sent via electronic transmission to the email address below (provided confirmation of transmission is mechanically or electronically generated and kept on file by the sending party); and (iv) if sent by overnight courier service, one Business Day after deposit with an overnight courier service with next day delivery specified, in each case, properly addressed to the Party to receive the same.   The addresses, email addresses and facsimile numbers for such communications shall be:

| | |
|---|---|
| To Seller: | Tanga.Com, LLC |
| | c/o Tanga, Inc. |
| | 2487 South Gilbert Road |
| | Suite 106-485 |
| | Chandler, AZ 85225 |
| | Attention:  Jeremy Young, Manager |
| | Fax:  [_____] |
| | Email: [_____] |
| | |
| With a copy to: | Fennemore Craig, P.C. |
| | 2394 East Camelback Road |
| | Suite 600 |
| | Phoenix, AZ 85016-3429 |
| | Attention:  Anthony W. Austin |
| | Fax:  (602) 916-5547 |
| | Email:  AAUSTIN@FCLAW.com |
| | |
| To Buyer: | E. Chabot Ltd. |
| | 10 West 33rd Street, Suite 712 |
| | New York, NY 10001 |
| | Attention:  Ezra Shabot |
| | Fax:  [_____] |
| | Email: ezra@echabot.com |

17

NY 247550536v4

|                   |                                              |
|-------------------|----------------------------------------------|
| With a copy to:   | Greenberg Traurig, LLP                       |
|                   | MetLife Building                             |
|                   | 200 Park Avenue                              |
|                   | New York NY 10166                            |
|                   | Attention:  Karl Burrer and Leo Muchnik      |
|                   | Fax:  212.801.6400                           |
|                   | Email:  BurrerK@gtlaw.com and MuchnikL@gtlaw.com |

11.3     Entire Agreement.  This instrument, together with the *Secured Promissory Note* and *Security* Agreement, and the documents to be executed pursuant hereto contain the entire agreement between the parties relating to the sale of the Purchased Assets.  Any oral representations or modifications concerning this Agreement or any such other document shall be of no force and effect excepting a subsequent modification in writing, signed by the Party to be charged.

11.4     Modification.  This Agreement may be modified, amended or supplemented only by a written instrument duly executed by all the parties hereto.

11.5     Closing Date.  All actions to be taken on the Closing pursuant to this Agreement shall be deemed to have occurred simultaneously, and no act, document or transaction shall be deemed to have been taken, delivered or effected until all such actions, documents and transactions have been taken, delivered or effected.

11.6     Severability.  Should any term, provision or paragraph of this Agreement be determined to be illegal or void or of no force and effect, the balance of the Agreement shall survive.

11.7     Captions.  All captions and headings contained in this Agreement are for convenience of reference only and shall not be construed to limit or extend the terms or conditions of this Agreement.

11.8     Further Assurances.  Each Party hereto will execute, acknowledge and deliver any further assurance, documents and instruments reasonably requested by any other Party for the purpose of giving effect to the transactions contemplated herein or the intentions of the Parties with respect thereto; provided that nothing herein shall be deemed to require any Party to execute or deliver any such further assurance, document or instrument to the extent that the same could in any material way increase the burdens, obligations or liabilities otherwise imposed upon such Party by this Agreement.

11.9     Waiver.  No waiver of any of the provisions of this Agreement shall be deemed, or shall constitute, a waiver of other provisions, whether or not similar, nor shall any waiver constitute a continuing waiver.  No waiver shall be binding unless executed in writing by the Party making the waiver.

*NY 247550536v4*

11.10   Brokerage Obligations. Seller and Buyer each represent and warrant to the other that such Party has incurred no liability to any broker or agent with respect to the payment of any commission regarding the consummation of the transaction contemplated hereby.

11.11   Payment of Fees and Expenses.  Except as provided in Section 11.1 above, each party to this Agreement shall be responsible for, and shall pay, all of its own fees and expenses, including those of its counsel, incurred in the negotiation, preparation and consummation of the Agreement and the transaction described herein.

11.12   Survival.   The respective representations, warranties, covenants and agreements of Seller and Buyer herein, or in any certificates or other documents delivered prior to or at the Closing, shall not be deemed waived or otherwise affected by the Closing.

11.13   Assignments.  This Agreement shall not be assigned by any Party hereto without the prior written consent of the other Party hereto, which consent the Party may grant or withhold in its sole and absolute discretion; provided, that Buyer may assign its rights and obligations hereunder to any Affiliate thereof.

11.14   Binding Effect.  Subject to the provisions of Section 11.13, above, this Agreement shall bind and inure to the benefit of the respective heirs, personal representatives, successors, and assigns of the Parties hereto.

11.15   Applicable Law.  This Agreement shall be governed by and construed in accordance with the laws of the State of New York.

11.16   Construction.  In the interpretation and construction of this Agreement, the Parties acknowledge that the terms hereof reflect extensive negotiations between the Parties and that this Agreement shall not be deemed, for the purpose of construction and interpretation, drafted by either Party hereto.

11.17   Counterparts.  This Agreement may be signed in counterparts.  The Parties further agree that this Agreement may be executed by the exchange of facsimile or electronically sent signature pages provided that by doing so the Parties agree to undertake to provide original signatures as soon thereafter as reasonable in the circumstances.

