

**Brenda Moody Whinery, Chief Bankruptcy Judge**

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re | Case No. 2:18-bk-06314-BMW |
| TANGA.COM, LLC, | Chapter 11 |
| Debtor. | **ORDER (I) APPROVING ASSET PURCHASE AGREEMENT BETWEEN DEBTOR AND BUYER; (II) AUTHORIZING THE SALE OF SUBSTANTIALLY ALL OF DEBTOR'S ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS; AND (III) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (IV) GRANTING CERTAIN RELATED RELIEF** |
| | Hearing Date: October 25, 2018 |
| | Hearing Time: 10:00 a.m. |

Upon consideration of Tanga.com, LLC's, as debtor-in-possession ("Tanga" or "Debtor"), *Motion for Entry of an Order (I) Establishing Bidding Procedures and Deadlines Relating to Sale Process for Debtor's Assets and (II) Approving Sale of Assets* [DE 100] (the "Sale Motion"), pursuant to Sections 105, 363, and 365 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004, 6006, and 9007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 2002-1,

6004-1, and 6006-1 of the Local Rules of Practice and Procedures of the United States Bankruptcy Court for the District of Arizona (the "Local Rules"), seeking the entry of an order (this "**Order**") (a) approving that certain Asset Purchase Agreement (collectively with all exhibits and schedules thereto and all ancillary documents and agreements, and as any are amended by the terms of this Order or as may be further amended, the "**Purchase Agreement**"), a copy of which is attached hereto as **Exhibit 1,** dated as of November 6, 2018, by and among Debtor, on the one hand, and EOM Commerce, Inc., as E Chabot, Ltd.'s designee (the "**Buyer**"), on the other hand, (b) authorizing the sale (collectively with all other transactions contemplated by the Purchase Agreement, the "**Sale**") of the Purchased Assets (as defined in the Purchase Agreement) free and clear of any Interests (as defined herein) and Encumbrances; (c) authorizing the assumption and assignment of certain executory contracts and unexpired leases, as may be amended in accordance with the Purchase Agreement (collectively, the "**Assumed Contracts**"); and (d) granting certain related relief; and the Court having entered the *Order Establishing Bidding Procedures and Deadlines Related to Sale Process for Debtor's Assets* on September 17, 2018 [DE 129] (the "**Bidding Procedures Order**"); and Debtor having determined, after an extensive marketing process by Sonoran Capital Advisors, LLC and Mac Restructuring, LLC that the Buyer submitted the highest or otherwise best offer for the Purchased Assets and the Court having reviewed and considered (w) the Sale Motion and all relief related thereto, (x) the objections thereto, if any, (y) the statements of counsel and evidence presented in support of the relief requested by Debtor at the hearing conducted before the Court on October 25, 2018 (the "**Sale Hearing**"), and (z) the entire record before the Court; and it further appearing that the legal and factual bases set forth in the Sale Motion and at the Sale Hearing establish just cause for the relief granted herein,

**THE COURT HEREBY FINDS AND CONCLUDES:**

**I.    Jurisdiction and Venue**

1.    This Court has jurisdiction over the above-captioned chapter 11 case (the "**Chapter 11 Case**") under 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2.    Venue is proper in this District and this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**II.    Statutory Basis**

3.    The statutory and other bases for the relief requested in the Sale Motion and entry of this Order are sections 105, 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006 and 9007 and Local Rules 2002-1 and 6004-1.

**III.    Compliance with Bidding Procedures Order**

4.    As demonstrated by (i) record before the Court, and (ii) the representations of counsel on the record at the Sale Hearing, Debtor has thoroughly and fairly marketed the Purchased Assets and conducted the related sale process in good faith and in compliance with the Bidding Procedures Order in all material respects.

5.    The Sale Procedures set forth in the Bidding Procedures Order were non-collusive and substantively and procedurally fair to all parties. Moreover, the Bidding Procedures enabled Debtor to obtain the highest or otherwise best offer for the Purchased Assets. All interested persons and entities have been afforded a full, fair and reasonable opportunity to (i) conduct due diligence investigations, (ii) submit bids and submit higher or otherwise better bids to purchase the Purchased Assets, and (iii) object and be heard in connection with the Sale Motion and the relief granted by this Sale Order.

6.    The Buyer is the Successful Bidder (as defined in the Bidding Procedures) for the Purchased Assets in accordance with the Bidding Procedures Order. The consideration provided by the Buyer under the Purchase Agreement constitutes the

highest or otherwise best offer and provides fair consideration to Debtor for the sale of the Purchased Assets and the assumption and assignment of the Assumed Contracts. The Buyer has complied in all material respects with the Bidding Procedures Order and any other applicable order of this Court in negotiating and entering into the Purchase Agreement. The Sale and the Purchase Agreement likewise comply with the Bidding Procedures Order and all other applicable orders of this Court in all material respects.

**IV.    Notice of the Sale and Cure Amounts**

7.      As evidenced by the affidavits of service filed with the Court [DE 104, 106, 120, 137, 149, 175, and 178] and the *Notice of Filing Affidavit of Proof of Publication* [DE 152], proper, timely, adequate and sufficient notice of the Sale Motion, the Sale Hearing, the Sale, and the assumption and assignment of the Assumed Contracts to the Buyer (including the proposed Cure Amounts), was provided in accordance with the Bidding Procedures Order, sections 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006 and 9007. Such notice was good, sufficient and appropriate under the circumstances, and no other or further notice of the Sale Motion, the Sale Hearing, the Sale, and the assumption and assignment of the Assumed Contracts to the Buyer (including the proposed Cure Amounts) is or shall be required.

8.      Actual written notice, together with publication notice, of the Sale Motion, the Sale Hearing, the Sale, and assumption and assignment of the Assumed Contracts (including the proposed Cure Amounts) and a fair and reasonable opportunity to object or otherwise be heard with the respect thereto, has been afforded to all known interested individuals and entities.

**V.    Highest and Best Offer**

9.      Debtor conducted a sale process in accordance with, and have otherwise complied in all material respects with, the Bidding Procedures Order.

10. Debtor has concluded that the offer of the Buyer, upon the terms and conditions set forth in the Purchase Agreement, including the form and total consideration to be realized by Debtor, constitutes the highest or otherwise best offer for the Purchased Assets and provides a greater certainty of recovery than would be provided by any other available alternative. Debtor's determination that the Purchase Agreement constitutes the highest or otherwise best offer for the Purchased Assets constitutes a valid and sound exercise of Debtor's business judgment.

11. The Purchase Agreement represents a fair and reasonable offer to purchase the Purchased Assets under the circumstances of this Chapter 11 Case. No other entity or group of entities has offered to purchase the Purchased Assets for greater overall value to Debtor's estate than the Buyer.

12. Approval of the Sale, Sale Motion and the Purchase Agreement and the consummation of the transactions contemplated thereby is in the best interests of Debtor's estates, creditors, equity holders and other parties in interest.

**VI. Arm's Length Sale**

13. The Purchase Agreement was negotiated, proposed and entered into by Debtor and the Buyer without collusion, in good faith and from arm's length bargaining positions. Neither Debtor nor the Buyer has engaged in any conduct that would cause or permit the Purchase Agreement to be avoided under section 363(n) of the Bankruptcy Code. Specifically, the Buyer has not acted in a collusive manner with any person and the aggregate purchase price paid by the Buyer for the Purchased Assets (the "**Purchase Price**") was not controlled by any agreement among the bidders. In addition, the Buyer is not an "insider" of the Debtor, as that term is defined in section 101(31) of the Bankruptcy Code.

1    14.    The disclosures made by Debtor concerning the Purchase Agreement, Sale, Sale Hearing, and the assumption and assignment of the Assumed Contracts (including the proposed Cure Amounts) were good, complete, and adequate.

## VII.   Good Faith of the Buyer

15.    The Buyer is a good faith purchaser for value and, as such, is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code and any other applicable or similar bankruptcy and non-bankruptcy law. The Buyer has at all times proceeded in good faith in all respects in connection with Debtor's Chapter 11 Case in that, among other things: (a) the Buyer recognized that Debtor was free to deal with any other party interested in acquiring the Purchased Assets and assuming the Assumed Liabilities and Assumed Contracts, (b) the Buyer in no way induced or caused the chapter 11 filing by Debtor, and (c) all payments to be made by Buyer in connection with the Sale have been disclosed.

## VIII.  No Fraudulent Transfer or Merger

16.    The consideration provided by the Buyer pursuant to the Purchase Agreement (a) is fair and reasonable, (b) is the highest and otherwise best offer for the Purchased Assets and Assumed Contracts, (c) will provide a greater recovery for Debtor's estate, creditors and equity holders than would be provided by any other practical available alternatives, and (d) constitutes reasonably equivalent value, fair consideration and fair value (as those terms are defined in each of the Uniform Voidable Transactions Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act and section 548 of the Bankruptcy Code) under the laws of the United States, any state, territory, possession or the District of Columbia. No other person, entity or group of entities has offered to purchase the Purchased Assets for greater overall value to Debtor's estate than the Buyer.

17.     The Purchase Agreement was not entered into for the purpose of hindering, delaying, preferring, or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession, and the District of Columbia. None of Debtor nor the Buyer entered into the transactions contemplated by the Purchase Agreement fraudulently, thereby negating the possibility of any liability of the Buyer for any statutory or common law fraudulent conveyance or fraudulent transfer claims.

18.     The Buyer is not a mere continuation or an alter ego of Debtor or its estate. There is no continuity or common identity between the Buyer, on the one hand, and the Debtor, on the other hand. The Buyer is not a successor to Debtor or its estate by reason of any theory of law or equity and the Sale does not amount to a consolidation, merger or *de facto* merger of the Buyer and Debtor within the meaning of any applicable law, rule, ordinance or regulation.

**IX**.     **Free and Clear**

19.     Except as otherwise expressly provided in the Purchase Agreement or this Order, the Purchased Assets shall be sold free and clear of all liens, pledges, mortgages, security interests, claims (as defined in Section 101(5) of the Bankruptcy Code), interests, encumbrances and other rights of third parties, of any nature (collectively, the "**Interests**").

20.     Debtor may sell the Purchased Assets free and clear of all Interests because one or more standards set forth in section 363(f) of the Bankruptcy Code has been satisfied. All holders of Interests who did not object or who withdrew their objections to the Sale or the Sale Motion are deemed to have consented to the Sale and the relief requested therein pursuant to section 363(f)(2) of the Bankruptcy Code. All other holders of Interests, including those who maintained and did not withdraw objections to the Sale or the Sale Motion, if any, fall within one or more of the subsections of section 363(f) of the Bankruptcy Code.

## X.    Validity of Transfer

21.    The Purchased Assets constitute property of Debtor's estate and title thereto is vested in Debtor's estate within the meaning of section 541(a) of the Bankruptcy Code.

22.    The consummation of the Purchase Agreement and the Sale is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105, 363, and 365, and all of the applicable requirements of such sections have been complied with in respect of the transactions contemplated under the Purchase Agreement.

23.    The Debtor has, to the extent necessary and applicable, (i) the requisite limited liability company power and authority to execute and deliver the Purchase Agreement and all other documents contemplated thereby, (ii) all limited liability company authority necessary to consummate the transactions contemplated by the Purchase Agreement, and (iii) taken all limited liability company action necessary to authorize and approve the Purchase Agreement and the consummation of the transactions contemplated thereby. No consents or approvals, other than those expressly provided for in the Purchase Agreement, are required for Debtor to consummate the Purchase Agreement and the transactions contemplated thereby.

24.    Pursuant to the terms of the Purchase Agreement, the Buyer is not acquiring the Excluded Assets nor is it assuming the Excluded Liabilities (as such terms are defined in the Purchase Agreement).

25.    The transfer of the Purchased Assets to the Buyer under the Purchase Agreement will be a legal, valid and effective transfer of all of the legal, equitable and beneficial right, title and interest in and to the Purchased Assets free and clear of all Interests. With the exception of Assumed Contracts, which may be assigned but not sold, the transfer of the Purchased Assets will vest the Buyer with good and marketable title to the Purchased Assets.

## XI. Assignment and Assumption of the Assumed Contracts

26.     The assumption and assignment of the Assumed Contracts free and clear of Interests pursuant to the terms of the Purchase Agreement and this Order is integral to the Purchase Agreement and is in the best interests of Debtor, its estate, creditors and equity holders, and all other parties in interest, and represents a reasonable exercise of Debtor's sound and prudent business judgment.