11.18   Bankruptcy Court Jurisdiction.   **THE PARTIES AGREE THAT IF ANY DISPUTE ARISES OUT OF OR IN CONNECTION WITH THIS AGREEMENT OR ANY OF THE DOCUMENTS EXECUTED HEREUNDER OR IN CONNECTION HEREWITH, THE BANKRUPTCY COURT IN THE CASE SHALL HAVE EXCLUSIVE PERSONAL AND SUBJECT MATTER JURISDICTION AND SHALL BE THE EXCLUSIVE VENUE TO RESOLVE ANY AND ALL DISPUTES RELATING TO THE TRANSACTION CONTEMPLATED BY THIS AGREEMENT.  THE BANKRUPTCY COURT IN THE CASE SHALL HAVE SOLE JURISDICTION OVER SUCH MATTERS AND THE PARTIES AFFECTED THEREBY AND BUYER AND SELLER EACH HEREBY CONSENT AND SUBMIT TO SUCH SOLE JURISDICTION.**

*NY 247550536v4*

11.19    Interpretation and Rules of Construction.  In this Agreement, except to the extent that the context otherwise requires:

11.19.1 when a reference is made in this Agreement to an Article, Section, Exhibit or Schedule, such reference is to an Article or Section of, or an Exhibit or a Schedule to, this Agreement unless otherwise indicated;

11.19.2 whenever the words "include," "includes" or "including" are used in this Agreement, they are deemed to be followed by the words "without limitation";

11.19.3 the words "hereof," "herein" and "hereunder" and works of similar import, when used in this Agreement, refer to this Agreement as a whole and not to any particular provision of this Agreement;

11.19.4 all terms defined in this Agreement have the defined meanings when used in any certificate or other document made or delivered pursuant hereto, unless otherwise defined therein;

11.19.5 the definitions contained in this Agreement are applicable to the singular as well as the plural forms of such terms;

11.19.6 any Law defined or referred to herein or in any agreement or instrument that is referred to herein means such Law or statute as from time to time amended, modified or supplemented, including by succession of comparable successor Laws;

11.19.7 references to a Person are also to its permitted successors and assigns; and

11.19.8 the use of "or" is not intended to be exclusive unless expressly indicated otherwise.

[Signature Page to Follow]

20

**In Witness Whereof**, Buyer and Seller have executed this Asset Purchase Agreement as of the day and year first above written.

**SELLER:**

Tanga.Com, LLC, a Delaware limited liability company


By:_____
Name: Jeremy Young
Its:  Manager


**BUYER:**

E. Chabot Ltd., a New York corporation

By:_____
Name: Ezra Shabot
Its:  CEO

*[Signature Page to Asset Purchase Agreement]*

## Schedule 1.1.1

## Bank Accounts

| Bank | Account |
| --- | --- |
| Chase - Operating | 2588 |
| Chase - Belle Chic | 8152 |
| Chase - LOL | 7764 |
| Alliance | 2952 |

## Schedule 1.1.2

### Personal Property

Description

| |
|---|
| Amazon.com - TV: All |
| Apple Computer - Derek |
| Laptop Jeremy |
| Apple Computer - Gail |
| Lenovo Computer: CS |
| Lenovo Computer: J Trujillo |
| Apple computer: Rachel |
| Lenovo Computer: T Schuller |
| Lenovo Computer: Erik Flugstad |
| Apple Computer R. Spiher |
| Apple Computer Peter |
| Macbook Pro JVD |
| Lenovo - Verbin (Became Nicks) |
| Lenovo - Karli docking & computer |
| Apple Computer - Derek |
| Lenovo - C Russo docking & laptop |
| Amazon - Monitor |
| Computer - Tanga |
| Computer - Marketing |
| Computer - Baker |
| B & H Photo developer laptops |
| Apple store - Jeremy |
| Laptop for Pub - Jerry's card |
| Computer for Dev team 60% Tanga |
| Lenovo - Deb Smith Laptop |
| Any and all mailing lists for customers |
| All equipment and computers in storage |
| Lenovo K/B (20305002) |
| WD My Passport Portable Hard Drive |
| Wacom Drawing Tablet |
| Microsft Ergonomic K/B |
| 13" MacBook Pro |
| Apple Cinema Display |
| Lenovo G50 (S/N: PF0B825G) |
| Samsung Monitor |

*NY 247550536v4*

| |
|---|
| Logitech Keyboard |
| Apple wireless mouse |
| Logitech Wireless Mouse (S/N:1636LZ005628) |
| Logitech Wireless K/N (S/N: 16386YA1F208) |
| Cisco Phone SPA52562 (S/N: CBT15020728) |
| Cisco Phone SPA52562 (S/N: CC017440KB9) |
| Cisco Phone SPA52562 (S/N: CCQ174307CR) |
| Cisco Phone SPA52562 (S/N: CBT151109KI) |
| Anker Wireless K/B |
| AOC monitor E20705 (S/N: AAGE59A020191) |
| hp monitor W2271d (S/N: 6CM41026GN) |
| Dell D2015Hf monitor (S/N: CN-08KVY2-72827-489-A25I) |
| Dell Monitor |
| Dell Monitor (S/N: MX-0PH5NY-74446-22T-233L) |
| Logitech K20 (P/N: 820-002864) |
| Logitech M705 |
| Lenovo K/B (50262813) |
| Dell Monitor (S/N: CN-0VJH96-7445-57E-A2HU) |
| Lenovo PC Tower (S/N: R300Z8M2) |
| Amazon Basics Keyboard |
| hp mouse |
| hp 20wm monitor (S/N: 6CM32103B6) |
| Dell monitor (S/N: CN-08KVY2-72872-49B-A1TI) |
| EPSON Projector S/N: RENK3300246 |
| Sharp TV |
| Lenovo desktop (S/N: ES13132880) |
| Lenovo Thinkpad X1 Carbon (S/N: R9-0FJN69) |
| acer S231HL monitor |
| Logitech K350 (P/N: 820-00246) |
| Logitech M510 |
| Logitech K120 |
| Lenovo Thinkpad |
| Sanyo Mini Fridge |
| hp Officejet Pro 8500A Plus |
| hp 20wm (S/N: 6CM330300N) |
| 13" Mid 2009 MacBook Pro (S/N: W8939JZS7XJ) |
| White iPad Model A1416 |
| hp 20wm (S/N: 6CM321033F) |
| 11" MacBook Air |
| Lenovo laptop (S/N: PFOC7K47) |