27.     The Buyer has demonstrated or in the event that additional Assumed Contracts are to be assumed by the Buyer, will demonstrate, adequate assurance of its future performance under the Assumed Contracts to be assumed by the Buyer within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code. Pursuant to section 365(f) of the Bankruptcy Code, the Assumed Contracts to be assumed and assigned under the Purchase Agreement shall be assigned to, and remain in full force and effect for the benefit of the Buyer notwithstanding any provision in the contracts or other restrictions prohibiting or requiring consent or consultation in respect of their assignment or transfer.

28.     Debtor has demonstrated both (i) good, sufficient and sound business purposes and justifications and (ii) compelling circumstances for the Sale other than in the ordinary course of business, pursuant to section 363(b) of the Bankruptcy Code before, and outside of a plan of reorganization, in that, among other things, the immediate implementation of this Order and consummation of the Sale to the Buyer is necessary both to preserve and maximize the value of Debtor's assets for the benefit of Debtor, its estates, its creditors, its equity holders and all other parties in interest, and the Sale will provide the means for Debtor to maximize recoveries of creditors.

29.     The sale of the Purchased Assets outside of a chapter 11 plan pursuant to the Purchase Agreement neither impermissibly restructures the rights of Debtor's creditors or

equity holders nor impermissibly dictates the terms of a chapter 11 plan for Debtor, and therefore, does not constitute a *sub rosa* chapter 11 plan.

30.     To maximize the value of the Purchased Assets, preserve the viability of the businesses to which the Purchased Assets relate and avoid deterioration, erosion of value and uncertainty with respect to the future operations of the Purchased Assets, it is essential that the Sale occur within the time constraints set forth in the Purchase Agreement. Time is of the essence in consummating the Sale and preserving the value of Debtor's assets.

31.     Given all of the circumstances of the Chapter 11 Case and the adequacy and fair value of the Purchase Price, the Sale of the Purchased Assets constitutes a reasonable and sound exercise of Debtor's business judgment.

32.     The consummation of the Sale and the assumption and assignment of the Assumed Contracts is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code and the Bankruptcy Rules, including sections 105(a), 363(b), 363(f), 363(m), 365(b) and 365(f) of the Bankruptcy Code, and all of the applicable requirements of such sections have been complied with in respect of the Sale.

**IT IS ORDERED THAT:**

A.     The relief requested in the Sale Motion is granted and approved, and the Sale contemplated thereby and by the Purchase Agreement is authorized as set forth herein and in the Purchase Agreement. To the extent of any inconsistency between the Sale Motion, as amended, the Purchase Agreement, as amended, and the Sale contemplated thereby, the terms of this Order control.

B.     All objections and responses, if any, to the Sale or Sale Motion that have not been withdrawn, waived, resolved through the provisions of this Order, or settled by announcement to the Court during the Sale Hearing or by stipulation filed with the Court, including any and all reservations of rights included in such objections or otherwise, are

overruled on the merits and denied with prejudice. All persons and entities given notice of the Sale Motion that failed to timely object thereto, including, without limitation, all non-debtor parties to the Assumed Contracts, are deemed to have consented to the relief sought therein, including without limitation the Cure Amounts.

C.     The Court's findings of fact and conclusions of law set forth in the Bidding Procedures Order are incorporated herein by reference. To the extent of any inconsistency between such findings and conclusions and this Order, the terms of this Order control.

**I.     Approval of the Asset Purchase Agreement**

D.     The Sale and the Purchase Agreement and, in each case, all of the terms and conditions thereof, as amended by this Order, are hereby authorized and approved in all respects on the terms set forth in this Order.

E.     Pursuant to sections 363(b) and 363(f) of the Bankruptcy Code, Debtor is authorized and directed (a) to take any and all actions necessary or appropriate to execute and deliver, perform under, consummate, implement and effectuate the Purchase Agreement, together with any and all instruments and documents that may be reasonably necessary or desirable to implement and effectuate the terms of the Purchase Agreement, this Order and the Sale, and to take all further actions as may be reasonably requested by the Buyer for the purposes of assigning, transferring, granting, conveying and conferring to the Buyer, or reducing to possession, the Purchased Assets, free and clear of all Interests; (b) to assume and assign the Assumed Contracts to the Buyer on the Closing Date pursuant to the terms of the Purchase Agreement; and (c) to take any and all actions as may be necessary or appropriate to the performance of Debtor's obligations as contemplated by the Purchase Agreement, without any further corporate action or order of this Court.

## II.    Transfer of the Purchased Assets

F.    Pursuant to sections 105(a), 363(b), 363(f), 365(b) and 365(f) of the Bankruptcy Code, upon receipt of the Purchase Price, Debtor is authorized to transfer the Purchased Assets and the Assumed Liabilities to the Buyer on the Closing Date pursuant to the terms and conditions of the Purchase Agreement free and clear of all Interests.

G.    The transfer of the Purchased Assets to the Buyer shall constitute a legal, valid, binding, and effective transfer of all such Purchased Assets and shall vest the Buyer with all right, title, and interest of Debtor in the Purchased Assets. Except as otherwise provided in the Purchase Agreement and the terms of this Order, the Purchased Assets shall be sold or assigned, as applicable, free and clear of all Interests.

H.    Except as expressly permitted by the Purchase Agreement or this Order, all persons and entities (as defined in section 101(15) of the Bankruptcy Code) (including, but not limited to, all debt security holders, equity security holders, affiliates, governmental, tax and regulatory authorities, lenders, customers, vendors, employees, trade creditors, litigation claimants and other creditors) and their respective successors and assigns holding Interests in all or any portion of the Purchased Assets arising under or out of, in connection with, or in any way relating to Debtor, the Purchased Assets prior to and including the Closing Date or the transfer of the Purchased Assets to the Buyer, are hereby forever barred and estopped from asserting such Interests against the Buyer, its successor and assigns, and its property.

I.    All persons and entities are prohibited and enjoined from taking any action to adversely affect or interfere with the ability of Debtor to sell and transfer the Purchased Assets to Buyer in accordance with the Purchase Agreement and this Order.

J.    All persons and entities that are in possession of some or all of the Purchased Assets on the Closing Date are directed to surrender possession of such Purchased Assets to the Buyer on the Closing Date.

K.      If any person or entity that has filed a financing statement, mortgage, mechanic's lien, notice of *lis pendens* or other document or agreement evidencing Interests in or against the Purchased Assets shall not have delivered to Debtor prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Liens that the person or entity has with respect to the Purchased Assets, then only with regard to Purchased Assets that are purchased by the Buyer pursuant to the Purchase Agreement and this Order, the Buyer is hereby authorized to file, register or otherwise record a certified copy of this Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Liens against the applicable Purchased Assets (but the filing, registration or recording of this Order is not a condition to this Order being binding and effective). This Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, or local government agency, department or office and the filing officer is required to accept and perform the filing, registration and recording of this Order.

## III.      Assumption and Assignment of Assumed Contracts

L.      Pursuant to section 365 of the Bankruptcy Code, and subject to and conditioned upon the Closing Date and the terms of the Purchase Agreement, Debtor is authorized and directed to (a) assume each of the Assumed Contracts, specifically including, without limitation, those listed or described on Schedule 1.1.9 of the Purchase Agreement, and assign the Assumed Contracts to the Buyer free and clear of all Interests, and (b) execute and deliver to the Buyer such documents or other instruments as may be necessary to assign the applicable Assumed Contracts to the Buyer.

M.      The Cure Amounts set forth in Schedule 1.1.9 of the Purchase Agreement are the sole amounts necessary to be paid by the Buyer upon assumption of the Assumed Contracts under sections 365(b)(1)(A) and (B) and 365(f)(2)(A) of the Bankruptcy Code,

and the payment of the applicable Cure Amounts shall, subject to the terms of the Purchase Agreement, (a) effect a cure of all defaults existing under the Assumed Contracts as of and including the Closing Date, and (b) compensate the counterparties to the Assumed Contracts for any actual pecuniary loss resulting from all defaults existing under the Contracts as of and including the Closing Date. Upon the payment of the Cure Amounts by the Buyer, the Assumed Contracts will remain in full force and effect, and no default shall exist under the Assumed Contracts nor shall there exist any event or condition which, with the passage of time or giving of notice, would constitute such a default. After the payment of the Cure Amounts, neither Debtor nor the Buyer shall have any further liabilities to the counterparties to the Assumed Contracts other than the Buyer's obligations under the Assumed Contracts assumed by it that accrue and become due and payable on or after the Closing Date.

N.      Except as otherwise set forth herein, any provisions in any Assigned Contract that prohibit, condition or require consultation in respect of the assignment of such Assigned Contract or allow the counterparty to such Assigned Contract to terminate, recapture, or impose any penalty, in respect of the assignment, constitute unenforceable anti-assignment provisions that are void and of no force and effect. All other requirements and conditions under section 365 of the Bankruptcy Code for the assumption by Debtor and assignment to the Buyer of the Assumed Contracts have been satisfied.

O.      Each Assigned Contract constitutes an executory contract or unexpired lease under section 365 of the Bankruptcy Code. Upon the Closing Date, in accordance with section 365 of the Bankruptcy Code, (a) the Buyer shall be fully and irrevocably vested with all right, title, and interest of Debtor under the Assumed Contracts assigned to and assumed by it, (b) the Buyer shall be deemed to be substituted for Debtor as a party to the applicable Assumed Contracts, and (c) Debtor and its estate, shall be relieved, pursuant to

section 365(k) of the Bankruptcy Code, from any further liability under any of the Assumed Contracts.

P.      The Buyer has provided adequate assurance of future performance under the relevant Assumed Contracts within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code.

Q.      Upon Debtor's assignment of the Assumed Contracts to the Buyer under the provisions of this Order and any additional order contemplated by the Purchase Agreement, no default shall exist under any of the Assumed Contracts and no counterparty to any Assumed Contracts shall be permitted to declare a default by the Buyer under such Assigned Contract or otherwise take action against the Buyer as a result of Debtor's financial condition, bankruptcy, or failure to perform any of its obligations under the relevant Assigned Contract, or as a result of the assignment of such Assigned Contract to the Buyer.

R.      Any provision in any Assigned Contract that purports to declare a breach or default as a result of a change of control in respect of Debtor or a failure to consult with the counterparty in respect of such change in control is unenforceable, and all Assumed Contracts shall remain in full force and effect, without existing default(s), subject only to payment by the Buyer of the appropriate Cure Cost, if any. There shall be no rent accelerations, assignment fees, increases, or any other fees charged to the Buyer or Debtor as a result of the assumption and assignment of any Assigned Contract.

S.      Any party that may have had the right to consent to the assignment of an Assigned Contract is deemed to have consented to such assignment for purposes of section 365(e)(2)(A)(ii) of the Bankruptcy Code and otherwise if such party failed to object to the assumption and assignment of such Assigned Contract.

T.      Notwithstanding anything to the contrary in this Order, no Assumed Contracts shall be assumed and assigned to the Buyer until the Closing. On the Closing

1    Date, this Order shall be construed and shall constitute for any and all purposes a full and

2    complete general assignment, conveyance and transfer of Debtor's interests in the

3    Purchased Assets to the Buyer and a full and complete general assignment and transfer of

4    the Assumed Contracts to the Buyer.

5    **VI.    Purchase Price**

6           U.    The Purchase Price for the sale and transfer of the Purchased Assets under

7    the Purchase Agreement set forth in Section 2.1 of the Purchase Agreement is approved

8           V.    The Purchase Price, set forth in Section 2.1 of the Purchase Agreement

9    provides fair consideration to Debtor for the sale of the Purchased Assets and the

10   assumption and assignment of the Assumed Contracts.

11          W.    The Buyer is authorized to credit bid the full amount of the DIP Obligations,

12   provided, however, the Buyer shall only be entitled to credit bid up to Forty Five

13   Thousand and No/100 Dollars ($45,000.00) of the attorney's fees and costs incurred in

14   connection with the Case.

15          X.    In connection with the closing of the Sale and as required by Section 2.2 of

16   the Purchase Agreement, the Buyer is authorized and directed to pay, perform or satisfy

17   the Assumed Liabilities in accordance with their respective terms.

18   **V.    No Successor, Transferee, or Other Liability**

19          Y.    Except as otherwise expressly provided in the Purchase Agreement or this

20   Order, the Buyer shall not assume any liability or other obligation of Debtor arising under

21   or related to any of the Purchased Assets, except with respect to the Assumed Liabilities.