2

| |
|---|
| Dell Mouse |
| Logitech K360 |
| Microsft Wirless Keyboard 2000 |
| Logitech K350 (P/N: 820-00246) |
| Dell Keyboard |
| Logitech K520 |
| Black wired mouse |
| Logitech M310 |
| Logitech K750 |
| Polycom Voice Station |
| Dell Monitor (S/N: CN-0XRPV5-74445-48M-B2GU |
| hp f2105 |
| Gateway Monitor FHX2153L |
| Dell Monitor D2015Hf |
| hp 20wm |
| Samsung T27B350ND TV |
| Dell Monitor S/N: CN-OXRPVS-74445-48m-B7UU |
| Wireless Mouse |
| LG Flatron E2340V |
| Zebra ZP505 |
| Zebra Stripe 54M |
| Brother label maker |
| Acer K/B |
| hp Pavilion tower |
| acer mouse |
| Dell Keyboard |
| Viewsonic Monitor |
| ULINE Scale |
| hp 693P |
| hp Compaq 6910 |
| Canon DSLR |
| HDD Cloner |
| Air Compressor |
| Photo equipment |
| Dell tablet |
| HP Elitebook 2540 |
| Dell Chromebook |
| Dell Laptop W10HM64 |
| hp Elitebook 8760w |
| hp Elitebook 6930p |

3

| | Quantity |
|---|---|
| Panasonic CF-30 | |
| Dell Latitude 3340 | |
| Samsung Chromebook | |
| Dell mini laptop | |
| Dell Latitude D620 | |
| Lenovo Mini Desktop | |
| Dell XPS tower | |
| Standard Lenovo Tower | |
| Amazon Basics Mouse | |
| Anker Wireless Mouse | |
| Dell Monitor (S/N: CN-OVJH96-74445-4AH-A1NU) | |
| Dell 25" Monitor | |
| Small Dell Monitor | |
| Dell 15" Laptop | |
| Dell 25" wide screen monitor | |
| Acer monitor | |
| Samsung Monitor 25" | |
| Asus Monitor 25" | |
| Dell Monitor | |
| hp monitor 25" | |
| acer mini tower | |
| Lenovo mini tower | |
| hp standard tower | |
| Lenovo standard tower | |
| Dell standard tower | |
| Cisco phones | |
| | Quantity |
| LG 25 Monitor | 1 |
| Gateway 22 | 1 |
| Hanspree 22 | 1 |
| Acer 22 | 3 |
| Acer 22 | 2 |
| Dell 19 | 1 |
| Acer 25 | 1 |
| HP 19 | 1 |
| AOC 19 | 1 |
| Acer 25 | 2 |
| HP 22 | 1 |
| HP 22 | 2 |
| HP 25 | 1 |

Case 2:18-bk-06314-BMW   Doc 100   Filed 08/22/18   Entered 08/22/18 16:19:17   Desc
Main Document    Page 99 of 126

| | |
|---|---|
| Samsung 25 | 2 |
| Acer 27 | 1 |
| Asus 25 | 1 |
| Dell 22 | 1 |
| Dell 25 | 2 |
| Dell 27 | 2 |
| Dell 22 | 2 |
| Dell 19 | 1 |
| Dell 25 | 2 |
| Samsung 25 | 1 |
| Acer 25 | 1 |
| Dell 22 | 2 |
| Samsung 30 | 1 |
| Dell 25 | 1 |
| Dell 25 | 1 |
| Dell 22 | 1 |
| Dell 22 | 2 |
| Dell 25 | 1 |
| Dell 19 | 1 |
| HP 22 | 1 |
| Gateway 22 | 1 |
| Dell 25 | 1 |
| Del 25 | 1 |
| Toshiba Laptop | 1 |
| Lenova Thinkpad | 5 |
| Gateway Laptop | 1 |
| Lenovo Tower | 1 |
| Dell Inspiron | 2 |
| Gateway tower | 1 |
| Avatar Tower | 1 |
| Lenovo Think Centers | 2 |
| Lenovo Tower | 1 |
| Gateway Tower | 1 |
| Macbook Pro | 3 |
| Macbook | 1 |
| Ipad | 1 |
| Apple Accessories | |

NY 247550536v4

## Schedule 1.1.3

Inventories

None

*NY 247550536v4*

## Schedule 1.1.4

### Receivables

|  | Current | 1 - 30 | 31 - 60 | 61 - 90 | 91 and over | Total |
|---|---|---|---|---|---|---|
| **Blue Dolphin LLC** |  | 1,648.50 | 2,693.25 | 3,622.50 |  | 7,964.25 |
| **Million Dollar Smile** |  |  |  | 8,178.03 |  | 8,178.03 |
| **TOTAL** | $0.00 | $1,648.50 | $2,693.25 | $11,800.53 | $0.00 | $16,142.28 |

*NY 247550536v4*

## Schedule 1.1.9

### Assumed Contracts

Ongoing Service Agreements
ADP
Gusto
TaxJar
QuickBooks Online
Bill.com
Vonage
CubeSmart
Transaction Pro Importer
Asana
Slack
Zendesk
Amazon Web Service
Loggly
Heroku
Airbrake
CodeShip
White Pages
Luminati
PacketFlip
BrickFTP
Neutrino
NewRelic
Enom
Pingdom
Github
PagerDuty
BrowserStack
Chartbeat
Google Advertising
JEB Commerce
ExactTarget
MailGun
SendGrid
OptinMonster
1Sale / Paid Placement
Ziff Davis
Deal News - Offer Listings