22   Without limiting the generality of the foregoing, and except as otherwise specifically

23   provided in the Purchase Agreement or this Order, the Buyer shall not be liable for any

24   interests, claims (as defined in section 101(5) of the Bankruptcy Code) or liabilities

25   against Debtor or any of its predecessors or affiliates, and the Buyer shall not have any

26   successor or vicarious liabilities of any kind or character ("**Successor Liability**"),

including, but not limited to, any theory of antitrust, environmental (including, without limitation, the presence of hazardous, toxic, polluting, or contaminating substances or wastes), products liability, Successor Liability or transferee liability, labor law, *de facto* merger or substantial continuity, whether known or unknown as of and including the Closing Date, now existing or hereafter arising, whether asserted or unasserted, fixed or contingent, liquidated or unliquidated with respect to Debtor or any obligations of Debtor arising prior to and including the Closing Date, including, but not limited to, liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to Purchased Assets prior to and including the Closing Date.

Z.    The Buyer has given substantial consideration under the Purchase Agreement. The consideration given by the Buyer shall constitute valid and valuable consideration for the releases of any potential claims of Successor Liability or transferee liability of the Buyer, which releases shall be deemed to have been given in favor of the Buyer by all holders of Interests.

**VI.    Good Faith of the Buyer**

AA.    The transactions contemplated by the Purchase Agreement are undertaken by Debtor and the Buyer without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided in this Order to consummate the Sale shall not affect the validity of the Sale (including the assumption and assignment of the Assumed Contracts), unless such authorization and consummation of such Sale are duly stayed pending such appeal.

BB.    Neither Debtor nor the Buyer has engaged in any action or inaction that would cause or permit the Sale to be avoided or costs, damages, or other remedy to be imposed under section 363(n) of the Bankruptcy Code. The consideration provided by the

1  Buyer for the Purchased Assets under the Purchase Agreement is fair and reasonable and

2  the Sale may not be avoided under section 363(n) of the Bankruptcy Code.

3  **VII    Other Provisions**

4          CC.    The consideration provided by the Buyer to Debtor pursuant to the Purchase

5  Agreement for the Purchased Assets, including the assumption of the Assumed Liabilities,

6  constitutes reasonably equivalent value, fair consideration and fair value under the

7  Bankruptcy Code, Uniform Voidable Transactions Act, Uniform Fraudulent Transfer Act,

8  Uniform Fraudulent Conveyance Act and under the laws of the United States, any state,

9  territory, possession or the District of Columbia.

10         DD.    The Purchase Agreement and any related agreements, documents or other

11  instruments may be modified, amended or supplemented by the parties thereto strictly in

12  accordance with, and subject to all limitations on amendments that are set forth in, the

13  terms of the Purchase Agreement without further order of the Court, provided that not less

14  than two days prior written notice is provided to Debtor and the Committee and any such

15  modification, amendment or supplement does not have a material adverse effect on

16  Debtor's estates or any affected parties.

17         EE.    This Order constitutes a final and appealable order within the meaning of 28

18  U.S.C. § 158(a).

19         FF.    The Buyer shall not be required to seek or obtain relief from the automatic

20  stay under section 362 of the Bankruptcy Code to enforce any of its remedies under the

21  Purchase Agreement or any other Sale-related document or deliver any notice provided

22  for in this Order or the Purchase Agreement. The automatic stay imposed by section 362

23  of the Bankruptcy Code is modified to the extent necessary to implement the preceding

24  sentence or any other provisions of this Order.

25         GG.    This Order, the Purchase Agreement and all ancillary agreements shall be

26  binding in all respects upon Debtor, its estates, all creditors of, and holders of equity

interests in the Debtor, any holders of liens, claims (as defined in section 101(5) of the Bankruptcy Code), liabilities, Encumbrances, rights and interests in or against or on all or any portion of the Purchased Assets (whether known or unknown), the Buyer and all successors and assigns of the Buyer, all counterparties to the Assumed Contracts, other parties in interest and trustees, if any, subsequently appointed in Debtor's Chapter 11 Case or upon a conversion to chapter 7 under the Bankruptcy Code of Debtor's Chapter 11 Case or dismissal of Debtor's Chapter 11 Case. This Order and the Purchase Agreement shall inure to the benefit of Debtor, its estate, creditors and equity holders, the Buyer, and the respective successors and assigns of each of the foregoing.

HH.    No bulk sales law or any similar law of any state or other jurisdiction applies in any way to the Sale.

II.    Nothing contained in any plan of reorganization or liquidation, or order of any type or kind in this Chapter 11 Case, any subsequent chapter 7 case in which the Chapter 11 Case may be converted or any related proceedings subsequent to the entry of this Order, shall alter or affect the terms and conditions of the Sale, the Purchase Agreement (or any ancillary documents executed in connection therewith) or the terms or implementation of this Order.

JJ.    To the extent permitted by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any permit or licenses relating to the operation of the Purchased Assets sold, transferred or conveyed to the Buyer on account of the filing or pendency of these Chapter 11 Cases or the consummation of the Sale. To the greatest extent available under applicable law, the Buyer shall be authorized, as of the Closing Date, to operate under any license, permit, registration, and any other governmental authorization or approval of Debtor with respect to the Purchased Assets or the Assumed Contracts, and all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been, and hereby are, directed to be transferred to the

Buyer as of the Closing Date. Each and every federal, state, and local governmental unit is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the Sale.

KK.   Neither Buyer nor Seller shall have any obligation to proceed with Closing unless and until all conditions precedent to their respective obligations to do so, as set forth in the Purchase Agreement, have been met, satisfied or waived in accordance with the terms of the Purchase Agreement.

LL.   The failure specifically to include any particular provision of the Purchase Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Purchase Agreement be authorized and approved in its entirety; provided, however, that this Order shall govern if there is any inconsistency between the Purchase Agreement (including all ancillary documents executed in connection therewith) and this Order. All of the provisions of this Order are non-severable and mutually dependent.

MM.   Until the case is closed, or as otherwise set forth in the final decree, the Court shall retain jurisdiction and power to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the Purchase Agreement, all amendments thereto and any waivers and consents thereunder, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale, including retaining jurisdiction to (a) compel delivery of the Purchased Assets to the Buyer in accordance the Purchase Agreement, (b) interpret, implement and enforce the provisions of this Order, (c) protect the Buyer against any interests in or against Debtor or the Purchased Assets of any kind or nature whatsoever, and (d) enter any orders under sections 363 or 365 of the Bankruptcy Code with respect to the Purchased Assets and Assumed Contracts.

1    NN.    Debtor is authorized to take all actions necessary or appropriate to effectuate

2    the relief granted pursuant to this Order in accordance with the Sale Motion.

3    OO.    Within five (5) Business Days of Closing, the Debtor shall file a Notice with

4    the Court informing it of any employment or consulting agreement between the Buyer and

5    Mr. Jeremy Young.

6    PP.    To the extent this Order is inconsistent with the Purchase Agreement or any

7    prior order or pleading with respect to the Sale Motion in the Chapter 11 Case, the terms

8    of this Order shall govern.

9    QQ.    The Buyer is not required to file any proof of claim or motion for allowance

10    and/or payment of an administrative expense for any amounts owed to it from the

11    Segregated Funds under the terms of the Purchase Agreement, which Segregated Funds

12    shall not be used or disbursed until after the purchase price adjustment set forth in

13    Section 2.6 of the Purchase Agreement is effectuated.

14                        **DATED AND SIGNED ABOVE**

15

16

17

18

19

20

21

22

23

24

25

26

# EXHIBIT 1

# ASSET PURCHASE AGREEMENT

THIS ASSET PURCHASE AGREEMENT (the "Agreement") is made and entered into as of this ___ day of November, 2018, by and between EOM Commerce, Inc., a Delaware Corporation ("Buyer"), on the one hand, and Tanga.Com, LLC, a Delaware limited liability company ("Seller"). Buyer and Seller are collectively referred to herein as the "Parties" or individually as a "Party".

# RECITALS

A. Seller is a Debtor and Debtor in Possession in a Chapter 11 bankruptcy case pending before the United States Bankruptcy Court for the District of Arizona (the "Bankruptcy Court"), Case No. 2:18-bk-06314-BMW (the "Case"). Seller commenced the Case with the filing of a Voluntary Petition under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") on June 1, 2018 (the "Petition Date").

B. Seller is engaged in the business of an eCommerce retailer (the "Business").

C. Seller wishes to sell to Buyer, pursuant to Sections 105, 363 and 365 of the Bankruptcy Code, substantially all of the assets heretofore used in connection with the operation of the Business, along with certain other assets included within the definition of the "Purchased Assets" below, all at the price and on the other terms and conditions specified in detail below and Buyer wishes to so purchase and acquire such assets from Seller.

**NOW, THEREFORE,** for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

1. Transfer of Assets.

    1.1 Purchase and Sale of Assets. Upon the terms and subject to the conditions of this Agreement, at the Closing, Seller shall sell, assign, transfer, convey and deliver, or cause to be sold, assigned, transferred, conveyed and delivered, to Buyer, and Buyer shall purchase from Seller, all the assets, properties, goodwill and business of every kind and description and wherever located, whether tangible or intangible, real, personal or mixed, directly or indirectly owned by Seller or to which Seller is directly or indirectly entitled and, in any case, belonging to Seller or used or intended to be used in the Business, other than the Excluded Assets (the assets to be purchased by Buyer being referred herein to as the "Purchased Assets"), including the following:

        1.1.1 all Cash elected to be acquired by Buyer at its discretion, and all bank accounts listed on Schedule 1.1.1 to be acquired by Buyer at its discretion;

        1.1.2 all furniture, fixtures, equipment, machinery and other tangible personal property used or held for use by Seller at the locations at which the Business is conducted, or otherwise owned or held by Seller at the Closing for use in the conduct of the

*NY 247550536v7*

Business (the "Personal Property"), a list of which, which Seller represents is a true, correct and complete as of the date hereof is attached hereto as Schedule 1.1.2;

1.1.3    all Inventories as of the Closing Date, a list of which, which Seller represents is a true, correct and complete as of the date hereof, is attached hereto as Schedule 1.1.3;

1.1.4    all Receivables as of the Closing Date, a list of which, which Seller represents is a true, correct and complete as of the date hereof, is attached hereto as Schedule 1.1.4;

1.1.5    all books of account, general, financial, Tax and personnel records, invoices, shipping records, supplier lists, correspondence and other documents, records and files and any rights thereto owned, associated with or employed by Seller in connection with the Business and all sales and promotional literature, customer lists and other sales-related materials related to the Business owned, used, associated with or employed by Seller at the Closing and excluding organization documents, minute and stock record books and the corporate seal of Seller (collectively, "Documents");

1.1.6    the goodwill of Seller relating to the Business;

1.1.7    all Seller's right, title and interest in, to and under the Owned Intellectual Property and the Transferred IP Agreements, copies and tangible embodiments thereof in whatever form or medium, and all rights to sue and recover damages for past, present and future infringement, dilution, misappropriation, violation, unlawful imitation or breach thereof (collectively, "Seller Intellectual Property");

1.1.8    other than Avoidance Actions, all claims, causes of action, choices in action, rights of recovery and rights of setoff of any kind (including rights to insurance proceeds and rights under and pursuant to all warranties, representations and guarantees made by suppliers of products, materials, or equipment, or components thereof), related to the Business pertaining to, arising out of and inuring to the benefit of Seller;

1.1.9    all rights of Seller under all contracts, licenses, sublicenses, agreements, leases, commitments, and sales and purchase orders, and under all bids and offers related to the Business (to the extent such offers are transferable) (collectively, "Contracts") listed on Schedule 1.1.9 (herein defined) (the "Assumed Contracts");

1.1.10   all municipal, state and federal franchises, permits, licenses, agreements, waivers and authorizations held or used by Seller in connection with, or required for, the Business, to the extent transferable (collectively, the "Permits"), a list of which, which Seller represents is a true, correct and complete as of the date hereof, is attached hereto as Schedule 1.1.10; and

NY 247550536v7

1.1.11 all Seller's right, title and interest at the Closing in, to and under all other assets, rights and claims of every kind and nature used or intended to be used in the operation of, or residing with, the Business.

1.2     Excluded Assets. Notwithstanding anything in Section 1.1 to the contrary, the Purchased Assets shall exclude the following assets and properties owned by Seller (the "Excluded Assets"):

1.2.1   all rights of Seller under this Agreement and any Ancillary Agreements;

1.2.2   Tax returns of Seller (and related workpapers), other than those relating to the Purchased Assets or the Business;

1.2.3   any Contract that is not an Assumed Contract including any Contract which is not assumable and assignable as a matter of applicable law (including, without limitation, any with respect to which any consent requirement in favor of the counter-party thereto may not be overridden pursuant to Section 365 of the Bankruptcy Code) (collectively, "Excluded Contracts");

1.2.4   any rights under any Plan;

1.2.5   all Cash and bank accounts elected not to be acquired by Buyer;

1.2.6   all shares of capital stock or other equity interests in or issued by Seller or any other Person, or any securities convertible into, exchangeable or exercisable for shares of capital stock or other equity interests in or issued by Seller or any other Person;

1.2.7   all rights under or arising out of insurance policies not primarily relating to the Purchased Assets and any recovery thereunder;

1.2.8   all current and prior director and officer insurance policies of Seller, if applicable, and all rights of any nature with respect thereto, including all insurance recoveries thereunder and rights to assert claims with respect to any such insurance recoveries;

1.2.9   all Permits not transferred pursuant to Section 1.1.10.