Microsoft Bing Ads
Cleam.IO
Retargeting

2

*NY 247550536v4*

## Schedule 1.1.10

### Permits

Sales Tax Permits
Arizona
California
Nevada
Washington
Florida
Pennsylvania
New York
California Electronic
Recycling
Connecticut

Business Permit - Arizona

*NY 247550536v4*

## Schedule 2.3.2

### Closing Date Accounts Payable

| Vendor | Balance at 8/22/18 - Postpetition Payable |
|---|---|
| 5D Global Distributions | - |
| A.H. Apothecary | - |
| AJD Trading | 180.63 |
| AlaBoard | 310.37 |
| AN Associates Co Ltd. | (46.01) |
| Assistive Technology Services | - |
| AVI Mfg | 1,850.12 |
| Barbados Leather | 531.10 |
| Beantown Bedding | - |
| Beta Macs | (1,963.08) |
| Beverly Hills Silver | 369.22 |
| Big Idea | 685.24 |
| Blair Technology Group | 817.60 |
| Blue Streak LLC | - |
| Broome International Consortium LLC | - |
| Calendars.com LLC | 38.72 |
| Center Link Media | 12,603.03 |
| Chainz | - |
| Chainz (Fivebeat Enterprises) | - |
| CHEETAH E-COMMERCE LLC | 118.04 |
| Comfort Wheels | 2,190.89 |
| Complete Skin Care N More | 95.49 |
| Consentio | - |
| Consumer Priority Service (CPS) | 759.13 |
| Curv Group, LLC | 31.42 |
| Dastmalchi, LLC | 1,937.32 |
| David to Fiery Trade Co., Limited | - |
| dclteck | - |
| De Couer | - |
| DM Magazines | 910.03 |
| Doctor Diet | 170.00 |
| EBOX INC | 28.48 |
| Ergoactives | - |
| EYEKEPPER GLOBAL INC | - |
| EZ-Goods Inc. | 1,822.09 |

| | |
|---|---|
| Fab Findz | 2,065.91 |
| FASH Group, Inc. | 78.91 |
| Galiva Inc. | 10.48 |
| GH Multiservice | - |
| Goldstar Tech Inc | - |
| Goldstar Tech Inc. | - |
| Grace Your style | - |
| Hakol Products | 657.41 |
| Hermes Sales & Marketing | 35.25 |
| HGP Group | 1,043.40 |
| HKBH Jewelry Group Inc. | (434.05) |
| Homey Homes Inc. | 530.08 |
| HONGKONG HUALIANDA LIMITED | - |
| INFMETRY LLC | - |
| Inspired Home Decor | - |
| Inspired Home Decor, LLC | - |
| Jassed Inc | - |
| Jewelry Brothers | 232.38 |
| JRL Imports | - |
| Just Mobile Direct | - |
| KNS International | - |
| Lamantine Software, a.s. | 300.00 |
| Left Coast Enterprises dba The Decal Shoppe,LLC | - |
| Lickerlish Products | 13.60 |
| M&A International Inc | 374.47 |
| Marquee Innovations | 74.70 |
| Mason & Co LA | - |
| Mata Trading, LLC | 9.31 |
| MDTANGA | 15.69 |
| Mixpresso | - |
| MLG & Associates LLC | 57.81 |
| Mobile Kingdom | 2,549.07 |
| MouthWatchers | 14.68 |
| My Party Shirt | 422.15 |
| Nationwide Campus | 913.38 |
| Naturez Ayurveda | - |
| New Tech Imports | 374.00 |
| Noll Enterprises aka iEnjoy | 238.38 |
| NOVADAB | 599.34 |
| OnlinePlantCenter, LLC | - |
| ORTALY LLC | 92.43 |
| Planet Tech(Worldwide) Co. Ltd | 11.47 |

2

| | |
|---|---|
| PoshPrissySnobDolls | (667.53) |
| Powercam Inc dba Digicom Digital | 1,652.28 |
| Quotable Life | 43.00 |
| Reach for the Sales | 1,786.37 |
| Real Great Deals Inc | - |
| Red Jeans NYC INC | (303.59) |
| Rico Star Inc. | - |
| Ruze, Inc | 480.80 |
| SavvyGrow LLC | - |
| Second East | 217.77 |
| Shanghai Mi Zhou Trading Co. Ltd. | - |
| Shanghai Zengfei Computer Co.,Ltd | - |
| Shenzhen Malloom Technology Co Ltd | 42,429.45 |
| Shop Jadas | 218.86 |
| Shop Succulents | - |
| Smart Solutions Products Corp | - |
| Stalion Products, Inc. | 273.98 |
| Stock4less.com | 12.74 |
| Storageaid | 113.85 |
| Sunrise Outlet | 22.00 |
| SuperJeweler (Hanza USA) | 1,836.50 |
| Suvelle | 248.86 |
| Synergy Recommerce | 918.68 |
| Tanga Corporate Office - Refurb | 1,282.72 |
| TangaNetworkDigital | - |
| Tech Defenders | - |
| Tee Blox | - |
| TF PUBLISHING | 573.49 |
| The Lifeguard Store | - |
| The Rondeau Group | 101.00 |
| TheDaasGroup LLC | 686.80 |
| thempire | - |
| tpc | - |
| Trinity Supplies Corporation | 1,349.00 |
| Triple7Deals | - |
| Ultaca | - |
| Ultaca LLC | - |
| UnbeatableSale | - |
| US Diversified Commerce, Inc. | - |
| USA OKEBA INDUSTRIES INC | - |
| V-Telecommunications | 1,267.93 |
| Van Zyverden, Inc. | - |