1.2.10 any causes of action pursuant to Bankruptcy Code §§ 544, 545, 547, 548, 550, or 553 and any monies recovered in connection with the successful prosecution or settlement of subsection of such actions (collectively, the "Avoidance Actions").

1.3     Instruments of Transfer.  The sale, assignment, transfer, conveyance and delivery of the Purchased Assets to Buyer shall be made by assignments, bill of sale, and other instruments of assignment, transfer and conveyance provided for in Section 3 below and such other instruments as may reasonably be requested by Buyer to transfer, convey, assign and deliver the Purchased Assets to Buyer free and clear of all Liens, Claims, Interests and Encumbrances.

NY 247550536v7

2. <u>Consideration</u>.

2.1 <u>Purchase Price</u>. The consideration to be paid by Buyer to Seller for the Purchased Assets (the "<u>Purchase Price</u>") shall be (I) (a) $475,000 *plus* (b) the aggregate value of the acquired Receivables, *plus* (c) the aggregate value of Cash in the accounts (provided Buyer chooses to obtain such Cash and accounts), *less* (x) a credit bid in the amount of the Obligations (as defined and limited in the Secured Promissory Note), *less* (y) the amount equal to the Cure Amounts up to a maximum of $20,000 (the "<u>Cure Cap</u>"); *less* (z) any payment of Accrued Payables (together, the "<u>Cash Purchase Price</u>") and (II) assumption of the Assumed Liabilities. The foregoing is subject to the <u>Section 2.3</u> and the Purchase Price Adjustment in <u>Section 2.6</u>.

2.2 <u>Assumed Liabilities</u>. Buyer shall, effective as of the Closing Date, be assigned Seller's interest under the Assumed Contracts and shall assume all then existing liabilities and obligations of Seller solely to the extent arising from: (a) the Cure Amounts and (b) accruing under the Assumed Contracts on and after the Closing Date (together, the "<u>Assumed Liabilities</u>"). Other than the Assumed Liabilities, Buyer is not assuming and shall not be liable for any Liabilities including without limitation (the "<u>Excluded Liabilities</u>") (i) all Excluded Taxes; (ii) all Liabilities relating to or arising out of the Excluded Assets; (iii) all Liabilities arising under the Plans or otherwise with respect to any employee of Seller (regardless of whether or not any payment to such employee is due prior to or after the Closing), including any compensation or claim, including salary or wages, any accrued vacation, sick or personal days or any bonuses; (iv) all Liabilities pursuant to Environmental Law arising from or related to any action, event, circumstance or condition related to the Business or any real property, in each case occurring or existing on or before the Closing; (v) any and all Liabilities for indebtedness of Seller; (vi) any Liability arising out of or relating to services or products of Seller to the extent provided, developed, made or marketed, sold or distributed prior to the Closing; (vii) any Liability to any direct or indirect member or shareholder of Seller, or any Affiliate thereof, other than pursuant to an Assumed Contract; (viii) any Liability of Seller based upon Seller's acts or omissions occurring after the Closing, except if such acts or omissions are taken (or omitted to be taken) at the request of Buyer in a separate writing to Seller; (ix) any breach of Contract (excluding Buyer's obligation to pay the Cure Amounts of Assumed Contracts), tort, infringement or violation of Law arising from any facts, events or circumstances, acts or omissions arising on or prior to the Closing Date, in each case, of any kind or nature whatsoever and whether primarily related to the Purchased Assets or the Business or otherwise and regardless of when and if commenced; and (x) any and all Liabilities for: (A) costs and expenses incurred by Seller or owed in connection with the administration of the Case or any other case under the Bankruptcy Code (including the U.S. Trustee fees, the fees and expenses of attorneys, accountants, financial advisors, consultants and other professionals retained by Seller and any committee in connection with any of the foregoing and the fees and expenses of the post-petition lenders and pre-petition lenders incurred or owed in connection with the administration of the Case or any other case under the Bankruptcy Code); and (B) all costs and expenses of Seller incurred in connection with the negotiation, execution and consummation of the transactions contemplated under this Agreement.

NY 247550536v7

2.3     Receivables and Accrued Payables.

2.3.1    On the Closing Date (and in any event no later than one calendar day before the Closing Date), the Seller shall provide to Buyer a schedule of Receivables. The Buyer, in its sole discretion, may assume to acquire such Receivables (at which time, such Receivables shall be considered a Purchased Asset) and the Buyer shall increase the Cash Purchase Price accordingly.

2.3.2    On or before October 10, 2018 and, again, on the Closing Date, the Seller shall provide to Buyer an open accounts payable list for all Liabilities created or accrued after the Petition Date to trade vendors and contract counterparties (the second schedule, "Closing Date AP Schedule"). The Buyer, in its sole discretion, may assume certain of these Liabilities ("Accrued Payables"), in which case such Accrued Payables shall be considered an Assumed Liability and the Buyer shall reduce the Cash Purchase Price accordingly.  A draft Closing Date AP Schedule is attached hereto as Schedule 2.3.2. Notwithstanding anything herein to the contrary, no reduction of the Purchase Price will result from any assumption of Accrued Payables payable to Buyer or an affiliate of Buyer.

2.4     Purchase Price Allocation.

2.4.1    As promptly as practicable (and in any event within 120 days) after the Closing Date, Buyer shall prepare and deliver to Seller a statement (the "Allocation Statement") allocating, for Tax purposes, the Purchase Price and any other items that are treated as additional purchase price for tax purposes (including the Assumed Liabilities) among the Purchased Assets. The fair market value of a Purchased Asset is its carrying value on the books and records of the Seller. The Allocation Statement shall be prepared in accordance with Section 1060 of the Code and the Treasury Regulations promulgated thereunder (and any similar provision of state, local, or foreign Laws, as applicable).  Seller shall have 30 days following receipt of Buyer's proposed Allocation Statement to review and comment on such proposed allocation and Buyer shall seek to resolve any disagreements in good faith.  Thereafter, Buyer shall provide Seller with Buyer's final allocation schedule (the "Final Allocation").  Within 30 days of any adjustment to the Purchase Price under any provision of this Agreement, Buyer shall adjust the Final Allocation in a manner consistent with Code Section 1060 and the Treasury Regulations promulgated thereunder (as adjusted, the "Adjusted Allocation") and deliver a copy of the Adjusted Allocation to Seller.

2.4.2    Except as otherwise required by law: The Parties hereby agree to (i) be bound by the Final Allocation or the Adjusted Allocation, as applicable, (ii) act in accordance with the foregoing in connection with the preparation, filing and audit of any Tax Return (including in the filing of IRS Form 8594 and any other corresponding tax forms), and (iii) take no position inconsistent with the foregoing for any tax purpose (including in any audit, judicial or administrative proceeding).  If any state or federal taxing authority challenges such allocation, the Party receiving notice of the challenge shall promptly provide notice to the other Parties.

NY 247550536v7

2.5 <u>Withholding</u>. Buyer shall be entitled to deduct and withhold from the consideration otherwise payable pursuant to this Agreement to any Person such amounts as Buyer is required to deduct and withhold under the Code, or any Tax Law, with respect to the making of such payment. To the extent that amounts are so withheld, such withheld amounts shall be treated for all purposes of this Agreement as having been paid to the Person in respect of whom such deductions and withholding was made.

2.6 <u>Purchase Price Adjustment</u>.

2.6.1 <u>Segregated Funds</u>. The Seller shall segregate a portion of the Cash Purchase Price equal to the sum of (i) the aggregate value of the acquired Receivables and (ii) 110% of the amount of the Accrued Payables ("<u>Segregated Funds</u>"), pending resolution of the purchase price adjustment. Seller shall not use or disburse any of the Segregated Funds until after the purchase price adjustment.

2.6.2 <u>Closing Statement</u>. As promptly as practicable following the Closing Date (but in any event within forty-five (45) days thereafter), Buyer shall prepare, or cause to be prepared, and deliver to Seller a statement (the "<u>Closing Statement</u>") consisting of a calculation in reasonable detail of (i) the chargebacks to the acquired Receivables the Buyer was charged after the Closing and (ii) any variance in the Accrued Payables between the Closing Date AP Schedule and the actual amount of Accrued Payables the Buyer paid. The total of the foregoing shall be referred to herein as the "<u>Overpayment Amount</u>" which Overpayment Amount can only be a negative number.

2.6.3 <u>Closing Statement Dispute Notice</u>. The Closing Statement shall become final, binding and conclusive upon the Parties on the 10th day following Seller's receipt of the Closing Statement unless on or prior to such 10th day Seller delivers to Buyer a written notice (a "<u>Closing Statement Dispute Notice</u>") stating that Seller disputes one or more items contained in the Closing Statement (a "<u>Disputed Item</u>") and specifying in reasonable detail each Disputed Item.

2.6.4 <u>Resolution Period</u>. If Seller delivers a Closing Statement Dispute Notice on or prior to the 10th day following Seller's receipt of the Closing Statement, then Buyer and Seller shall seek in good faith to resolve the Disputed Items during the 10-day period beginning on the date Buyer receives the Closing Statement Dispute Notice (the "<u>Resolution Period</u>"). If Buyer and Seller reach agreement with respect to any Disputed Items, Buyer shall revise the Closing Statement to reflect such agreement.

2.6.5 <u>Bankruptcy Court Resolution of "Unresolved Items"</u>. If Buyer and Seller are unable to resolve all Disputed Items during the Resolution Period, then, at the request of either party, Buyer and Seller shall jointly engage and submit the unresolved Disputed Items to the Bankruptcy Court (the "<u>Unresolved Items</u>").

2.6.6 <u>Method of Payment</u>. Seller shall pay to Buyer from the Segregated Funds within five (5) Business Days following final determination of the Overpayment Amount, such amount as agreed between the Parties or otherwise resolved by Bankruptcy Court.

6

Payments pursuant to this Section 2.6.6 shall be treated as an adjustment to the Purchase Price for U.S. federal income Tax purposes.

3. **Closing Transactions.**

    3.1    <u>Closing</u>. The consummation of the transactions contemplated hereby (the "<u>Closing</u>") shall take place at the offices of Greenberg Traurig, LLP, 200 Park Avenue, New York, New York 10166 at 10:00 A.M. New York time on the Closing Date or at such place and time as agreed by the Parties.

    3.2    <u>Closing Date</u>. The Closing shall be held upon the second (2nd) business day following the satisfaction of the last of the conditions set forth in Sections 4.1 and 4.2 below (the "<u>Closing Date</u>"). In the event the conditions to Closing have not been satisfied or waived by November 9, 2018, then any Party who is not in default hereunder may terminate this Agreement. Alternatively, the Parties may mutually agree to an extended Closing Date. Until this Agreement is either terminated or the Parties have agreed upon an extended Closing Date, the Parties shall diligently continue to work to satisfy all conditions to Closing and the transaction contemplated herein shall close as soon as such conditions are satisfied or waived.

    3.3    <u>Seller's Deliveries to Buyer at Closing</u>. On the Closing Date, Seller shall make the following deliveries to Buyer:

    3.3.1    An Assignment and Assumption of Contracts substantially in the form and content attached as <u>Exhibit A</u> hereto, duly executed by Seller (the "<u>Assignment of Contracts</u>").

    3.3.2    A bill of sale, duly executed by Seller substantially in the form and content attached hereto as <u>Exhibit B</u> hereto (the "<u>Bill of Sale</u>").

    3.3.3    A counterpart assignment of Intangible Property, duly executed by Seller, substantially in the form and content attached hereto as <u>Exhibit C</u> hereto (the "<u>Assignment of Intangible Property</u>").

    3.3.4    Any such other documents, funds or other things reasonably contemplated by this Agreement to be delivered by Seller to Buyer at the Closing.

    3.4    <u>Buyer's Deliveries to Seller at Closing</u>. On the Closing Date, Buyer shall make or cause the following deliveries to Seller:

    3.4.1    The Cash Purchase Price.

    3.4.2    A counterpart of the Assignment of Contracts, duly executed by Buyer.

    3.4.3    A counterpart of the Assignment of Intangible Property, duly executed by Buyer.

7

3.4.4   Any such other documents, funds or other things reasonably contemplated by this Agreement to be delivered by Buyer to Seller at the Closing.