3

| | |
|---|---:|
| Vista Trading | 501.58 |
| Volar Fashion LLC | - |
| Weku Group | - |
| Weku Group LLC | - |
| White Mark Universal | 1,917.88 |
| YAL New York | 4,367.14 |
| Zeckos | 414.56 |
| Zeckos (Dreamway Trading) | 48.76 |
| ZilverZoom | 26.00 |

*NY 247550536v4*

<u>Schedule 5.5</u>

<u>Seller Intellectual Property</u>

<u>Description</u>

Trademark

Tanga Logo

BC Logo

Canada Logo

Zadero Logo

Intellectual Property related to website Tanga.com

All computer software owned (including source code) or licensed, including but not limited to: (i) all code stored at Tanga's GetHub repository which includes code for "DealGrade", all websites, vendor portal, customer dossier, personalization, ordering systems, and inventory systems (ii) the software listed below:

A. TaxJar
B. QuickBooks Online
C. Bill.com
D. Asana
E. Slack
F. Zendesk
G. AWS
H. Loggly
I. Heroku
J. Airbrake
K. CodeShip
L. White Pages
M. Luminati
N. PacketFlip
O. BrickFTP
P. Neutrino
Q. NewRelic
R. Pingdom
S. Github
T. PagerDuty
U. BrowserStack
V. Chartbeat
W. MailGun
X. SendGrid
Y. OptinMonster

All access passwords

Any and all websites and domains owned, including but not limited to Tanga.Com, bellechic.com, lolshirts.com

Any and all customer lists and former and current vendor lists, and information related thereto, including but not limited to email addresses and payment history.

2

*NY 247550536v4*

# EXHIBIT A

## ASSIGNMENT AND ASSUMPTION OF CONTRACTS

This Assignment and Assumption of Contracts (this "Assignment") is entered into as of this ___ th day of [_____], 2018, between Tanga.Com, LLC, a Delaware limited liability company and Debtor and Debtor in Possession under Case No. 2:18-bk-06314-BMW in a Chapter 11 bankruptcy case pending before the United States Bankruptcy Court for the District of Arizona (the "Assignor"), on the one hand, and E. Chabot Ltd., a New York corporation (the "Assignee"), on the other hand, with respect to the following facts and circumstances:

A. Assignor, as Seller, and Assignee, as Buyer, have heretofore entered into that certain Asset Purchase Agreement dated _____ ___, 2018 (the "Agreement"). Except for terms specifically defined herein, the capitalized terms used in this Assignment shall have the same meanings as capitalized terms used in the Agreement.

B. Concurrently with the mutual execution and delivery of this Assignment, Assignor and Assignee are consummating the transactions contemplated by the Agreement. Assignor and Assignee are executing and delivering this Assignment in satisfaction of their respective obligations pursuant to Sections 3.3.1 and 3.4.2 of the Agreement.

**NOW, THEREFORE**, for good and valuable consideration, the receipt and adequacy of which Assignor and Assignee hereby acknowledge, Assignor and Assignee hereby agree as follows:

1. <u>Assignment</u>. Effective as of the Closing Date, Assignor hereby assigns to Assignee all of its right, title and interest in and to the Assumed Contracts.

2. <u>Assumption</u>. Effective as of the Closing Date, Assignee hereby accepts the foregoing assignment and assumes and agrees to be bound by the terms and provisions of the Assumed Contracts.

3. <u>Amendments</u>. This Assignment may only be amended by a writing signed by both Assignor and Assignee.

4. <u>Execution in Counterparts</u>. This Assignment may be executed in counterparts and delivered by the delivery of facsimile or electronic signatures; provided, however, that if the parties exchange facsimile or electronic signatures, each of them agrees to provide the other with a copy of this Assignment bearing its original signature as soon thereafter as possible.

5. <u>Delivery Pursuant to Purchase Agreement</u>. Notwithstanding anything to the contrary herein, Assignor and Assignee are executing and delivering this Assignment in accordance with and subject to all of the terms and provisions of the Agreement (including, without limitation, the exclusions set forth in Section 2.2 of the Agreement).

6.  Governing Law.  This Assignment shall be governed by and construed and enforced in accordance with the laws of the State of New York.

[Signature Page to Follow]

2

NY 247550536v4

**IN WITNESS WHEREOF**, Assignor and Assignee have executed this Assignment as of the day and year first set forth above.

**ASSIGNOR:**

Tanga.Com, LLC, a Delaware limited liability company

By:_____
Name: Jeremy Young
Its:  Manager

**ASSIGNEE:**

E. Chabot Ltd., a New York corporation

By:_____
Name: Ezra Shabot
Its:  CEO

*[Signature Page to Assignment of Contracts]*

*NY 247550536v4*

**EXHIBIT B**

**BILL OF SALE**


Pursuant to Section 3.3.2 of that certain Asset Purchase Agreement dated as of _____, 2018 (the "Agreement"), by and between Tanga.Com, LLC, a Delaware limited liability company and Debtor and Debtor in Possession under Case No. 2:18-bk-06314-BMW  in a Chapter 11 bankruptcy case pending before the United States Bankruptcy Court for the District of Arizona ("Seller"), on the one hand, and E. Chabot Ltd, a New York corporation ("Buyer"), on the other hand, and for good and valuable consideration, the receipt and sufficiency of which Seller hereby expressly acknowledges, Seller hereby sells, transfers, assigns and delivers to Buyer all of Seller's right, title and interest in and to (i) the Personal Property, (ii) the Inventories; (iii) the Receivables and (iv) any other Purchases Asset not subject to any other specific instrument of transfer.