3.5   <u>Sales, Use and Other Taxes</u>.   Any sales, purchase, transfer, stamp, documentary stamp, use or similar taxes under the Laws of the states in which any portion of the Purchased Assets is located, or any subdivision of any such state, which may be payable by reason of the sale of the Purchased Assets under this Agreement or the transactions contemplated herein shall be borne by Seller.

3.6   <u>Possession</u>.   Right to possession of the Purchased Assets shall transfer to Buyer on the Closing Date.   Seller shall transfer and deliver to Buyer on the Closing Date such keys, locks and safe combinations, passwords, codes and other similar items as Buyer may reasonably require to obtain occupation and control of the Purchased Assets, and shall also make available to Buyer the originals of all Documents in Seller's actual possession that are required to be transferred to Buyer by this Agreement.

3.7   <u>Amendments to Schedules</u>. From and after the date hereof until Closing, Buyer shall be entitled to make such additions and deletions to the Schedules by delivery of written notice to Seller (which notice can be given by electronic mail).  Any such deletions shall be deemed to no longer be an Assumed Asset and any such additions shall be deemed an Assumed Asset.

4.   <u>Conditions Precedent to Closing</u>.

4.1   <u>Conditions to Seller's Obligations</u>.   Seller's obligation to make the deliveries required of Seller at the Closing Date and otherwise consummate the transaction contemplated herein shall be subject to the satisfaction or waiver by Seller of each of the following conditions:

4.1.1   All of the representations and warranties of Buyer contained herein shall continue to be true and correct at the Closing in all material respects.

4.1.2   Buyer shall have executed and delivered to Seller the Assignment of Contracts and Assignment of Intangible Property, except that if Buyer waives execution and delivery of such documents by Seller, then execution and delivery of such documents by Buyer shall not be required.

4.1.3   Buyer shall have delivered, or shall be prepared to deliver to Seller at the Closing, all Cash and other documents required of Buyer to be delivered at the Closing.

4.1.4   Buyer shall have delivered to Seller appropriate evidence of all necessary corporate action by Buyer in connection with the transactions contemplated hereby, including, without limitation:   (i) certified copies of resolutions duly adopted by Buyer's directors approving the transactions contemplated by this Agreement and authorizing the execution, delivery, and performance by Buyer of this Agreement; and (ii) a certificate as to the

NY 247550536v7

incumbency of officers of Buyer executing this Agreement and any instrument or other document delivered in connection with the transactions contemplated by this Agreement.

4.1.5    No action, suit or other proceedings shall be pending before any court, tribunal or governmental authority seeking or threatening to restrain or prohibit the consummation of the transactions contemplated by this Agreement, or involving a claim that consummation thereof would result in the violation of any law, decree or regulation of any governmental authority having appropriate jurisdiction.

4.1.8    The Bankruptcy Court shall have entered the Approval Order and Procedures Order in accordance with <u>Sections 8(a)</u> and <u>8(b)</u> below and the Approval Order shall not have been stayed as of the Closing Date.

4.2    <u>Conditions to Buyer's Obligations</u>. Buyer's obligation to make the deliveries required of Buyer at the Closing, and to otherwise close the transaction contemplated herein, shall be subject to the satisfaction or waiver by Buyer of each of the following conditions:

4.2.1    Seller shall have substantially performed or tendered performance of each and every covenant on Seller's part to be performed which, by its terms, is capable of performance before the Closing.

4.2.2    All representations and warranties of Seller contained herein shall continue to be true and correct at the Closing in all material respects.

4.2.3    Seller shall have executed and be prepared to deliver to Buyer the Assignment of Contracts; the Bill of Sale; and the Assignment of Intangible Property.

4.2.4    Seller shall have delivered, or shall be prepared to deliver to Buyer at the Closing, all other documents required of Seller to be delivered at the Closing.

4.2.5    No action, suit or other proceedings shall be pending before any court, tribunal or governmental authority seeking or threatening to restrain or prohibit the consummation of the transactions contemplated by this Agreement, or seeking to obtain substantial damages in respect thereof, or involving a claim that consummation thereof would result in the violation of any law, decree or regulation of any governmental authority having appropriate jurisdiction.

4.2.6    The Bankruptcy Court shall have entered the Approval Order and Procedures Order in accordance with <u>Sections 8(a)</u> and <u>8(b)</u> below, each in a form reasonably acceptable to Buyer, and the Approval Order shall not have been stayed as of the Closing Date.

4.2.7    From the date of this Agreement through Closing, there shall have been no material adverse change in the business operations or finances of the Debtor, or the condition, quality or value of the Purchased Assets.

NY 247550536v7

4.2.8 The Bankruptcy Court shall have entered the "<u>Final Order</u>" as defined in the Bankruptcy Court's Interim Order (1) Authorizing (A) Secured Postpetition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, and 364(c) and (d); (B) Granting Senior Security Interests, Superpriority Claims, and Adequate Protection and (C) Use of Cash Collateral and (II) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001(c) (the "<u>Interim Order</u>"), and Seller shall not be in default under the terms of the Interim Order, Final Order, or any documents related to the debtor-in-possession financing afforded to Seller under the Interim Order and Final Order (the "<u>DIP Loan</u>").

4.2.9 At or before Closing, Seller shall have obtained the orders and approvals from the Bankruptcy Court, in a form reasonably satisfactory to Buyer, necessary to assume and assign all licenses of "intellectual property" (as defined in the Bankruptcy Code) to be transferred to Buyer under the terms of this Agreement.

4.2.10 At or before Closing, Seller shall file an amendment to its organizational documents changing its name (each an "<u>Existing Name</u>") to a name (each a "<u>New Name</u>") which is in no way similar to any corporate name set forth on the signature page hereof and shall furnish such written consents and assignments as Buyer shall hereafter reasonably request in connection with such name change. Immediately after the Closing, Seller shall take all action necessary to ensure that the caption of Bankruptcy Case is changed to reflect the New Name and to delete all references to the Existing Name.

4.2.11 By no later than the entry of the Procedures Order by the Bankruptcy Court, Buyer shall complete its financial, legal and operational due diligence of Seller, Business and the Purchased Assets, with results satisfactory to Buyer in its sole discretion.

4.3 <u>Termination</u>. If any of the above conditions is neither satisfied nor waived on or before the date by which the condition is required to be satisfied, a Party who is not then in default hereunder may terminate this Agreement by delivering to the other written notice of termination. Any waiver of a condition shall be effective only if such waiver is stated in writing and signed by the waiving party; provided, however, that the consent of a Party to the Closing shall constitute a waiver by such party of any conditions to Closing not satisfied as of the Closing Date.

5. <u>Seller's Representations and Warranties</u>. In addition to the representations and warranties contained elsewhere in this Agreement, Seller hereby makes the following representations and warranties to Buyer:

5.1 <u>Organization, Standing and Power</u>. Subject to the applicable provisions of the Bankruptcy Code and any other bankruptcy Law, Seller has all requisite entity power and authority to own, lease and operate its properties, to carry on Seller's business as now being conducted and, upon obtaining the Approval Order, Seller will have the power and authority to execute, deliver and perform this Agreement and all writings relating hereto.

NY 247550536v7

5.2     Authorization of Seller.  Subject to Seller's obtaining the Approval Order, the  execution and delivery of this Agreement and the Ancillary Agreement, the consummation of the transactions herein contemplated, and the performance of, fulfillment of and compliance with the terms and conditions hereof and thereof by Seller do not and will not:  (i) conflict with or result in a breach of the certificate of formation operating agreement and any other governing document of Seller; (ii) violate any Law, or any order, writ, injunction or decree of any court or governmental authority; or (iii) violate or conflict with or constitute a default under any Contract or writing of any nature to which Seller is a party or by which Seller or its assets or properties may be bound.

5.3     Title to Assets; Sufficiency of Assets.  (i) Seller owns and has the good, valid, marketable and undivided legal title to all of the Purchased Assets, and (ii) following entry of the Sale Order and the consummation of the Closing in accordance with the terms and conditions of this Agreement, Buyer will be vested, to the maximum extent permitted by Sections 363 and 365 of the Bankruptcy Code, with good, valid, marketable and undivided title in, to and under the Purchased Assets free and clear of all Liens, Claims, Interests and Encumbrances, other than Assumed Liabilities.  Seller has not taken any action, or failed to take any action, which action or failure would preclude or prevent the Business as a legal matter from being conducted as now conducted, in all material respects.  The Purchased Assets constitute all of the assets, rights, interests and properties of every nature and kind whatsoever necessary for Buyer to conduct and operate the Business immediately after the Closing in substantially the same manner as conducted prior to the Closing.  No Purchased Asset is subject to any agreement, written or oral, for its sale or use by any Person other than Seller.  Other than as provided in the Transferred IP Agreements, no Person other than Seller is engaged in the operation of, or hold rights, title and interest in or to, any of the Purchased Assets.

5.4     Litigation; Proceedings.  Except for the Case, there is no action, suit, or proceeding pending or, threatened in writing against or related to the Business, whether at Law or in equity, whether civil or criminal in nature or by or before any arbitrator or governmental authority, nor are there any investigations relating to the Business pending or threatened (in writing) by or before any arbitrator or any governmental authority.

5.5     Intellectual Property. (i) Seller exclusively owns all right, title and interest to, or is licensed or otherwise possesses legally enforceable rights to use, all Intellectual Property required to operate the Business as currently conducted and can convey all Seller Owned Intellectual Property, and its rights in any Transferred IP Agreements, free and clear of Liens pursuant to the Sale Order, (ii) there are no pending or threatened claims by any Person alleging infringement or violation of any intellectual property rights of any Person by Seller as a result of its use of Seller Intellectual Property, (iii) the conduct of the Business does not infringe any Intellectual Property rights of any Person, and (iv) there is no infringement by any Person of the rights of Seller to or in connection with Seller Intellectual Property.  Schedule 5.5 sets forth a true and complete list, as of the date hereof, of (i) all registered and applied-for Seller Owned Intellectual Property (whether registered with the United States Patent and Trademark Office, the United States Copyright Office or otherwise), (ii) all Intellectual Property licenses used in the operation of the Business as currently conducted and (iii) Transferred IP Agreements to which Seller is a party.  No employee, consultant or independent contractor of the Business has any

right, title or interest, directly or indirectly, in whole or in part, in any Seller Intellectual Property.

6. <u>Buyer's Representations and Warranties</u>. Buyer hereby makes the following representations and warranties to Seller:

6.1 <u>Organization, Standing and Power</u>. Buyer is a corporation duly organized, validly existing and in good standing under the laws of the State of New York. Buyer has all requisite entity power and authority to own, lease and operate its properties, to carry on its business as now being conducted and to execute, deliver and perform this Agreement and all writings relating hereto.

6.2 <u>Authorization of Buyer</u>. The execution, delivery and performance of this Agreement and the Ancillary Agreements by Buyer have been duly and validly authorized. The execution and delivery of this Agreement and the Ancillary Agreements, the consummation of the transactions herein and therein contemplated, and the performance of, fulfillment of and compliance with the terms and conditions hereof and thereof by Buyer do not and will not: (i) conflict with or result in a breach of the articles of incorporation or by-laws of Buyer; (ii) violate any statute, law, rule or regulation, or any order, writ, injunction or decree of any court or governmental authority; or (iii) violate or conflict with or constitute a default under any agreement, instrument or writing of any nature to which Buyer is a party or by which Buyer or its assets or properties may be bound.

7. <u>Certain Defined Terms</u>. For purposes of this Agreement:

"<u>Affiliate</u>" means, with respect to any specified Person, any other Person that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with, such specified Person.

"<u>Ancillary Agreements</u>" means the Bill of Sale, the Assignment of Contracts and the Assignment of Intangible Property.

"<u>Business Day</u>" means any day other than Saturday, Sunday and any day that is a legal holiday or a day on which banking institutions in New York are authorized by Law or other governmental action to close.

"<u>Cash</u>" means all cash on hand and in banks, cash equivalents, marketable securities, short-term investments, treasury bills, money orders, checks (including cash in transit such as checks received prior to the Closing, whether or not deposited or cleared prior to the Closing), checking account balances, instruments for the payment of money, certificates of deposit and other time deposits and letters of credit.

"<u>Claim</u>" has the meaning ascribed by Bankruptcy Code §101(5), including all rights, claims, causes of action, defenses, debts, demands, damages, offset rights, setoff rights, recoupment rights, obligations, and Liabilities of any kind or nature under contract, at Law or in

equity, known or unknown, contingent or matured, liquidated or unliquidated, and all rights and remedies with respect thereto.