Except for terms specifically defined in this Bill of Sale, all capitalized terms used in herein shall have the same meanings as such terms have when utilized in the Agreement.

Notwithstanding anything to the contrary herein, Seller is executing and delivering this Bill of Sale in accordance with and subject to all of the terms and provisions of the Agreement (including, without limitation, the exclusions set forth in Section 2.2).

**IN WITNESS WHEREOF**, Seller has caused this Bill of Sale to be executed as of the _____ day of, 2018**.**

**SELLER:**

Tanga.Com, LLC, a Delaware limited liability company

By:_____
Name: Jeremy Young
Its:  Manager

*NY 247550536v4*

# EXHIBIT C

## ASSIGNMENT OF INTANGIBLE PROPERTY

This Assignment and Assumption of Intangible Property (this "<u>Assignment</u>") is entered into as of this ___ th day of [_____], 2018, between Tanga.Com, LLC, a Delaware limited liability company and Debtor and Debtor in Possession under Case No. 2:18-bk-06314-BMW in a Chapter 11 bankruptcy case pending before the United States Bankruptcy Court for the District of Arizona (the "<u>Assignor</u>"), on the one hand, and E. Chabot Ltd, a New York corporation (the "<u>Assignee</u>"), on the other hand, with respect to the following facts and circumstances:

A.    Assignor, as Seller, and Assignee, as Buyer, have heretofore entered into that certain Asset Purchase Agreement dated _____ ___, 2018 (the "<u>Agreement</u>"). Except for terms specifically defined herein, the capitalized terms used in this Assignment shall have the same meanings as capitalized terms used in the Agreement.

(B)    Concurrently with the execution and delivery of this Assignment, Assignor and Assignee are consummating the transactions contemplated by the Agreement. Pursuant to Sections 3.3.3 and 3.4.3 of the Agreement, Assignor and Assignee are required to mutually execute and deliver this Assignment at the Closing.

**NOW, THEREFORE, FOR GOOD AND VALUABLE CONSIDERATION**, the receipt and sufficiency of which Assignor hereby expressly acknowledges, Assignor hereby assigns, conveys, transfers and sets over unto Assignee, all of its right, title and interest, if any, in and to all (i) Seller Intellectual Property, including, but not limited to, its right, title and interest, if any, in and to all Seller Intellectual Property identified on <u>Schedule 5.5</u> of the Purchase Agreement attached hereto and incorporated herein by this reference, (ii) all Documents; and (iii) all Permits. This Assignment shall inure to the benefit of, and be binding upon, the successors, executors, administrators, legal representatives and assigns of Assignor and Assignee.

Notwithstanding anything to the contrary herein, Assignor is executing and delivering this Assignment in accordance with and subject to all of the terms and provisions of the Agreement (including, without limitation, the exclusions set forth in Section 2.2).

In the event that Assignor or Assignee brings an action or other proceeding to enforce or interpret the terms and provisions of this Assignment, the prevailing party in that action or proceeding shall be entitled to have and recover from the non-prevailing party all such reasonable fees, costs and expenses (including, without limitation, all court costs and reasonable attorneys' fees) as the prevailing party may suffer or incur in the pursuit or defense of such action or proceeding.

This Assignment shall be governed by and construed and enforced in accordance with the laws of the State of New York.

*NY 247550536v4*

**IN WITNESS WHEREOF**, Assignor has executed this Assignment as of the ___ of ___, 2018.

<u>**ASSIGNOR:**</u>

Tanga.Com, LLC, a Delaware limited liability company

By:_____
Name: Jeremy Young
Its:  Manager

<u>**ASSIGNEE:**</u>

E. Chabot Ltd., a New York corporation

By:_____
Name: Ezra Shabot
Its:  CEO

*[Signature Page to Assignment of Intangible Property]*

2

*NY 247550536v4*

# EXHIBIT E

Fennemore Craig, P.C.
Anthony W. Austin (No. 025351)
Justin R. DePaul (No. 031581)
2394 East Camelback Road, Suite 600
Phoenix, AZ 85016-3429
Telephone: (602) 916-5000
Email: aaustin@fclaw.com
Email: jdepaul@fclaw.com

Attorneys for Debtor
Tanga.com, LLC

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| In re | Case No. 2:18-bk-06314-BMW |
|---|---|
| TANGA.COM, LLC, | Chapter 11 |
| Debtor. | **NOTICE OF SALE OF ASSETS** |

**PLEASE TAKE NOTICE THAT** on August 22, 2018, Tanga.com, LLC ("Tanga"
or "Debtor"), debtor and debtor in possession in the above-referenced chapter 11
bankruptcy case (the "Chapter 11 Case"), under chapter 11 of the United States Bankruptcy
Code 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), filed *Debtor's Motion for Entry of
Order (I) Establishing Bidding Procedures and Deadlines Relating to Sale Process for of
Debtor's Assets and (II) Approving the Sale of the Assets* [Docket No. ] (the "Bidding
Procedures and Sale Motion").[1]

**PLEASE TAKE FURTHER NOTICE THAT,** Debtor has requested the Court
authorize the sale of the Assets to the Successful Bidder(s) pursuant to the terms of the
Successful Bid.