"Code" means the Internal Revenue Code of 1986, as amended, and the Treasury Regulations issued thereunder.

"Cure Amounts" means all amounts, costs and expenses (a) required by the Bankruptcy Court to cure all defaults or compensate the non-debtor party for actual pecuniary loss under the Assumed Contracts so that they may be sold and assigned to Buyer pursuant to Sections 363 and 365 of the Bankruptcy Code or (b) that are payable pursuant to the terms of any Assumed Contract in connection with the sale of any goods or services by Seller at any time prior to the Closing Date.

"Encumbrances" means, to the extent not considered a Lien, any security interest, pledge, hypothecation, mortgage, deed of trust, lease, charge, option, right of first refusal, easement, servitude, proxy, voting trust or agreement, transfer restriction, lien or encumbrance

"Environmental Laws" means all federal, state and local Laws governing health and safety, pollution or the protection of the environment, and the regulations promulgated pursuant thereto.

"Excluded Taxes" means (i) all income Taxes owed by Seller or any of its Affiliates for any period; (ii) all Taxes relating to the Excluded Assets or Excluded Liabilities for any period; (iii) all Taxes relating to the Purchased Assets, the Business or the Assumed Liabilities for any pre-Closing period; and (iv) all Taxes of Seller or any other Person by reason of being a member of a consolidated, combined, unitary or affiliated group that includes Seller or any of its present or past Affiliates, by reason of a tax sharing, tax indemnity or similar agreement entered into by Seller or any of its present or past Affiliates or by reason of transferee or successor liability arising in respect of a transaction undertaken by Seller or any of its present or past Affiliates.

"Intellectual Property" means (i) patents, patent applications and statutory invention registrations, (ii) trademarks, service marks, domain names, websites and pages, trade dress, logos, trade names, corporate names and other identifiers of source or goodwill, including registrations and applications for registration thereof and including the goodwill of the business symbolized thereby or associated therewith, (iii) mask works and copyrights, including copyrights in computer software, and registrations and applications for registration thereof, and (iv) confidential and proprietary information, including trade secrets, know-how and invention rights.

"Interest" means "interest" as that term is used in Bankruptcy Code Section 363(f).

"Inventories" means all inventory, merchandise, goods, raw materials, packaging, labels, supplies and other personal property related to the Business and maintained, held or stored by or for Seller at the Closing, and any prepaid deposits for any of the same.

13

"Law" means any federal, national, supranational, state, provincial, local or similar statute, law, ordinance, regulation, rule, code, order, requirement or rule of law (including common law).

"Liability" means any indebtedness, debt, payable, claim, liability, expense, commitment or obligation (whether direct or indirect, known or unknown, asserted or unasserted, absolute or contingent, accrued or unaccrued, liquidated or unliquidated, or due or to become due), and including all costs and expenses relating thereto.

"Lien" has the meaning given to that term in the Bankruptcy Code.

"Owned Intellectual Property" means Intellectual Property owned by Seller.

"Person" means any individual, partnership, firm, corporation, governmental authority, limited liability company, association, trust, unincorporated organization or other entity, as well as any syndicate or group that would be deemed to be a person under Section 13(d)(3) of the Securities Exchange Act of 1934, as amended.

"Plans" means all "employee benefit plans" (as defined in Section 3(3) of ERISA) and all bonus, equity or equity based compensation, incentive, deferred compensation, change in control, retiree medical or life insurance, supplemental retirement, severance or other benefit plans, programs or arrangements, and all employment, termination, severance or other similar contracts or agreements to which Seller is a party, with respect to which Seller has any obligation or liability under, or which are maintained, contributed to or sponsored by Seller or any entity that together with Seller would be deemed a "single employer" within the meaning of Section 4001(b)(1) of ERISA for the benefit of any current or former employee, director or independent contractor of Seller as of the Closing.

"Receivables" means any and all accounts receivable, notes and other amounts receivable from third parties, including customers and employees, arising from the conduct of the Business before the Closing, whether or not in the ordinary course, together with any unpaid financing charges accrued thereon.

"Secured Promissory Note" means that certain Secured Promissory Note executed and made by the Seller in favor of E. Chabot Ltd., a New York corporation (the "Original Holder") and subsequently assigned by the Original Holder to the Buyer.

"Security Agreement" means that certain Security Agreement executed and made by the Seller in favor of the Original Holder and subsequently assigned by the Original Holder to the Buyer.

"Tax" or "Taxes" means any and all taxes, fees, levies, duties, tariffs, imposts, and other charges of any kind (together with any and all interest, penalties, additions to tax and additional amounts imposed with respect thereto) imposed by any government or taxing authority, including taxes or other charges on or with respect to income, franchises, windfall or other profits, gross receipts, property, sales, use, capital stock, payroll, employment, social security,

14

NY 247550536v7

workers' compensation, unemployment compensation, or net worth; taxes or other charges in the nature of excise, withholding, ad valorem, stamp, transfer, value added, or gains taxes; license, registration and documentation fees; and customs' duties, tariffs, and similar charges.

"Transferred IP Agreements" means (a) licenses of Owned Intellectual Property by Seller to third parties, (b) licenses of Intellectual Property by third parties to Seller (c) Contracts between Seller and third parties relating to the development or use of Intellectual Property, the development or transmission of data, or the use, modification, framing, linking advertisement, or other practices with respect to Internet web sites, in each case, that are used in connection with the Business that are Assumed Contracts and (d) consents, settlements, decrees, orders, injunctions, judgments or rulings governing the use, validity or enforceability of Owned Intellectual Property.

"Treasury Regulation" means, with respect to any referenced provision, such provision of the regulations promulgated by the United States Department of the Treasury.

8.  Bankruptcy Court Approvals.

(a)     No later than August 22, 2018, Seller will file a motion with the Bankruptcy Court (the "Sale Motion") for an order (the "Approval Order"), in form and substance acceptable to Buyer, from the Bankruptcy Court which (i) approves the sale of the Purchased Assets to Buyer on the terms and conditions set forth in this Agreement and authorizes Seller to proceed with this transaction, (ii) includes a specific finding that Buyer is a good faith Buyer of the Purchased Assets, and (iii) states that the sale of the Purchased Assets to Buyer shall be free and clear of all Liens, Claims, Interests and Encumbrances whatsoever. Following the filing of the Sale Motion, Seller shall use reasonable efforts to obtain the Approval Order.  Both Buyer's and Seller's obligations to consummate the transactions contemplated in this Agreement which Buyer and Seller may hereafter enter into shall be conditioned upon the Bankruptcy Court's entry of the Approval Order.  If the Bankruptcy Court refuses to issue the Approval Order or to approve any third-party buyer at the hearing on the Sale Motion (the "Sale Hearing"), then this Agreement shall automatically terminate, and Seller and Buyer shall be relieved of any further liability or obligation hereunder.

(b)     As part of the Sale Motion (or pursuant to a separate motion in Seller's discretion), Seller shall also request and obtain from the Bankruptcy Court an order (the "Procedures Order") which approves the bidding procedures (the "Bidding Procedures"): (i) in the event that a third party (an "Overbid Buyer" and the underlying agreement between the Overbid Buyer and Seller, the "Overbid Agreement") is approved by the Bankruptcy Court as the buyer of the Purchased Assets at the Sale Hearing, then the Overbid Agreement and the order approving such sale shall provide that the Buyer shall receive a payment in Cash in immediately available funds of all Obligations under the DIP Loan Documents from the proceeds of such sale at closing, (ii) no prospective Overbid Buyer will be permitted to bid at the Sale Hearing unless such party has been deemed "financially qualified" by Seller, (iii) no prospective Overbid Buyer who bids for the Purchased Assets at the Sale Hearing shall be entitled to purchase the Purchased Assets unless such prospective Overbid Buyer offers to purchase the Purchased Assets for consideration at least $25,000 greater than the consideration set forth in this Agreement

NY 247550536v7

(including all Cash, non-cash consideration and assumed liabilities) (i.e., $500,000) and otherwise on terms at least as favorable to Seller's estate as those set forth in this Agreement, and Seller shall, in Seller's discretion, have determined that such overbids satisfy such bidding increment requirement, and (iv) deem Buyer a qualified bidder and this Agreement a qualified bid. Should overbidding take place, Buyer shall have the right, but not the obligation, to participate in the overbidding (including the right to credit bid the amount of the Obligations) and be approved as the successful Overbid Buyer at the Sale Hearing. This Agreement shall terminate if the Procedures Order is for any reason whatsoever not entered by the Bankruptcy Court on or before September 12, 2018. Upon entry of the Procedures Order in accordance with the provisions of this Section 8(b), the condition set forth in this Section 8(b) shall conclusively be deemed satisfied.

9. <u>Access to Records, Properties and Employees of Seller</u>. From and after the date of this Agreement until the Closing Date, Seller shall afford to Buyer's officers, independent public accountants, counsel, lenders, consultants and other representatives, reasonable access for examination at all reasonable times to the Purchased Assets and all records pertaining to the Purchased Assets or the Business, and to the employees of Seller's business. From and after the date of this Agreement until the Closing Date, Seller shall afford and allow to Buyer's officers, independent public accountants, counsel, lenders, consultants and other representatives, access to and communication with Seller's creditors, manufacturers, suppliers, customers and licensors for purposes of discussing the purchase and sale of the Purchased Assets and the conduct of the Business after Closing. Buyer, however, shall not be entitled to access to any materials containing privileged communications or information about employees, disclosure of which might violate an employee's reasonable expectation of privacy. Buyer expressly acknowledges that except as provided in Section 4.2, nothing in this Section 9 is intended to give rise to any contingency to Buyer's obligations to proceed with the transactions contemplated herein.

10. <u>Employee Matters</u>.

10.1 <u>Offer of Employment</u>. Seller hereby permits to the Buyer and Buyer shall be entitled to, but is not required to, offer employment to one or more employees of Seller on such terms as Buyer deems appropriate in its exclusive discretion. As used herein, "<u>Transferred Employee</u>" shall mean each employee who accepts such offer. Buyer sole and exclusive obligation to the Transferred Employees shall be pursuant to such terms agreed upon between Buyer and such Transferred Employees and Buyer does not assume and shall not be deemed to have assumed any Liability to any Transferred Employee arising out of, resulting from or related to such Transferred Employee's employment or engaged with Seller.

10.2 <u>Certain Other Employee-Related Costs</u>

(a) Each Transferred Employee's active participation in any Plans shall cease as of the Closing Date or as otherwise provided under the terms of such Plan. Notwithstanding the preceding sentence, the Plans shall retain Liability for all claims incurred by the Transferred Employees and their dependents prior to the Closing Date including claims which are not submitted until after the Closing Date. A claim shall be deemed incurred (i) on the date of the occurrence of death or dismemberment in the case of claims under life insurance and accidental

16

death and dismemberment plans and (ii) on the date on which the service or treatment is provided in the case of claims under medical, hospital, dental and similar plans.

(b) The provisions of this Agreement, including <u>Section 10</u>, are for the benefit of the parties to this Agreement only and shall not be construed to grant any rights, as a third party beneficiary or otherwise, to any person who is not a party to this Agreement, nor shall any provision of this Agreement be deemed to be the adoption of, or an amendment to, any employee benefit plan, as that term is defined in Section 3(3) of ERISA.

11. <u>Miscellaneous</u>.

11.1 <u>Attorneys' Fees</u>. In the event that either party hereto brings an action or other proceeding to enforce or interpret the terms and provisions of this Agreement, the prevailing party in that action or proceeding shall be entitled to have and recover from the non-prevailing party all such reasonable fees, costs and expenses (including, without limitation, all court costs and reasonable attorneys' fees) as the prevailing party may suffer or incur in the pursuit or defense of such action or proceeding.

11.2 <u>Notices</u>.