**PLEASE TAKE FURTHER NOTICE THAT** the Court shall conduct a hearing on
____, 2018, at ___ _.m. (Mountain Standard Time) at the United States Bankruptcy Court,
Courtroom 446, 38 S. Scott Ave., Suite 100, Tucson, Arizona 85701 or Phoenix

---

[1] All capitalized terms used herein and not otherwise defined herein shall have the respective meanings ascribed to
them in the Motion or in the Bidding Procedures, as applicable

Courtroom 301: (i) to authorize and approve the Sale to the Successful Bidder, (ii) to determine all issues regarding assumption and assignment of executory contracts and unexpired leases in connection therewith, and (iii) to grant related relief (the "Sale Hearing").

**PLEASE TAKE FURTHER NOTICE THAT** any objections ("Sale Objections") to the Sale, objections to the proposed Cure Amount, and/or objections to the proposed assumption and assignment of executory contracts and/or unexpired leases for reasons other than the Cure Amount, including, without limitation, whether the Stalking Horse Bidder can provide adequate assurance of future performance, must be filed by as _____, **2018 at 5:00 p.m.** (Mountain Standard Time) (the "Sale Objection Deadline").

**PLEASE TAKE FURTHER NOTICE THAT** all Sale Objections must: (i) be in writing; (ii) conform to the applicable provisions of the Bankruptcy Rules and the Local Rules; (iii) state with particularity the legal and factual basis for the objection and the specific grounds therefor; and (iv) be filed with the Court and served so actually received no later than the Sale Objection Deadline, by (A) counsel for the Debtor, (B) counsel for the Committee, (C) counsel for the Stalking Horse Bidder, and (D) all parties that have requested or that are required to receive notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties").

**PLEASE TAKE FURTHER NOTICE THAT** the Court shall conduct a hearing on \_\_\_\_, **2018, at \_\_\_ \_.m.** (Mountain Standard Time) at the United States Bankruptcy Court, Courtroom 446, 38 S. Scott Ave., Suite 100, Tucson, Arizona 85701 or Phoenix Courtroom 301 to consider the Sale Objections (the "Pre-Auction Hearing").

**PLEASE TAKE FURTHER NOTICE THAT** that if you do not file a written Sale Objection with the Court, or if you do not serve your written Sale Objection on the Notice Parties, then you are deemed to have consented to (a) such Cure Amount, (b) the assumption and assignment of such Contract to the Stalking Horse Bidder, (c) the related relief requested in the Bidding Procedures and Sale Motion and (d) the Sale, and that you

will be forever barred from objecting to (i) the Cure Amount, or (ii) the assignment of that party's Contract to the Stalking Horse Bidder. Further, if you do not file a written Sale Objection with the Court, or if you do not serve your written Sale Objection on the Notice Parties, then: (a) the Court may *refuse to allow you to speak* at the scheduled Pre-Auction Hearing and/or Sale Hearing; and (b) the Court may *rule against you* without formally calling the matter at the Pre-Auction Hearing and/or Sale Hearing.

**PLEASE TAKE FURTHER NOTICE THAT**, pursuant to the Bidding Procedures Order, if Debtor receives two or more Qualified Bids (including the Stalking Horse Bid) by the Bid Deadline, Debtor shall conduct the Auction on **_____, 2018, commencing at ____ a.m.** (Mountain Standard Time) at the Courtroom 446, United States Bankruptcy Court, 38 S. Scott Ave., Suite 100, Tucson, Arizona 85701 or Phoenix Courtroom 301. If Debtor does not receive any Qualified Bids other than the Stalking Horse Bid, Debtor will forego the Auction and proceed to a Sale Hearing for Bankruptcy Court approval of the Stalking Horse Bid.

**PLEASE TAKE FURTHER NOTICE THAT** any objections to how the Auction was conducted and/or to the adequate assurance of future performance by a Successful Bidder in the event that the Stalking Horse Bidder is not the Successful Bidder must be filed Court by **October __, 2018 at 5:00** p.m. (prevailing Mountain Standard Time) ("Auction and Adequate Assurance Objection" and the deadline, the "Auction and Adequate Assurance Objection Deadline").

**PLEASE TAKE FURTHER NOTICE THAT** all Auction and Adequate Assurance Objections must: (i) be in writing; (ii) conform to the applicable provisions of the Bankruptcy Rules and the Local Rules; (iii) state with particularity the legal and factual basis for the objection and the specific grounds therefor; and (iv) be filed with the Court and served so actually received no later than the Auction and Adequate Assurance Objection Deadline by the Notice Parties and counsel for the Successful Bidder.

1  **PLEASE TAKE FURTHER NOTICE THAT** that if you do not file a written

2  Adequate Assurance Objection with the Court, or if you do not serve your written Adequate

3  Assurance Objection as provided herein, then you are deemed to have consented to (a) the

4  assumption and assignment of such Contract to the Successful Bidder (only in the event

5  that the Successful Bidder is not the Stalking Horse Bidder), (b) the related relief

6  requested in the Bidding Procedures and Sale Motion, and (c) the Sale, and that you will

7  be forever barred from objecting to the assignment of your Contract to the Successful

8  Bidder.  Further, if you do not file a written Adequate Assurance Objection with the Court, or

9  if you do not serve your written Adequate Assurance Objection as provide herein, then: (a) the

10  Court may *refuse to allow you to speak* at the Sale Hearing; and (b) the Court may *rule*

11  *against you* without formally calling the matter at the Sale Hearing.