11.2.1 All notices, requests, demands, consents, waivers and other communications required or permitted to be given under the terms of this Agreement must be in writing and will be deemed to have been delivered: (i) upon receipt, if delivered personally; (ii) when sent, if sent by facsimile (provided confirmation of transmission is mechanically or electronically generated and kept on file by the sending party); (iii) on the day of transmission, if sent via electronic transmission to the email address below (provided confirmation of transmission is mechanically or electronically generated and kept on file by the sending party); and (iv) if sent by overnight courier service, one Business Day after deposit with an overnight courier service with next day delivery specified, in each case, properly addressed to the Party to receive the same. The addresses, email addresses and facsimile numbers for such communications shall be:

|   |   |
|---|---|
| To Seller: | Tanga.Com, LLC |
|   | c/o Tanga, Inc. |
|   | 2487 South Gilbert Road |
|   | Suite 106-485 |
|   | Chandler, AZ 85225 |
|   | Attention: Jeremy Young, Manager |
|   | Fax: [_____] |
|   | Email: [_____] |
|   |   |
| With a copy to: | Fennemore Craig, P.C. |
|   | 2394 East Camelback Road |
|   | Suite 600 |
|   | Phoenix, AZ 85016-3429 |

17

NY 247550536v7

Attention:  Anthony W. Austin
Fax:  (602) 916-5547
Email:  AAUSTIN@FCLAW.com

To Buyer:    EOM Commerce, Inc.
             c/o E. Chabot Ltd.
             10 West 33rd Street, Suite 712
             New York, NY 10001
             Attention:  Ezra Shabot
             Fax:  718-488-8884
             Email: ezra@echabot.com

With a copy to:    Greenberg Traurig, LLP
                   MetLife Building
                   200 Park Avenue
                   New York, NY 10166
                   Attention:  Karl Burrer and Leo Muchnik
                   Fax:  212.801.6400
                   Email:  BurrerK@gtlaw.com and MuchnikL@gtlaw.com

11.3  <u>Entire Agreement</u>.  This instrument, together with the Secured Promissory Note and Security Agreement, and the documents to be executed pursuant hereto contain the entire agreement between the parties relating to the sale of the Purchased Assets.  Any oral representations or modifications concerning this Agreement or any such other document shall be of no force and effect excepting a subsequent modification in writing, signed by the Party to be charged.

11.4  <u>Modification</u>.  This Agreement may be modified, amended or supplemented only by a written instrument duly executed by all the parties hereto.

11.5  <u>Closing Date</u>.  All actions to be taken on the Closing pursuant to this Agreement shall be deemed to have occurred simultaneously, and no act, document or transaction shall be deemed to have been taken, delivered or effected until all such actions, documents and transactions have been taken, delivered or effected.

11.6  <u>Severability</u>.  Should any term, provision or paragraph of this Agreement be determined to be illegal or void or of no force and effect, the balance of the Agreement shall survive.

11.7  <u>Captions</u>.  All captions and headings contained in this Agreement are for convenience of reference only and shall not be construed to limit or extend the terms or conditions of this Agreement.

11.8  <u>Further Assurances</u>.  Each Party hereto will execute, acknowledge and deliver any further assurance, documents and instruments reasonably requested by any other Party for the purpose of giving effect to the transactions contemplated herein or the intentions of

18

the Parties with respect thereto; provided that nothing herein shall be deemed to require any Party to execute or deliver any such further assurance, document or instrument to the extent that the same could in any material way increase the burdens, obligations or liabilities otherwise imposed upon such Party by this Agreement.

11.9    Waiver.  No waiver of any of the provisions of this Agreement shall be deemed, or shall constitute, a waiver of other provisions, whether or not similar, nor shall any waiver constitute a continuing waiver.  No waiver shall be binding unless executed in writing by the Party making the waiver.

11.10    Brokerage Obligations. Seller and Buyer each represent and warrant to the other that such Party has incurred no liability to any broker or agent with respect to the payment of any commission regarding the consummation of the transaction contemplated hereby.

11.11    Payment of Fees and Expenses.  Except as provided in Section 11.1 above, each party to this Agreement shall be responsible for, and shall pay, all of its own fees and expenses, including those of its counsel, incurred in the negotiation, preparation and consummation of the Agreement and the transaction described herein.

11.12    Survival.    The respective representations, warranties, covenants and agreements of Seller and Buyer herein, or in any certificates or other documents delivered prior to or at the Closing, shall not be deemed waived or otherwise affected by the Closing.

11.13    Assignments.  This Agreement shall not be assigned by any Party hereto without the prior written consent of the other Party hereto, which consent the Party may grant or withhold in its sole and absolute discretion; provided, that Buyer may assign its rights and obligations hereunder to any Affiliate thereof.

11.14    Binding Effect.  Subject to the provisions of Section 11.13, above, this Agreement shall bind and inure to the benefit of the respective heirs, personal representatives, successors, and assigns of the Parties hereto.

11.15    Applicable Law.  This Agreement shall be governed by and construed in accordance with the laws of the State of New York.

11.16    Construction.  In the interpretation and construction of this Agreement, the Parties acknowledge that the terms hereof reflect extensive negotiations between the Parties and that this Agreement shall not be deemed, for the purpose of construction and interpretation, drafted by either Party hereto.

11.17    Counterparts.  This Agreement may be signed in counterparts.  The Parties further agree that this Agreement may be executed by the exchange of facsimile or electronically sent signature pages provided that by doing so the Parties agree to undertake to provide original signatures as soon thereafter as reasonable in the circumstances.

NY 247550536v7

11.18  <u>Bankruptcy Court Jurisdiction</u>.  **THE PARTIES AGREE THAT IF ANY DISPUTE ARISES OUT OF OR IN CONNECTION WITH THIS AGREEMENT OR ANY OF THE DOCUMENTS EXECUTED HEREUNDER OR IN CONNECTION HEREWITH, THE BANKRUPTCY COURT IN THE CASE SHALL HAVE EXCLUSIVE PERSONAL AND SUBJECT MATTER JURISDICTION AND SHALL BE THE EXCLUSIVE VENUE TO RESOLVE ANY AND ALL DISPUTES RELATING TO THE TRANSACTION CONTEMPLATED BY THIS AGREEMENT.  THE BANKRUPTCY COURT IN THE CASE SHALL HAVE SOLE JURISDICTION OVER SUCH MATTERS AND THE PARTIES AFFECTED THEREBY AND BUYER AND SELLER EACH HEREBY CONSENT AND SUBMIT TO SUCH SOLE JURISDICTION.**

11.19  <u>Interpretation and Rules of Construction</u>.  In this Agreement, except to the extent that the context otherwise requires:

11.19.1 when a reference is made in this Agreement to an Article, Section, Exhibit or Schedule, such reference is to an Article or Section of, or an Exhibit or a Schedule to, this Agreement unless otherwise indicated;

11.19.2 whenever the words "include," "includes" or "including" are used in this Agreement, they are deemed to be followed by the words "without limitation";

11.19.3 the words "hereof," "herein" and "hereunder" and works of similar import, when used in this Agreement, refer to this Agreement as a whole and not to any particular provision of this Agreement;

11.19.4 all terms defined in this Agreement have the defined meanings when used in any certificate or other document made or delivered pursuant hereto, unless otherwise defined therein;

11.19.5 the definitions contained in this Agreement are applicable to the singular as well as the plural forms of such terms;

11.19.6 any Law defined or referred to herein or in any agreement or instrument that is referred to herein means such Law or statute as from time to time amended, modified or supplemented, including by succession of comparable successor Laws;

11.19.7 references to a Person are also to its permitted successors and assigns; and

11.19.8 the use of "or" is not intended to be exclusive unless expressly indicated otherwise.

[Signature Page to Follow]

NY 247550536v7

**In Witness Whereof**, Buyer and Seller have executed this Asset Purchase Agreement as of the day and year first above written.

<u>**SELLER:**</u>

Tanga.Com, LLC, a Delaware limited liability company

By:_____
Name: Jeremy Young
Its:  Manager

<u>**BUYER:**</u>

EOM Commerce, Inc, a Delaware corporation

By:_____
Name: Ezra Shabot
Its:  CEO

*[Signature Page to Asset Purchase Agreement]*

*NY 247550536v7*

**Schedule 1.1.1**

Bank Accounts

None.

*NY 247550536v7*

## Schedule 1.1.2

### Personal Property

Description

| Description |
| --- |
| Amazon.com - TV: All |
| Apple Computer - Derek |
| Laptop Jeremy |
| Apple Computer - Gail |
| Lenovo Computer: CS |
| Lenovo Computer: J Trujillo |
| Apple computer: Rachel |
| Lenovo Computer: T Schuller |
| Lenovo Computer: Erik Flugstad |
| Apple Computer R. Spiher |
| Apple Computer Peter |
| Macbook Pro JVD |
| Lenovo - Verbin (Became Nicks) |
| Lenovo - Karli docking & computer |
| Apple Computer - Derek |
| Lenovo - C Russo docking & laptop |
| Amazon - Monitor |
| Computer - Tanga |
| Computer - Marketing |
| Computer - Baker |
| B & H Photo developer laptops |
| Apple store - Jeremy |
| Laptop for Pub - Jerry's card |
| Computer for Dev team 60% Tanga |
| Lenovo - Deb Smith Laptop |
| Any and all mailing lists for customers |
| All equipment and computers in storage |
| Lenovo K/B (20305002) |
| WD My Passport Portable Hard Drive |
| Wacom Drawing Tablet |
| Microsft Ergonomic K/B |
| 13" MacBook Pro |
| Apple Cinema Display |
| Lenovo G50 (S/N: PF0B825G) |
| Samsung Monitor |

*NY 247550536v7*

| |
|---|
| Logitech Keyboard |
| Apple wireless mouse |
| Logitech Wireless Mouse (S/N:1636LZ005628) |
| Logitech Wireless K/N (S/N: 16386YA1F208) |
| Cisco Phone SPA52562 (S/N: CBT15020728) |
| Cisco Phone SPA52562 (S/N: CC017440KB9) |
| Cisco Phone SPA52562 (S/N: CCQ174307CR) |
| Cisco Phone SPA52562 (S/N: CBT151109KI) |
| Anker Wireless K/B |
| AOC monitor E20705 (S/N: AAGE59A020191) |
| hp monitor W2271d (S/N: 6CM41026GN) |
| Dell D2015Hf monitor (S/N: CN-08KVY2-72827-489-A25I) |
| Dell Monitor |
| Dell Monitor (S/N: MX-0PH5NY-74446-22T-233L) |
| Logitech K20 (P/N: 820-002864) |
| Logitech M705 |
| Lenovo K/B (50262813) |
| Dell Monitor (S/N: CN-0VJH96-7445-57E-A2HU) |
| Lenovo PC Tower (S/N: R300Z8M2) |
| Amazon Basics Keyboard |
| hp mouse |
| hp 20wm monitor (S/N: 6CM32103B6) |
| Dell monitor (S/N: CN-08KVY2-72872-49B-A1TI) |
| EPSON Projector S/N: RENK3300246 |
| Sharp TV |
| Lenovo desktop (S/N: ES13132880) |
| Lenovo Thinkpad X1 Carbon (S/N: R9-0FJN69) |
| acer S231HL monitor |
| Logitech K350 (P/N: 820-00246) |
| Logitech M510 |
| Logitech K120 |
| Lenovo Thinkpad |
| Sanyo Mini Fridge |
| hp Officejet Pro 8500A Plus |
| hp 20wm (S/N: 6CM330300N) |
| 13" Mid 2009 MacBook Pro (S/N: W8939JZS7XJ) |
| White iPad Model A1416 |
| hp 20wm (S/N: 6CM321033F) |
| 11" MacBook Air |
| Lenovo laptop (S/N: PFOC7K47) |

2

| |
|---|
| Dell Mouse |
| Logitech K360 |
| Microsft Wirless Keyboard 2000 |
| Logitech K350 (P/N: 820-00246) |
| Dell Keyboard |
| Logitech K520 |
| Black wired mouse |
| Logitech M310 |
| Logitech K750 |
| Polycom Voice Station |
| Dell Monitor (S/N: CN-0XRPV5-74445-48M-B2GU |
| hp f2105 |
| Gateway Monitor FHX2153L |
| Dell Monitor D2015Hf |
| hp 20wm |
| Samsung T27B350ND TV |
| Dell Monitor S/N: CN-OXRPVS-74445-48m-B7UU |
| Wireless Mouse |
| LG Flatron E2340V |
| Zebra ZP505 |
| Zebra Stripe 54M |
| Brother label maker |
| Acer K/B |
| hp Pavilion tower |
| acer mouse |
| Dell Keyboard |
| Viewsonic Monitor |
| ULINE Scale |
| hp 693P |
| hp Compaq 6910 |
| Canon DSLR |
| HDD Cloner |
| Air Compressor |
| Photo equipment |
| Dell tablet |
| HP Elitebook 2540 |
| Dell Chromebook |
| Dell Laptop W10HM64 |
| hp Elitebook 8760w |
| hp Elitebook 6930p |