12       DATED this ___ day of August, 2018.

13                                        FENNEMORE CRAIG, P.C.

14

15                                        By: /s/ *Anthony W Austin*
                                             Anthony W. Austin
                                             Justin R. DePaul
16                                           *Attorneys for Debtor, Tanga.com, LLC*

17

18

19

20

21

22

23

24

25

26

# EXHIBIT F

Fennemore Craig, P.C.
Anthony W. Austin (No. 025351)
Justin R. DePaul (No. 031581)
2394 East Camelback Road, Suite 600
Phoenix, AZ 85016-3429
Telephone: (602) 916-5000
Email: aaustin@fclaw.com
Email: jdepaul@fclaw.com

Attorneys for Debtor
Tanga.com, LLC

1
2
3
4
5
6
7
8
9
10
11
12

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF ARIZONA

| In re | Case No. 2:18-bk-06314-BMW |
|---|---|
| TANGA.COM, LLC, | Chapter 11 |
| Debtor. | **NOTICE OF POSSIBLE CURE, ASSUMPTION, AND ASSIGNMENT** |

13  **PLEASE TAKE NOTICE THAT** on August 22, 2018, Tanga.com, LLC ("Tanga"

14  or "Debtor"), debtor and debtor in possession in the above-referenced chapter 11

15  bankruptcy case (the "Chapter 11 Case"), under chapter 11 of the United States Bankruptcy

16  Code 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), filed *Debtor's Motion for Entry of*

17  *Order (I) Establishing Bidding Procedures and Deadlines Relating to Sale Process for of*

18  *Debtor's Assets and (II) Approving the Sale of the Assets* [Docket No. ]     (the     "Bidding

19  Procedures and Sale Motion").[1]

20  **PLEASE TAKE FURTHER NOTICE THAT,** Debtor has requested the Court

21  authorize the sale of the Assets to the Successful Bidder(s) pursuant to the terms of the

22  Successful Bid.

23
24
25
26

---

[1] All capitalized terms used herein and not otherwise defined herein shall have the respective meanings ascribed to them in the Motion or in the Bidding Procedures, as applicable

1  **PLEASE TAKE FURTHER NOTICE THAT** as part of the Sale, those contracts

2  identified in Exhibit 1 hereto may be assumed by the Debtor and assigned to the

3  Successful Bidder.

4  **PLEASE TAKE FURTHER NOTICE THAT** Debtor has calculated the Cure

5  Amount, if any, for each contract and has listed the same on Exhibit 1.

6  **PLEASE TAKE FURTHER NOTICE THAT** any objections ("Sale Objections") to

7  the Sale, objections to the proposed Cure Amount, and/or objections to the proposed

8  assumption and assignment of executory contracts and/or unexpired leases for reasons

9  other than the Cure Amount, including, without limitation, whether the Stalking Horse

10 Bidder can provide adequate assurance of future performance, must be filed by as _____,

11 **2018 at 5:00 p.m.** (Mountain Standard Time) (the "Sale Objection Deadline").

12 **PLEASE TAKE FURTHER NOTICE THAT** all Sale Objections must: (i) be in

13 writing; (ii) conform to the applicable provisions of the Bankruptcy Rules and the Local Rules;

14 (iii) state with particularity the legal and factual basis for the objection and the specific grounds

15 therefor; and (iv) be filed with the Court and served so actually received no later than the

16 Sale Objection Deadline, by  (A) counsel for the Debtor, (B) counsel for the Committee,

17 (C) counsel for the Stalking Horse Bidder, and (D) all parties that have requested or that

18 are required to receive notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice

19 Parties").

20 **PLEASE TAKE FURTHER NOTICE THAT** that if you do not file a written Sale

21 Objection with the Court, or if you do not serve your written Sale Objection on the Notice

22 Parties, then you are deemed to have consented to (a) such Cure Amount, (b) the

23 assumption and assignment of such Contract to the Stalking Horse Bidder, (c) the related

24 relief requested in the Bidding Procedures and Sale Motion and (d) the Sale, and that you

25 will be forever barred from objecting to (i) the Cure Amount, or (ii) the assignment of that

26 party's Contract to the Stalking Horse Bidder.  Further, if you do not file a written Sale

1  Objection with the Court, or if you do not serve your written Sale Objection on the Notice
2  Parties, then: (a) the Court may *refuse to allow you to speak* at the scheduled hearing; and
3  (b) the Court may *rule against you* without formally calling the matter at the hearing.

4      **PLEASE TAKE FURTHER NOTICE THAT**, pursuant to the Bidding Procedures
5  Order, if Debtor receives two or more Qualified Bids (including the Stalking Horse Bid) by
6  the Bid Deadline, Debtor shall conduct the Auction on **_____, 2018, commencing at ____**
7  **a.m.** (Mountain Standard Time) at the Courtroom 446, United States Bankruptcy Court, 38 S.
8  Scott Ave., Suite 100, Tucson, Arizona 85701 or Phoenix Courtroom 301. If Debtor does not
9  receive any Qualified Bids other than the Stalking Horse Bid, Debtor will forego the Auction
10  and proceed to a Sale Hearing for Bankruptcy Court approval of the Stalking Horse Bid.

11      **PLEASE TAKE FURTHER NOTICE THAT** the Court shall conduct a hearing on
12  **____, 2018, at ___ _.m.** (Mountain Standard Time) at the United States Bankruptcy Court,
13  Courtroom 446, 38 S. Scott Ave., Suite 100, Tucson, Arizona 85701 or Phoenix
14  Courtroom 301: (i) to authorize and approve the Sale to the Successful Bidder, (ii) to
15  determine all issues regarding assumption and assignment of executory contracts and
16  unexpired leases in connection therewith, and (iii) to grant related relief.

17      DATED this ___ day of August, 2018.

18              FENNEMORE CRAIG, P.C.

19

20              By: /s/ *Anthony W Austin*
                Anthony W. Austin
21                  Justin R. DePaul
                *Attorneys for Debtor, Tanga.com, LLC*

22

23

24

25

26