*NY 247550536v7*

| | |
|---|---|
| Panasonic CF-30 | |
| Dell Latitude 3340 | |
| Samsung Chromebook | |
| Dell mini laptop | |
| Dell Latitude D620 | |
| Lenovo Mini Desktop | |
| Dell XPS tower | |
| Standard Lenovo Tower | |
| Amazon Basics Mouse | |
| Anker Wireless Mouse | |
| Dell Monitor (S/N: CN-OVJH96-74445-4AH-A1NU) | |
| Dell 25" Monitor | |
| Small Dell Monitor | |
| Dell 15" Laptop | |
| Dell 25" wide screen monitor | |
| Acer monitor | |
| Samsung Monitor 25" | |
| Asus Monitor 25" | |
| Dell Monitor | |
| hp monitor 25" | |
| acer mini tower | |
| Lenovo mini tower | |
| hp standard tower | |
| Lenovo standard tower | |
| Dell standard tower | |
| Cisco phones | |
| | Quantity |
| LG 25 Monitor | 1 |
| Gateway 22 | 1 |
| Hanspree 22 | 1 |
| Acer 22 | 3 |
| Acer 22 | 2 |
| Dell 19 | 1 |
| Acer 25 | 1 |
| HP 19 | 1 |
| AOC 19 | 1 |
| Acer 25 | 2 |
| HP 22 | 1 |
| HP 22 | 2 |
| HP 25 | 1 |

4

*NY 247550536v7*

| | |
|---|---|
| Samsung 25 | 2 |
| Acer 27 | 1 |
| Asus 25 | 1 |
| Dell 22 | 1 |
| Dell 25 | 2 |
| Dell 27 | 2 |
| Dell 22 | 2 |
| Dell 19 | 1 |
| Dell 25 | 2 |
| Samsung 25 | 1 |
| Acer 25 | 1 |
| Dell 22 | 2 |
| Samsung 30 | 1 |
| Dell 25 | 1 |
| Dell 25 | 1 |
| Dell 22 | 1 |
| Dell 22 | 2 |
| Dell 25 | 1 |
| Dell 19 | 1 |
| HP 22 | 1 |
| Gateway 22 | 1 |
| Dell 25 | 1 |
| Del 25 | 1 |
| Toshiba Laptop | 1 |
| Lenova Thinkpad | 5 |
| Gateway Laptop | 1 |
| Lenovo Tower | 1 |
| Dell Inspiron | 2 |
| Gateway tower | 1 |
| Avatar Tower | 1 |
| Lenovo Think Centers | 2 |
| Lenovo Tower | 1 |
| Gateway Tower | 1 |
| Macbook Pro | 3 |
| Macbook | 1 |
| Ipad | 1 |
| Apple Accessories | |

5

## Schedule 1.1.3

### Inventories

None

*NY 247550536v7*

## Schedule 1.1.4

### Receivables

None

NY 247550536v7

# Schedule 1.1.9

Assumed Contracts

| Ongoing Service Agreements |
| --- |
| Gusto |
| TaxJar |
| QuickBooks Online |
| Vonage |
| CubeSmart |
| Asana |
| Slack |
| Zendesk |
| Amazon Web Service |
| Loggly |
| Heroku |
| Airbrake |
| CodeShip |
| White Pages |
| PacketFlip |
| BrickFTP |
| Neutrino |
| Enom |
| Pingdom |
| Github |
| PagerDuty |
| BrowserStack |
| Chartbeat |
| Google Advertising |
| JEB Commerce |
| MailGun |
| SendGrid |
| OptinMonster |
| Deal News - Offer Listings |

**<u>Schedule 1.1.10</u>**

<u>Permits</u>

<u>Sales Tax Permits</u>
Arizona
California
Nevada
Washington
Florida
Pennsylvania
New York
California Electronic
Recycling
Connecticut

<u>Business Permit</u> - Arizona

**Schedule 2.3.2**

Closing Date Accounts Payable


[To be updated at Closing pursuant to § 2.3.2]

*NY 247550536v7*

## Schedule 5.5

### Seller Intellectual Property

Description
Trademark
Tanga Logo
BC Logo
Canada Logo
Zadero Logo
Intellectual Property related to website Tanga.com
All computer software owned (including source code) or licensed, including but not limited to: (i) all code stored at Tanga's GetHub repository which includes code for "DealGrade", all websites, vendor portal, customer dossier, personalization, ordering systems, and inventory systems (ii) the software listed below:

A. TaxJar
B. QuickBooks Online
C. Bill.com
D. Asana
E. Slack
F. Zendesk
G. AWS
H. Loggly
I. Heroku
J. Airbrake
K. CodeShip
L. White Pages
M. Luminati
N. PacketFlip
O. BrickFTP
P. Neutrino
Q. NewRelic
R. Pingdom
S. Github
T. PagerDuty
U. BrowserStack
V. Chartbeat
W. MailGun
X. SendGrid
Y. OptinMonster

All access passwords listed on Schedule 5.5(A)

NY 247550536v7

Any and all websites and domains owned, including but not limited to Tanga.Com, bellechic.com, lolshirts.com
Any and all customer lists and former and current vendor lists, and information related thereto, including but not limited to email addresses and payment history.

2

*NY 247550536v7*

Schedule 5.5(A)


(Attached)

NY 247550536v7

**EXHIBIT A**

**ASSIGNMENT AND ASSUMPTION OF CONTRACTS**

This Assignment and Assumption of Contracts (this "Assignment") is entered into as of this ___ th day of November, 2018, between  Tanga.Com, LLC, a Delaware limited liability company and Debtor and Debtor in Possession under Case No. 2:18-bk-06314-BMW  in a Chapter 11 bankruptcy case pending before the United States Bankruptcy Court for the District of Arizona (the "Assignor"), on the one hand, and EOM Commerce, Inc., a Delaware corporation  (the "Assignee"), on the other hand, with respect to the following facts and circumstances:

A.      Assignor, as Seller, and Assignee, as Buyer, have heretofore entered into that certain Asset Purchase Agreement dated November ___, 2018 (the "Agreement").  Except for terms specifically defined herein, the capitalized terms used in this Assignment shall have the same meanings as capitalized terms used in the Agreement.

B.      Concurrently with the mutual execution and delivery of this Assignment, Assignor and Assignee are consummating the transactions contemplated by the Agreement.  Assignor and Assignee are executing and delivering this Assignment in satisfaction of their respective obligations pursuant to Sections 3.3.1 and 3.4.2 of the Agreement.

**NOW, THEREFORE**, for good and valuable consideration, the receipt and adequacy of which Assignor and Assignee hereby acknowledge, Assignor and Assignee hereby agree as follows:

1.      Assignment.   Effective as of the Closing Date, Assignor hereby assigns to Assignee all of its right, title and interest in and to the Assumed Contracts.

2.      Assumption.  Effective as of the Closing Date, Assignee hereby accepts the foregoing assignment and assumes and agrees to be bound by the terms and provisions of the Assumed Contracts.

3.      Amendments.   This Assignment may only be amended by a writing signed by both Assignor and Assignee.

4.      Execution in Counterparts.  This Assignment may be executed in counterparts and delivered by the delivery of facsimile or electronic signatures; provided, however, that if the parties exchange facsimile or electronic signatures, each of them agrees to provide the other with a copy of this Assignment bearing its original signature as soon thereafter as possible.

5.      Delivery Pursuant to Purchase Agreement.  Notwithstanding anything to the contrary herein, Assignor and Assignee are executing and delivering this Assignment in accordance with

and subject to all of the terms and provisions of the Agreement (including, without limitation, the exclusions set forth in Section 2.2 of the Agreement).

6.  <u>Governing Law</u>.  This Assignment shall be governed by and construed and enforced in accordance with the laws of the State of New York.

<p style="text-align:center">[Signature Page to Follow]</p>

*NY 247550536v7*

**IN WITNESS WHEREOF**, Assignor and Assignee have executed this Assignment as of the day and year first set forth above.

<div align="center">

**ASSIGNOR:**

</div>

Tanga.Com, LLC, a Delaware limited liability company


By:_____
Name: Jeremy Young
Its:  Manager


<div align="center">

**ASSIGNEE:**

</div>

EOM Commerce, Inc., a Delaware corporation


By:  _____
Name: Ezra Shabot
Its:  CEO

*[Signature Page to Assignment of Contracts]*

<div align="center">

3

</div>

*NY 247550536v7*

# EXHIBIT B

## BILL OF SALE

Pursuant to Section 3.3.2 of that certain Asset Purchase Agreement dated as of November __, 2018 (the "Agreement"), by and between Tanga.Com, LLC, a Delaware limited liability company and Debtor and Debtor in Possession under Case No. 2:18-bk-06314-BMW in a Chapter 11 bankruptcy case pending before the United States Bankruptcy Court for the District of Arizona ("Seller"), on the one hand, and EOM Commerce, Inc., a Delaware corporation ("Buyer"), on the other hand, and for good and valuable consideration, the receipt and sufficiency of which Seller hereby expressly acknowledges, Seller hereby sells, transfers, assigns and delivers to Buyer all of Seller's right, title and interest in and to (i) the Personal Property, (ii) the Inventories; (iii) the Receivables and (iv) any other Purchases Asset not subject to any other specific instrument of transfer.

Except for terms specifically defined in this Bill of Sale, all capitalized terms used in herein shall have the same meanings as such terms have when utilized in the Agreement.

Notwithstanding anything to the contrary herein, Seller is executing and delivering this Bill of Sale in accordance with and subject to all of the terms and provisions of the Agreement (including, without limitation, the exclusions set forth in Section 2.2).

**IN WITNESS WHEREOF**, Seller has caused this Bill of Sale to be executed as of the _____ day of, 2018.

### SELLER:

Tanga.Com, LLC, a Delaware limited liability company

By:_____
Name: Jeremy Young
Its:  Manager

# EXHIBIT C

## ASSIGNMENT OF INTANGIBLE PROPERTY

This Assignment and Assumption of Intangible Property (this "Assignment") is entered into as of this ___ th day of November, 2018, between Tanga.Com, LLC, a Delaware limited liability company and Debtor and Debtor in Possession under Case No. 2:18-bk-06314-BMW in a Chapter 11 bankruptcy case pending before the United States Bankruptcy Court for the District of Arizona (the "Assignor"), on the one hand, and EOM Commerce, Inc., a Delaware corporation (the "Assignee"), on the other hand, with respect to the following facts and circumstances:

A.      Assignor, as Seller, and Assignee, as Buyer, have heretofore entered into that certain Asset Purchase Agreement dated _____ ___, 2018 (the "Agreement").  Except for terms specifically defined herein, the capitalized terms used in this Assignment shall have the same meanings as capitalized terms used in the Agreement.

 (B)      Concurrently with the execution and delivery of this Assignment, Assignor and Assignee are consummating the transactions contemplated by the Agreement.  Pursuant to Sections 3.3.3 and 3.4.3 of the Agreement, Assignor and Assignee are required to mutually execute and deliver this Assignment at the Closing.

**NOW, THEREFORE, FOR GOOD AND VALUABLE CONSIDERATION**, the receipt and sufficiency of which Assignor hereby expressly acknowledges, Assignor hereby assigns, conveys, transfers and sets over unto Assignee, all of its right, title and interest, if any, in and to all (i) Seller Intellectual Property, including, but not limited to, its right, title and interest, if any, in and to all Seller Intellectual Property identified on Schedule 5.5 of the Purchase Agreement attached hereto and incorporated herein by this reference, (ii) all Documents; and (iii) all Permits. This Assignment shall inure to the benefit of, and be binding upon, the successors, executors, administrators, legal representatives and assigns of Assignor and Assignee.

Notwithstanding anything to the contrary herein, Assignor is executing and delivering this Assignment in accordance with and subject to all of the terms and provisions of the Agreement (including, without limitation, the exclusions set forth in Section 2.2).

In the event that Assignor or Assignee brings an action or other proceeding to enforce or interpret the terms and provisions of this Assignment, the prevailing party in that action or proceeding shall be entitled to have and recover from the non-prevailing party all such reasonable fees, costs and expenses (including, without limitation, all court costs and reasonable attorneys' fees) as the prevailing party may suffer or incur in the pursuit or defense of such action or proceeding.

This Assignment shall be governed by and construed and enforced in accordance with the laws of the State of New York.

*NY 247550536v7*

IN WITNESS WHEREOF, Assignor has executed this Assignment as of the ___ of November, 2018.

<div style="margin-left: 40%;">

**ASSIGNOR:**

Tanga.Com, LLC, a Delaware limited liability company

By:_____
Name: Jeremy Young
Its:  Manager


**ASSIGNEE:**

EOM Commerce, Inc., a Delaware corporation


By:_____
Name: Ezra Shabot
Its:  CEO

</div>

*[Signature Page to Assignment of Intangible Property]*

*NY 247550536v7*